IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| INPRIA CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 22-1359-CJB |
| LAM RESEARCH CORP., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

1. The Court, having reviewed Defendant Lam Research Corp.'s ("Defendant" or "Lam") motion to stay ("Motion") pending resolution of *The Research Foundation for the State University of New York v. Inpria Corp. and JSR Corp.*, C.A. No. 1:24-cv-00120-MAD-ML (N.D.N.Y.) (hereafter, the "*SUNY* case"), (D.I. 66), having reviewed the parties' letter briefing, (D.I. 67; D.I. 77; D.I. 85; D.I. 109; D.I. 112), and having considered the three stay-related factors, hereby ORDERS that the Motion is DENIED. While the issue was not one-sided, for the following reasons, the Court has concluded that denying the Motion is the best course.

2. The Court will first address the "status of the litigation" factor, which favors grant of the Motion. Although this case was filed back in 2022, it was effectively stayed for a while by agreement of the parties, pending resolution of Defendant's motion to disqualify. (D.I. 12) That motion was resolved on November 17, 2023. (D.I. 31) Since then, the Court has tried to get the case moving, and it and the parties have done some real work on the matter in that time—including holding a scheduling conference, beginning fact discovery, and addressing and resolving Defendant's motion to transfer, (D.I. 54). But with nearly the entirety of discovery and other major case events still to come, this matter is in its early stages. And so this factor squarely

1

favors a stay (albeit not as strongly as it would if the case was at its most nascent stages). *See SenoRx, Inc. v. Hologic, Inc.*, Civ. Action No. 12-173-LPS-CJB, 2013 WL 144255, at *5-6 (D. Del. Jan. 11, 2013) (concluding the same, where the Court and the parties had "expended more than a de minimis amount of effort on the litigation" but where "the most significant case events in this litigation are in the future"); *see also* (D.I. 67 at 3).

3. Turning next to the "simplification of issues" factor, the analysis is more complicated. On the one hand, if the *SUNY* case ends up getting resolved via a finding that Plaintiff Inpria Corp. ("Plaintiff" or "Inpria") failed to list the proper inventors as to all eight of the patents asserted in this matter, then there would be complete simplification of the issues here. That is because in that scenario, it seems that Plaintiff would lack standing to pursue this action. (*Id.* at 2) Additionally, the Court acknowledges that in an ideal world, two federal district courts would not be litigating similar inventorship and ownership (hereafter, "inventorship") issues involving the same patents—as could well be the case here if the Motion were not granted.[1] So a stay would mean that two courts would not be doing the work of one, and it would also help avoid the possibility of the issuance of inconsistent judgments as to inventorship. Moreover, the Court acknowledges that even were the plaintiff in the *SUNY* case not to prevail on its inventorship-related claims as to some or all of the asserted patents, some simplification gains would still be realized in this case. That is because if a stay here is granted, Defendant has agreed to be bound by a judgment on the merits in the *SUNY* case as to inventorship issues. So

---

[1] Of course, if both sides were primarily concerned with the need to not have two courts resolving overlapping issues, then even if the Motion was denied, they could jointly agree to stay work on the inventorship-related issues in this case, pending a resolution of those issues in the *SUNY* case. But Defendant's counsel has advised that if the Motion is denied, Defendant will not agree to take this path.

one way or the other, if a stay is imposed, it seems that the inventorship issues will not need to be addressed in this matter. (*Id*. at 2 n.1; D.I. 85 at 1)

4. That said, the Court must consider "all of the possible outcomes" of a stay in favor of the resolution of the *SUNY* case, and how they might impact this matter. *Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, Civil Action No. 14-1192-LPS-CJB, 2015 WL 1737476, at *2 (D. Del. Apr. 9, 2015); *see also SenoRx, Inc.*, 2013 WL 144255, at *3. And in doing so, the simplification issue gets more complicated. In significant part, this is because it is undisputed that the inventorship issues in the *SUNY* case are not monolithic. Each of those issues as to each of our eight asserted patents is going to be fact-intensive. (*See generally* D.I. 67, ex. A) So it is not necessarily the case that if improper inventorship is established in the *SUNY* case as to one of the asserted patents, this means it will surely also be established as to the other seven asserted patents. Therefore, and without going too deep into the underlying merits of the inventorship issues, *see Kaavo Inc.*, 2015 WL 1737476, at *2 n.4, the Court can still observe that simply from a high-level, statistical perspective, it seems very possible that the result of the *SUNY* case will be that Plaintiff loses the chance to move forward here as to *none or some* asserted patents, but not *all*. (D.I. 77 at 1-2; D.I. 67 at 2) If this came to pass, and were the Motion to have been granted, then we would have paused this case for years, *see infra* at 5-6, only to then need to move forward with some number of asserted patents for which Plaintiff has standing. And at that point, the Court would have made absolutely no progress in the interval on *every other patent-related claim and defense at issue in this matter*. On balance, while the prospect for some simplification helps Defendant, in light of the countervailing concerns addressed herein, this factor only slightly favors grant of the Motion. *Cf. Twinstrand Biosciences, Inc. v. Guardant Health, Inc.*, Civil Action No. 21-1126-GBW-SRF, 2022 WL 18936070, at *11 (D. Del. Oct. 28,

2022) (finding that the simplification factor did not weigh strongly in favor of a stay, and instead only "somewhat" favored a stay, where a resolution of patent ownership in a related action could possibly have been determinative of certain counterclaims in the instant case—but where the decision in the related case was not "imminent" and it was "speculative" as to whether the outcome would in fact provide simplification); *see also* (D.I. 77 at 1-3).

5. As to the "undue prejudice" factor, it weighs strongly in favor of Plaintiff. This is so for at least two significant reasons.

6. First, there is good evidence before the Court that Plaintiff and Defendant are competitors, and that granting the Motion could later harm Plaintiff in ways that might be difficult to remedy with money damages. With its briefing on the Motion, Plaintiff submitted the sworn declaration of Mark Thorpe, its Vice President of Finance and Administration. Therein, Mr. Thorpe stated that Plaintiff and Defendant were very close competitors. (D.I. 78 at ¶ 13 ("Lam is Inpria's closest competitor in the MOx photoresist market.")) Mr. Thorpe further explained that: (a) Plaintiff offers a spin-coated MOx photoresist technology, while Defendant offers a competing dry-deposited MOx photoresist technology; (b) future customers are and will be making decisions as to which of these competing technologies to adopt; and (c) those customers will then integrate that technology into a fabrication line, in a manner that will be hard to modify thereafter. (*Id*. at ¶¶ 13-17) In contrast, Defendant submitted no declaration or other record evidence as to the issue of competition. Thereafter, pursuant to the Court's April 22, 2024 Order, (D.I. 108), the parties provided additional briefing and documentation on the competition issue. (D.I. 109; D.I. 112) In its submission, Plaintiff cited to three of Defendant's internal presentations. These presentations appear to indicate that not only did Defendant seek to develop a technology that competed with Plaintiff's technology, but that Defendant used

4

Plaintiff's products as a benchmark in its development process. (D.I. 109 at 1) For example, Plaintiff points to 2018 and 2019 Lam presentations in which Defendant analyzes Plaintiff's technology and asserts that its stated goal is "to provide a robust solution . . . that exceeds that of the *leading competitor[] (Inpria)*[.]" (*Id.*, ex. B at 3 (emphasis added); *see also id*. at 10; *id.*, ex. A at 12-13, 15-16, 19-21) Plaintiff also cites to another 2023 Lam presentation, in which Defendant refers to its efforts to demonstrate that its resists have better performance than Plaintiff's technology. (*Id.*, ex. C at 25, 28) Although the nature of the products that the parties make or supply may be different, (D.I. 112 at 1), the above evidence suggests that they are attempting to compete for the business of the same semiconductor manufacturers with those products—to the potential detriment of the other party. In all, based solely on the instant record, the Court will consider the parties to be meaningful competitors for "undue prejudice" purposes.[2] *See Kaavo Inc.*, 2015 WL 1737476, at *4 (noting that where parties are "joint market participants and engage[] in some demonstrated level of competition," courts "tend[] to find that some amount of undue prejudice [is] at play").

7. Second, the delay from a stay here could be substantial. Although delay alone does not demonstrate undue prejudice, it is another sub-factor that the Court can consider. *See id*. If this case is stayed in favor of the *SUNY* case, which was filed after this litigation and trails this case, (D.I. 77 at 2), this case will likely be stayed for many years.[3] Defendant has noted that

---

[2] The Court notes that it draws this conclusion now only on a limited record and at an early stage of this case—at a time when discovery is by no means complete. It may be that later in the case, on a more robust record, the issue of competition could look different. But at this point, the Court can only work with what the parties have given it.

[3] In the cases cited by Defendant where a court stayed its own patent case in favor of another related case in which ownership of the relevant patents was being contested, it appears that the related cases had been filed or initiated well before the instant case. (D.I. 67 at 2 (citing cases); D.I. 77 at 2 (citing cases))

the *SUNY* case is large and "complex[,]" in that the complaint there is "voluminous" and includes "over 700 pages" of supporting exhibits. (D.I. 67 at 2) It is a good bet that therefore, that case will take a long time to resolve. And that means that with its Motion, Defendant is proposing that we stay this case likely for many years—all only to re-start it again (unless all eight asserted patents are found to have improperly addressed inventorship). That is a very long road, with an uncertain payoff. And one that would likely cause some real prejudice to Plaintiff. (D.I. 77 at 5)

8.     In sum, the "status of the litigation" factor squarely favors Defendant's position, the "simplification of the issues" factor only slightly favors Defendant, and the most impactful "undue prejudice" factor strongly favors Plaintiff's position. *See Kaavo Inc.*, 2015 WL 1737476, at *3 (noting that the "undue prejudice" factor "is often a very important one in the stay calculus"). And so at best for Defendant, the equities are balanced. But to prevail on a motion to stay, the movant must show that the record *affirmatively supports* a stay. Defendant has failed to do that here. *See Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, 193 F. Supp. 3d 345, 353 (D. Del. 2016) (denying a motion to stay and finding that when the "[m]otion could go either way[,]" the movant failed to show "that the equities tilt in its favor"); *SenoRx, Inc.*, 2013 WL 144255, at *9 (finding that even though the "simplification of the issues" factor slightly favored a stay, and the "status of the litigation" factor squarely favored a stay, where the "amount of undue prejudice associated with the stay request strongly weighs against the grant of [the motion,]" a stay should not be granted).

9.     Therefore, although Defendant's Motion was not without merit, the Court ORDERS that it is DENIED. Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to

6

submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **May 8, 2024** for review by the Court. It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated: May 3, 2024

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE