## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INPRIA CORPORATION,

     Plaintiff/Counterclaim-Defendant,

     v.

LAM RESEARCH CORP.,

     Defendant/Counterclaim-Plaintiff.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 1-22-cv-01359-CJB

**JURY TRIAL DEMANDED**

███████████████

---

### DEFENDANT LAM RESEARCH CORP.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF INPRIA CORPORATION'S SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR INFRINGEMENT

Defendant Lam Research Corp. ("Lam") hereby submits its Answer, Defenses, and Counterclaims to Plaintiff Inpria Corporation ("Inpria")'s Second Amended and Supplemental Complaint for Infringement filed on September 3, 2024 (D.I. 169) (the "Amended Complaint"). Lam denies the allegations and characterizations in the Amended Complaint unless expressly admitted in the following paragraphs. Furthermore, the section headings included herein are included only for purposes of clarity and organization. Lam denies any allegation that may be implied or inferred from the headings contained in the Amended Complaint.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## ANSWER TO PLAINTIFF'S SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

### THE PARTIES[1]

1.      Lam is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Amended Complaint and, on that basis, denies each and every allegation therein.

2.      Lam is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 2 of the Amended Complaint and, on that basis, denies each and every allegation therein.

3.      Lam is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 3 of the Amended Complaint and, on that basis, denies each and every allegation therein.

4.      Lam admits the allegations of Paragraph 4.

### JURISDICTION AND VENUE

5.      Paragraph 5 contains legal conclusions to which no response is required.  To the extent a response is required, Lam admits that the Amended Complaint purports to assert claims for patent infringement under the United States patent laws, 35 U.S.C. §§ 101, et seq.  Lam further admits that Paragraph 5 alleges that this Court has subject matter jurisdiction over Inpria's patent infringement claims under 28 U.S.C. §§ 1331, 1338, and 35 U.S.C. § 1, et seq.  For purposes of this action only, Lam does not contest that the Court has subject matter jurisdiction over those patent infringement claims.  Lam denies any remaining allegations in Paragraph 5.

---

[1] For convenience and clarity, Lam's Answer uses the same headings as the Amended Complaint. Lam does not admit any allegations contained in the Amended Complaint's headings.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

6.    Paragraph 6 contains legal conclusions to which no response is required. To the extent a response is required, Lam admits that it is a Delaware corporation.  For purposes of this action, and this action only, Lam does not contest that this Court has personal jurisdiction over it. Lam denies any remaining allegations in Paragraph 6.

7.    Paragraph 7 contains legal conclusions to which no response is required. To the extent a response is required, for purposes of this action, and this action only, Lam does not dispute that venue is proper in this District pursuant to 28 U.S.C. § 1400(b).  Lam, however, specifically denies that this District is more convenient for the parties, witnesses, and the interests of justice. Lam denies any remaining allegations in Paragraph 7.

## GENERAL ALLEGATIONS RELATED TO THE INFRINGEMENT OF INPRIA'S PATENTS

8.    Lam admits that '505 patent, on its face, is titled "Organotin oxide hydroxide patterning compositions, precursors, and patterning" and states that it was issued on August 4, 2020.  Lam admits that Exhibit A to the Amended Complaint purports to be a copy of the '505 patent.  Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 8, and therefore denies the same.

9.    Lam admits that the '564 patent, on its face, is titled "Patterned inorganic layers, radiation based patterning compositions and corresponding methods" and states that it was issued on November 21, 2017.  Lam admits that Exhibit B to the Amended Complaint purports to be a copy of the '564 patent.  Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 9, and therefore denies the same.

10.    Lam admits that the '684 patent, on its face, is titled "Organometallic solution based high resolution patterning compositions" and states that it was issued on April 12, 2016.  Lam admits that Exhibit C to the Amended Complaint purports to be a copy of the '684 patent.  Lam is

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 10, and therefore denies the same.

11.     Lam admits that the '153 patent, on its face, is titled "Organometallic solution based high resolution patterning compositions and corresponding methods" and states that it was issued on May 5, 2020.  Lam admits that Exhibit D to the Amended Complaint purports to be a copy of the '153 patent.  Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 11, and therefore denies the same.

12.     Lam admits that the '048 patent, on its face, is titled "Organotin oxide hydroxide patterning compositions, precursors, and patterning" and states that it was issued on December 27, 2022.  Lam admits that Exhibit E to the Amended Complaint purports to be a copy of the '048 patent.  Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 12, and therefore denies the same.

13.     Lam admits that the '903 patent, on its face, is titled "Monoalkyl tin compounds with low polyalkyl contamination, their compositions and methods" and states that it was issued on June 13, 2023.  Lam admits that Exhibit F to the Amended Complaint purports to be a copy of the '903 patent.  Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 13, and therefore denies the same.

14.     Lam admits that the '312 patent, on its face, is titled "Radiation based patterning methods" and states that it was issued on July 4, 2023.  Lam admits that Exhibit G to the Amended Complaint purports to be a copy of the '312 patent.  Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 14, and therefore denies the same.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

15.    Lam admits that the '081 patent, on its face, is titled "Organotin oxide hydroxide patterning compositions, precursors, and patterning" and states that it was issued on November 7, 2023.  Lam admits that Exhibit H to the Amended Complaint purports to be a copy of the '081 patent.  Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 15, and therefore denies the same.

16.    Lam admits that the Amended Complaint collectively refers to the '505, '564, '684, '153, '048, '903, '312, and '081 patents as the "Inpria Patents."  Lam denies any remaining allegations in Paragraph 16.

17.    Lam is without knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 17 of the Amended Complaint and, on that basis, denies each and every allegation therein.

18.    Lam denies each and every allegation in Paragraph 18.

19.    Lam admits the allegations of Paragraph 19.

20.    Lam admits that a copy of an abstract titled "Lithographic Performance of the First Entirely Dry Process for EUV Lithography" may be obtained from https://euvlitho.com/2020/2020%20EUVL%20Workshop%20Keynote%20Weidman.pdf.    Lam admits that this abstract states a "lithographic performance of a new entirely dry EUV photoresist platform will be described," and further explains that "[p]hotoresist films are applied using reactive organometallic precursors in a vapor phase process that provides uniform, homogeneous films stable to air and visible light.  EUV exposure and subsequent bake steps induce crosslinking and densification, while unexposed areas remain hydrophobic and freely soluble in common organic solvents."  Lam admits that a purported copy of this abstract is attached to the Amended Complaint as Exhibit Y.  Lam denies any remaining allegations in Paragraph 20.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

21.    Lam admits the allegations of Paragraph 21.

22.    Lam admits that a presentation titled "2020 Investor Day" may be obtained from https://investor.lamresearch.com/events/event-details/2020-investor-meeting, from which Paragraph 22 purports to include an excerpt of the "2020 Investor Day" presentation's slide 66. Lam admits that a purported copy of such excerpt is attached as Exhibit L to the Amended Complaint.  Lam admits that the right-hand side of slide 66 refers to Lam's innovative dry resist and dry development technologies.  Lam denies any remaining allegations in Paragraph 22.

23.    Lam admits that Paragraph 23 purports to quote and include an excerpt of the "2020 Investor Day" presentation's slide 73.  Lam denies any remaining allegations in Paragraph 23.

24.    Lam admits that it filed U.S. patent application No. 62/868,710 with the U.S. Patent and Trademark Office, and that a series of slides describing dry resist technology were filed with this application.  Lam admits that Paragraph 24 purports to quote and include an excerpt from U.S. patent application No. 62/868,710.  Lam admits that a purported copy of U.S. patent application No. 62/868,710 is attached to the Amended Complaint as Exhibit N.  Lam denies any remaining allegations in Paragraph 24.

25.    Lam admits that it filed numerous patent applications around the world describing dry resist technology, including WO2020/264158A1 and U.S. Patent Pub. No. 2022/0308462. Lam admits that Paragraph 25 purports to quote from WO2020/264158A1 and U.S. Patent Pub. No. 2022/0308462, and that copies of the applications are attached to the Amended Complaint as Exhibits M and AA, respectively.  Lam denies any remaining allegations in Paragraph 25.

26.    Lam admits that it has employees in the United States, and principally at Lam's headquarters in Fremont, California, who have worked on the research, development, manufacturing and testing of Lam equipment that can perform certain processing steps associated

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

with Extreme Ultraviolet ("EUV") photoresists.  Lam admits that Paragraph 26 purports to quote from the LinkedIn profiles of current Lam Employees: Mike Myers, Austin Faucett, and Cheng-Hao (Will) Wu.  Lam admits that purported copies of these employees' LinkedIn profiles are attached to the Amended Complaint as Exhibits O, P, and Q, respectively.  Lam denies any remaining allegations in Paragraph 26.

27.     Lam admits that Paragraph 27 purports to include an excerpt of the "2020 Investor Day" presentation's slide 77.  Lam admits that a purported copy of this excerpt is attached to the Amended Complaint as Exhibit L.  Lam admits that the left-hand side of this slide includes a graphic representing equipment capable of implementing dry resist deposition, and that the right-hand side of this slide includes a graphic representing equipment capable of dry resist development.  Lam denies any remaining allegations in Paragraph 27.

28.     Lam admits that it has used equipment at Lawrence Berkeley National Laboratory ("LBNL") to expose photoresists created using Lam's deposition tool to EUV light.  Lam admits that Paragraph 28 purports to quote and include images from slide 6 of a 2021 presentation before the Society of Photographic Instrumentation Engineers ("2021 SPIE Presentation"), and that a purported copy of the slide is attached to the Amended Complaint as Exhibit R.  Lam denies any remaining allegations in Paragraph 28.

29.     Lam admits that MET5 is an EUV projection lithography tool located at LBNL, and that https://engineering.lbl.gov/cxro-center-for-x-ray-optics appears to be a link to the LBNL website.  Lam denies any remaining allegations in Paragraph 29.

30.     Lam admits that the '505, '684, '564, and '153 patents were cited during prosecution of the applications that issued as U.S. Patent Nos. 11,209,729 and 11,314,168.  Lam admits that purported copies of these patents are attached to the Amended Complaint as Exhibits

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

DD and EE, respectively.  Lam admits that the '048 and '081 patents, on their faces, are continuations of application No. 15/291,738, and that the Patent Application Publication No. 2017/0102612 corresponds to this application.  Lam further admits that Patent Application Publication No. 2017/0102612 was cited during prosecution of the applications that issued as U.S. Patent Nos. 9,996,004 and 10,796,912.  Lam admits that purported copies of these patents are attached to the Amended Complaint as Exhibits GG and HH, respectively.  Lam admits that the '903 patent was cited during prosecution of an application relating to JP6495025, and admits that a purported copy of this patent is attached to the Amended Complaint as Exhibit II.  Lam admits that the '312 patent, on its face, is a continuation of application No. 12/850,867 which issued as U.S. Patent No. 9,176,377.  Lam admits that this patent was cited during prosecution of the applications relating to JP6495025 and EP4235757, and that purported copies the Japanese and European patents are attached to the Amended Complaint as Exhibits II and JJ, respectively.  Lam denies any remaining allegations in Paragraph 30.

31.    Lam denies that it had actual notice of the Inpria Patents due to the facts alleged in Paragraph 31 and elsewhere in the Amended Complaint.  Lam admits that Paragraph 31 purports to quote from WO2020/264158A1, a purported copy of which is attached to the Amended Complaint as Exhibit M.  Lam admits that Ex. X is an article co-authored by certain individuals employed by Lam at the time of its publication, but denies that an Exhibit T is attached to the Amended Complaint.  Lam is therefore without knowledge or information sufficient to form a belief as to the Exhibit T referenced in Paragraph 31.  Lam denies any remaining allegations in Paragraph 31.

32.    Lam admits that it has made public statements regarding the potential market for dry resist technology.  Lam denies any remaining allegations in Paragraph 32.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

33.     Lam admits that purported claim charts are attached to the Amended Complaint as Exhibits KK-RR, but denies that it has committed any acts of infringement, including those alleged in the aforementioned exhibits.  Lam denies any remaining allegations in Paragraph 33.

34.     Lam denies each and every allegation in Paragraph 34.

35.     Lam denies each and every allegation in Paragraph 35.

36.     Lam incorporates its answer to Paragraphs 30-31.  Lam denies each and every remaining allegation in Paragraph 36.

37.     Lam admits that a press release published on July 12, 2022 is available at https://www.prnewswire.com/news-releases/lam-research-entegris-gelest-team-up-to-advance-euvdry-resist-technology-ecosystem-301584404.html and is partially quoted in Paragraph 36. Lam admits that a purported copy of this press release is attached to the Amended Complaint as Exhibit U.  Lam denies any remaining allegations in Paragraph 37.

38.     Lam admits a press release published June 14, 2022 is available at https://www.prnewswire.com/news-releases/lam-research-teamsup-with-sk-hynix-to-enhance-dram-production-cost-efficiency-with-breakthrough-dry-resist-euvtechnology-301567359.html and is partially quoted in Paragraph 37.  Lam admits that a purported copy of this press release is attached to the Amended Complaint as Exhibit V. Lam denies any remaining allegations in Paragraph 38.

39.     Lam admits that Paragraph 38 includes images of and partially quotes from slides 6 and 8 of the 2021 SPIE Presentation, and that a purported copy of the presentation is attached to the Amended Complaint as Exhibit R.  Lam denies any remaining allegations in Paragraph 39.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

40.      Lam incorporates its answer to Paragraph 29.  Lam admits that ASML 3400 NXE equipment has been located at Interuniversity Microelectronics Centre ("IMEC") in Leuven, Belgium.  Lam denies any remaining allegations in Paragraph 40.

41.      Lam admits that Paragraph 41 partially quotes from Lam's Q3 Earnings Call Transcript, and that a purported copy of such transcript is attached to the Amended Complaint as Exhibit W.  Lam denies any remaining allegations in Paragraph 41.

42.      Lam denies each and every allegation in Paragraph 42.

43.      Lam denies each and every allegation in Paragraph 43.

44.      Lam denies each and every allegation in Paragraph 44.

45.      Lam denies each and every allegation in Paragraph 45.

46.      Lam denies each and every allegation in Paragraph 46.

47.      Lam denies each and every allegation in Paragraph 47.

48.      Lam denies each and every allegation in Paragraph 48.

## FIRST CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 10,732,505

49.      Paragraph 49 purports to incorporate Paragraphs 1-48 of the Amended Complaint, and thus Lam incorporates its responses thereto.

50.      Lam admits that the '505 patent, on its face, has an issue date of August 4, 2020, and is titled of "Organotin oxide hydroxide patterning compositions, precursors, and patterning."  Lam admits that a purported copy of the '505 patent is attached to the Amended Complaint as Exhibit A.  Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 50, and therefore denies the same.

51.      Lam denies each and every allegation in Paragraph 51.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

52.     Lam denies each and every allegation in Paragraph 52.

53.     Lam denies each and every allegation in Paragraph 53.

54.     Lam denies each and every allegation in Paragraph 54.

55.     Lam denies each and every allegation in Paragraph 55.

56.     Lam denies each and every allegation in Paragraph 56.

57.     Lam denies each and every allegation in Paragraph 57.

58.     Lam denies each and every allegation in Paragraph 58.

59.     Lam denies each and every allegation in Paragraph 59.

60.     Lam denies each and every allegation in Paragraph 60.

61.     Lam denies each and every allegation in Paragraph 61.

## SECOND CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 9,823,564

62.     Paragraph 62 purports to incorporate Paragraphs 1-48 of the Amended Complaint, and thus Lam incorporates its responses thereto.

63.     Lam admits that the '564 patent, on its face, has an issue date of November 21, 2017, and is titled of "Patterned inorganic layers, radiation based patterning compositions and corresponding methods."  Lam admits that a purported copy of the '564 patent is attached to the Amended Complaint as Exhibit B.  Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 63, and therefore denies the same.

64.     Lam denies each and every allegation in Paragraph 64.

65.     Lam denies each and every allegation in Paragraph 65.

66.     Lam denies each and every allegation in Paragraph 66.

67.     Lam denies each and every allegation in Paragraph 67.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

68.    Lam denies each and every allegation in Paragraph 68.

69.    Lam denies each and every allegation in Paragraph 69.

70.    Lam denies each and every allegation in Paragraph 70.

71.    Lam denies each and every allegation in Paragraph 71.

72.    Lam denies each and every allegation in Paragraph 72.

73.    Lam denies each and every allegation in Paragraph 73.

74.    Lam denies each and every allegation in Paragraph 74.

## THIRD CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 9,310,684

75.    Paragraph 75 purports to incorporate Paragraphs 1-48 of the Amended Complaint, and thus Lam incorporates its responses thereto.

76.    Lam admits that the '684 patent, on its face, has an issue date of April 12, 2016, and is titled of "Organometallic solution based high resolution patterning compositions." Lam admits that a purported copy of the '684 patent is attached to the Amended Complaint as Exhibit C. Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 76, and therefore denies the same.

77.    Lam denies each and every allegation in Paragraph 77.

78.    Lam denies each and every allegation in Paragraph 78.

79.    Lam denies each and every allegation in Paragraph 79.

80.    Lam denies each and every allegation in Paragraph 80.

81.    Lam denies each and every allegation in Paragraph 81.

82.    Lam denies each and every allegation in Paragraph 82.

83.    Lam denies each and every allegation in Paragraph 83.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

84.    Lam denies each and every allegation in Paragraph 84.

85.    Lam denies each and every allegation in Paragraph 85.

86.    Lam denies each and every allegation in Paragraph 86.

87.    Lam denies each and every allegation in Paragraph 87.

88.    Lam denies each and every allegation in Paragraph 88.

89.    Lam denies each and every allegation in Paragraph 89.

## FOURTH CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 10,642,153

90.    Paragraph 90 purports to incorporate Paragraphs 1-48 of the Amended Complaint, and thus Lam incorporates its responses thereto.

91.    Lam admits that the '153 patent, on its face, has an issue date of May 5, 2020, and is titled of "Organometallic solution based high resolution patterning compositions and corresponding methods."  Lam admits that a purported copy of the '153 patent is attached to the Amended Complaint as Exhibit D.  Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 91, and therefore denies the same.

92.    Lam denies each and every allegation in Paragraph 92.

93.    Lam denies each and every allegation in Paragraph 93.

94.    Lam denies each and every allegation in Paragraph 94.

95.    Lam denies each and every allegation in Paragraph 95.

96.    Lam denies each and every allegation in Paragraph 96.

97.    Lam denies each and every allegation in Paragraph 97.

98.    Lam denies each and every allegation in Paragraph 98.

99.    Lam denies each and every allegation in Paragraph 99.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

100.    Lam denies each and every allegation in Paragraph 100.

101.    Lam denies each and every allegation in Paragraph 101.

102.    Lam denies each and every allegation in Paragraph 102.

103.    Lam denies each and every allegation in Paragraph 103.

104.    Lam denies each and every allegation in Paragraph 104.

## FIFTH CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 11,537,048

105.    Paragraph 105 purports to incorporate Paragraphs 1-48 of the Amended Complaint, and thus Lam incorporates its responses thereto.

106.    Lam admits that the '048 patent, on its face, appears to have an issue date of December 27, 2022, and title of "Organotin oxide hydroxide patterning compositions, precursors, and patterning."  Lam admits that a purported copy of the '048 patent is attached to the Amended Complaint as Exhibit E.  Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 106, and therefore denies the same.

107.    Lam denies each and every allegation in Paragraph 107.

108.    Lam denies each and every allegation in Paragraph 108.

109.    Lam denies each and every allegation in Paragraph 109.

110.    Lam denies each and every allegation in Paragraph 110.

111.    Lam denies each and every allegation in Paragraph 111.

112.    Lam denies each and every allegation in Paragraph 112.

113.    Lam denies each and every allegation in Paragraph 113.

114.    Lam denies each and every allegation in Paragraph 114.

115.    Lam denies each and every allegation in Paragraph 115.

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

116.    Lam denies each and every allegation in Paragraph 116

117.    Lam denies each and every allegation in Paragraph 117.

## SIXTH CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 11,673,903

118.    Paragraph 118 purports to incorporate Paragraphs 1-48 of the Amended Complaint, and thus Lam incorporates its responses thereto.

119.    Lam admits that the '903 patent, on its face, appears to have an issue date of June 13, 2023, and title of "Monoalkyl tin compounds with low polyalkyl contamination, their compositions and methods."  Lam admits that a purported copy of the '903 patent is attached to the Amended Complaint as Exhibit F.  Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 119, and therefore denies the same.

120.    Lam denies each and every allegation in Paragraph 120.

121.    Lam denies each and every allegation in Paragraph 121.

122.    Lam denies each and every allegation in Paragraph 122.

123.    Lam denies each and every allegation in Paragraph 123.

124.    Lam denies each and every allegation in Paragraph 124.

125.    Lam denies each and every allegation in Paragraph 125.

126.    Lam denies each and every allegation in Paragraph 126.

127.    Lam denies each and every allegation in Paragraph 127.

128.    Lam denies each and every allegation in Paragraph 128.

129.    Lam denies each and every allegation in Paragraph 129.

130.     Lam denies each and every allegation in Paragraph 130.

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## SEVENTH CAUSE OF ACTION

### INFRINGEMENT OF U.S. PATENT NO. 11,693,312

131.    Paragraph 131 purports to incorporate paragraphs 1-48 of the Amended Complaint, and thus Lam incorporates its responses thereto.

132.    Lam admits that the '312 patent, on its face, appears to have an issue date of July 4, 2023, and title of "Radiation based patterning methods."  Lam admits that a purported copy of the '312 patent is attached to the Amended Complaint as Exhibit G.  Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 121, and therefore denies the same.

133.    Lam denies each and every allegation in Paragraph 133.

134.    Lam denies each and every allegation in Paragraph 134.

135.    Lam denies each and every allegation in Paragraph 135.

136.    Lam denies each and every allegation in Paragraph 136.

137.    Lam denies each and every allegation in Paragraph 137.

138.    Lam denies each and every allegation in Paragraph 138.

139.    Lam denies each and every allegation in Paragraph 139.

140.    Lam denies each and every allegation in Paragraph 140.

141.    Lam denies each and every allegation in Paragraph 141.

142.    Lam denies each and every allegation in Paragraph 142.

143.    Lam denies each and every allegation in Paragraph 143.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

<u>**EIGHTH CAUSE OF ACTION**</u>

**INFRINGEMENT OF U.S. PATENT NO. 11,809,081**

144.    Paragraph 144 purports to incorporate paragraphs 1-48 of the Amended Complaint, and thus Lam incorporates its responses thereto.

145.    Lam admits that the '081 patent, on its face, appears to have an issue date of November 7, 2023, and title of "Organotin oxide hydroxide patterning compositions, precursors, and patterning." Lam admits that a purported copy of the '081 patent is attached to the Amended Complaint as Exhibit H. Lam is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 145, and therefore denies the same.

146.    Lam denies each and every allegation in Paragraph 146.

147.    Lam denies each and every allegation in Paragraph 147.

148.    Lam denies each and every allegation in Paragraph 148.

149.    Lam denies each and every allegation in Paragraph 149.

150.    Lam denies each and every allegation in Paragraph 150.

151.    Lam denies each and every allegation in Paragraph 151.

152.    Lam denies each and every allegation in Paragraph 152.

153.    Lam denies each and every allegation in Paragraph 153.

154.    Lam denies each and every allegation in Paragraph 154.

155.    Lam denies each and every allegation in Paragraph 155.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## PRAYER FOR RELIEF

To the extent that the Prayer for Relief section of the Amended Complaint is deemed to allege any facts or entitlement to the relief requested, Lam denies each and every allegation therein. Specifically, Lam denies that Plaintiff has any valid claim and is entitled to any relief whatsoever.

## JURY DEMAND

Lam acknowledges that Plaintiff demands a trial by jury on all issues so triable. Lam also demands a trial by jury on all issues so triable.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

Lam asserts the following additional and affirmative defenses without assuming any burden of proof when such burden would otherwise be on Plaintiff. Lam repeats and incorporates by reference each of its answers in Paragraphs 1 through 155 and the Response to Prayer for Relief as set forth above with each of the following defenses as if fully set forth herein. Further, Lam specifically reserves all rights to assert additional defenses and affirmative defenses as additional information becomes available.

## FIRST DEFENSE

Each asserted claim of the '505, '564, '684, '153, '048, '903, '312, and '081 patents ("Inpria Patents") is invalid for failure to comply with one or more requirements of the patent laws of the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103, 111, 112, 132 and/or obviousness-type double patenting, and the rules, regulations, and laws pertaining thereto, including without limitation, anticipation and obviousness in light of prior art, claim indefiniteness, failure of enablement and/or to provide adequate written description, failure to name the correct inventors, and/or improperly adding new matter.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## SECOND DEFENSE

Lam has not infringed and does not infringe, directly or indirectly, any valid and enforceable asserted claim of the Inpria Patents, either directly or indirectly, either literally or under the doctrine of equivalents, because the accused instrumentalities do not practice every claimed limitation of any asserted claim of the Inpria Patents.

## THIRD DEFENSE

Plaintiff's claims against Lam are barred, in whole or in part, by the doctrines of prosecution history estoppel and disclaimer, including based on the patent applicant's statements, arguments, and acquiescence to the U.S. Patent & Trademark Office's ("USPTO") examiner during the prosecution of the Inpria Patents, including related patents and/or applications, and/or during any other proceedings before the USPTO.

## FOURTH DEFENSE

Lam has not committed any acts of infringement, willful or otherwise, in this District or elsewhere, and the Inpria Patents are invalid, and thus Plaintiff cannot prove that it is entitled to enhanced damages or that this case is otherwise exceptional under 35 U.S.C. § 285.

## FIFTH DEFENSE

Plaintiff's claims against Lam for recovery are barred, in whole or in part, by 35 U.S.C. § 286. For the purposes of this defense, the relevant calculation period for damages—as prescribed by statute—cannot be more than six years prior to the filing of the Original Complaint.

## SIXTH DEFENSE

Plaintiff's claims against Lam for recovery are barred, in whole or in part, by 35 U.S.C. § 287.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## SEVENTH DEFENSE

Plaintiff is precluded from recovering costs under 35 U.S.C. § 288.

## EIGHTH DEFENSE

Plaintiff is not entitled to any injunctive relief because, among other reasons, any alleged injury is not immediate or irreparable, and Plaintiff has an adequate remedy at law for any alleged injury.

## NINTH DEFENSE

Plaintiff's claims against Lam are barred or limited by the equitable doctrine of estoppel, waiver, unclean hands, and/or other equitable doctrines.

## TENTH DEFENSE

Plaintiff's claims against Lam are barred and not actionable to the extent that they are premised on the activities of users that have a license to practice the Inpria Patents and/or Inpria has covenanted not to sue for infringement of the Inpria Patents.

For example, on information and belief, Inpria has licensed and/or covenanted not to sue certain of its investors with respect to one or more Asserted Patents pursuant to at least investment agreements entered into with Inpria as a result of Series A, B, and/or C funding of Inpria. ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Further, on information and belief, Lam's customer TSMC is also subject to a similar Series C agreement as it was also involved in the same Series C round funding as SK hynix. *See* https://www.finsmes.com/2020/02/inpria-raises-31m-in-series-c-funding.html#google_vignette.

. Discovery may reveal that additional third parties are licensed to practice the Asserted Patents. To the extent any licensed third parties are Lam customers and/or their activities are alleged to provide a basis for any liability against Lam, Lam reserves the right to assert a license defense as to each of these third parties.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

### <u>ELEVENTH DEFENSE</u>

Plaintiff lacks standing to bring suit for infringement of the Inpria Patents to the extent that it is not the owner and/or sole owner of these patents and that another third party, such as The State University of New York, is the true owner or at least a partial owner of these patents.

### <u>TWELFTH DEFENSE</u>

As set forth in Counterclaims XVII through XIX below, the Inpria Patents are unenforceable due to inequitable conduct.

### <u>THIRTEENTH DEFENSE</u>

As set forth in Counterclaim XXII below, Inpria contractually obligate to indemnify Lam from all claims in this action.

---

### <u>COUNTERCLAIMS</u>

Defendant Lam Research Corp. ("Lam") alleges and asserts the following counterclaims against Inpria Corporation ("Inpria").

### <u>PARTIES</u>

1.      Counterclaimant Lam is a corporation organized under the laws of the state of Delaware, with a place of business located at 4650 Cushing Parkway, Fremont, CA 94538.

2.      On information and belief, Counterclaim Defendant Inpria has alleged it is a corporation organized under the laws of the state of Delaware with a place of business at 1100 NE Circle Blvd., Suite 360, Corvallis, Oregon 97330.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## JURISDICTION AND VENUE

3.     These Counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

4.     Subject to Lam's defenses and denials stated above, this Court has jurisdiction over the subject matter of these Counterclaims under 28 U.S.C. §§ 1331, 1338(a), 1367, and 2201-02.

5.     This Court has personal jurisdiction over Inpria because, *inter alia*, Inpria has submitted to the jurisdiction of this Court by purposefully availing itself of the benefits and protections of the laws of this District by filing suit in this District.

6.     Subject to Lam's defenses and denials stated above, venue for this Counterclaim is proper in this District because Inpria has consented to this venue through the filing of a claim of patent infringement against Lam in this District, in response to which this Counterclaim is being asserted.  Lam, however, reserves all rights to seek a transfer under 28 U.S.C. § 1404.

## COUNT I (Declaratory Judgment of Noninfringement of the '505 Patent)

7.     Lam realleges and incorporates by reference the allegations in Paragraphs 1-6 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

8.     Although Inpria alleges in its Complaint that Lam has infringed one or more claims of U.S. Patent No. 10,732,505 (the "'505 patent"), Lam has not infringed and does not infringe any valid and enforceable asserted claim of the '505 patent, either directly, indirectly, literally or under the doctrine of equivalents, because the accused instrumentalities do not practice every claimed limitation.  For example, on information and belief, Lam's deposition tools do not perform a method for forming a radiation patternable film comprising an oxo-hydroxo network with metal

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

cations having organic ligands with metal carbon bonds and metal oxygen bonds, as required by claim 1 of the '505 patent.

9.      An actual controversy exists with respect to the alleged infringement of the '505 Patent.

10.     Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed claims of the '505 patent, thereby causing Lam irreparable injury and damage.

11.     A judicial determination of the respective rights of the parties with respect to the asserted claims of the '505 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

## COUNT II (Declaratory Judgment of Noninfringement of the '564 Patent)

12.     Lam realleges and incorporates by reference the allegations in Paragraphs 1-11 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

13.     Although Inpria alleges in its Complaint that Lam has infringed one or more claims of U.S. Patent No. 9,823,564 (the "'564 patent"), Lam has not infringed and does not infringe any valid and enforceable asserted claim of the '564 patent, either directly, indirectly, literally or under the doctrine of equivalents, because the accused instrumentalities do not practice every claimed limitation, because the accused instrumentalities do not practice every claimed limitation. For example, Inpria has not shown that the accused instrumentalities include a structure comprising a substrate and a coating material on a surface of the substrate, much less a coating material comprising metal ions with radiation sensitive ligands, as required by claim 1 of the '564 patent.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

14.     An actual controversy exists with respect to the alleged infringement of the '564 patent.

15.     Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed claims of the '564 patent, thereby causing Lam irreparable injury and damage.

16.     A judicial determination of the respective rights of the parties with respect to the asserted claims of the '564 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

**COUNT III (Declaratory Judgment of Noninfringement of the '684 Patent)**

17.     Lam realleges and incorporates by reference the allegations in Paragraphs 1-16 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

18.     Although Inpria alleges in its Complaint that Lam has infringed one or more claims of U.S. Patent No. 9,310,684 (the "'684 patent"), Lam has not infringed and does not infringe any valid and enforceable asserted claim of the '684 patent, either directly, indirectly, literally or under the doctrine of equivalents, because the accused instrumentalities do not practice every claimed limitation.  For example, Inpria has not shown that the accused instrumentalities include a coated substrate comprising a radiation sensitive coating having an average thickness from about 5nm to about 200 nm and a thickness variation of no more than about 50% from the average at any point along the coating, much a coating comprising a metal oxo-hydroxo network with metal cations having organic ligands with metal carbon bonds and/or with metal carboxylate bonds, as required by claim 10 of the '684 patent.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

19.     An actual controversy exists with respect to the alleged infringement of the '684 patent.

20.     Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed claims of the '684 patent, thereby causing Lam irreparable injury and damage.

21.     A judicial determination of the respective rights of the parties with respect to the asserted claims of the '684 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

### COUNT IV (Declaratory Judgment of Noninfringement of the '153 Patent)

22.     Lam realleges and incorporates by reference the allegations in Paragraphs 1-21 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

23.     Although Inpria alleges in its Complaint that Lam has infringed one or more claims of U.S. Patent No. 10,642,153 (the "'153 patent"), Lam has not infringed and does not infringe any valid and enforceable asserted claim of the '153 patent, either directly, indirectly, literally or under the doctrine of equivalents, because the accused instrumentalities do not practice every claimed limitation, because the accused instrumentalities do not practice every claimed limitation. For example, Inpria has not shown that the accused instrumentalities include a patterned structure comprising a substrate having a surface and a coating associated with the surface that meets every limitation of claim 18 of the '153 patent.

24.     An actual controversy exists with respect to the alleged infringement of the '153 patent.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

25.     Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed claims of the '153 patent, thereby causing Lam irreparable injury and damage.

26.     A judicial determination of the respective rights of the parties with respect to the asserted claims of the '153 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

## COUNT V (Declaratory Judgment of Noninfringement of the '048 Patent)

27.     Lam realleges and incorporates by reference the allegations in Paragraphs 1-26 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

28.     Although Inpria alleges in its Complaint that Lam has infringed one or more claims of U.S. Patent No. 11,537,048 (the "'048 patent"), Lam has not infringed and does not infringe any valid and enforceable asserted claim of the '048 patent, either directly, indirectly, literally or under the doctrine of equivalents. For example, Inpria has not shown that the accused instrumentalities include a substrate within the interior of the deposition chamber configured to receive a deposition on a surface of the substrate as required by claim 1 of the '048 patent.

29.     An actual controversy exists with respect to the alleged infringement of the '048 patent.

30.     Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed claims of the '048 patent, thereby causing Lam irreparable injury and damage.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

31.     A judicial determination of the respective rights of the parties with respect to the asserted claims of the '048 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

### COUNT VI (Declaratory Judgment of Noninfringement of the '903 Patent)

32.     Lam realleges and incorporates by reference the allegations in Paragraphs 1-31 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

33.     Although Inpria alleges in its Complaint that Lam has infringed one or more claims of U.S. Patent No. 11,673,903 (the "'903 patent"), Lam has not infringed and does not infringe any valid and enforceable asserted claim of the '903 patent, either directly, indirectly, literally or under the doctrine of equivalents, because the accused instrumentalities do not practice every claimed limitation, because the accused instrumentalities do not practice every claimed limitation. For example, Inpria has not shown that the accused instrumentalities include a high purity liquid composition that meets every limitation of claim 11 of the '903 patent.

34.     An actual controversy exists with respect to the alleged infringement of the '903 patent.

35.     Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed claims of the '903 patent, thereby causing Lam irreparable injury and damage.

36.     A judicial determination of the respective rights of the parties with respect to the asserted claims of the '903 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

### COUNT VII (Declaratory Judgment of Noninfringement of the '312 Patent)

37.    Lam realleges and incorporates by reference the allegations in Paragraphs 1-36 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

38.    Although Inpria alleges in its Complaint that Lam has infringed one or more claims of U.S. Patent No. 11,693,312 (the "'312 patent"), Lam has not infringed and does not infringe any valid and enforceable asserted claim of the '312 patent, either directly, indirectly, literally or under the doctrine of equivalents, because the accused instrumentalities do not practice every claimed limitation.  For example, Inpria has not shown that the accused instrumentalities include an article comprising a substrate comprising a semiconductor wafer, or a film on a surface of the substrate, wherein the film is composed of a first material comprising metal ions with radiation sensitive ligands, as required by claim 1 of the '312 patent.

39.    An actual controversy exists with respect to the alleged infringement of the '312 patent.

40.    Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed claims of the '312 patent, thereby causing Lam irreparable injury and damage.

41.    A judicial determination of the respective rights of the parties with respect to the asserted claims of the '312 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

<u>**COUNT VIII (Declaratory Judgment of Noninfringement of the '081 Patent)**</u>

42.    Lam realleges and incorporates by reference the allegations in Paragraphs 1-41 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

43.    Although Inpria alleges in its Complaint that Lam has infringed one or more claims of U.S. Patent No. 11,809,081 (the "'081 patent"), Lam has not infringed and does not infringe any valid and enforceable asserted claim of the '081 patent, either directly, indirectly, literally or under the doctrine of equivalents, because the accused instrumentalities do not practice every claimed limitation, because the accused instrumentalities do not practice every claimed limitation. For example, Inpria has not shown that the accused instrumentalities perform every step of the method, including depositing a tin composition having organic ligands and hydrolysable ligands to form a coating with a dry thickness from about 1 nanometers (nm) to about 50nm, as required by claim 1 of the '081 patent.

44.    An actual controversy exists with respect to the alleged infringement of the '081 patent.

45.    Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed claims of the '081 patent, thereby causing Lam irreparable injury and damage.

46.    A judicial determination of the respective rights of the parties with respect to the asserted claims of the '081 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

### COUNT IX (Declaratory Judgment of Invalidity of the '505 Patent)

47.    Lam realleges and incorporates by reference the allegations in Paragraphs 1-46 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

48.    Inpria alleges in its Complaint that the '505 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  However, on information and belief, each claim of the '505 patent asserted against Lam is invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. § 101 *et seq.*, including but not limited to sections 101, 102, 103, and 112.  As a non-limiting example, the claims are anticipated or rendered obvious in view of Cardineau, Brian, et al. "Photolithographic properties of tin-oxo clusters using extreme ultraviolet light (13.5 nm)." Microelectronic Engineering 127 (2014): 44-50.

49.    An actual controversy exists with respect to the alleged infringement of the '505 patent and the validity of the claims of the '505 patent.

50.    Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed the '505 patent, thereby causing Lam irreparable injury and damage.

51.    A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '505 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## COUNT X (Declaratory Judgment of Invalidity of the '564 Patent)

52.    Lam realleges and incorporates by reference the allegations in Paragraphs 1-51 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

53.    Inpria alleges in its Complaint that the '564 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  However, each claim of the '564 patent asserted against Lam is invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. § 101 *et seq.*, including but not limited to sections 101, 102, 103, and 112.  As a non-limiting example, the claims are anticipated or rendered obvious in view of U.S. Patent Publication No. 2011/0293888.

54.    An actual controversy exists with respect to the alleged infringement of the '564 patent and the validity of the claims of the '564 patent.

55.    Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed the '564 patent, thereby causing Lam irreparable injury and damage.

56.    A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '564 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

## COUNT XI (Declaratory Judgment of Invalidity of the '684 Patent)

57.    Lam realleges and incorporates by reference the allegations in Paragraphs 1-56 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

58.    Inpria alleges in its Complaint that the '684 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  However, each claim of

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

the '684 patent asserted against Lam is invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. § 101 *et seq.*, including but not limited to sections 101, 102, 103, and 112.  As a non-limiting example, the claims are anticipated or rendered obvious in view of U.S. Patent Publication No. 2009/0155546.

59.    An actual controversy exists with respect to the alleged infringement of the '684 patent and the validity of the claims of the '684 patent.

60.    Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed the '684 patent, thereby causing Lam irreparable injury and damage.

61.    A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '684 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

## COUNT XII (Declaratory Judgment of Invalidity of the '153 Patent)

62.    Lam realleges and incorporates by reference the allegations in Paragraphs 1-61 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

63.    Inpria alleges in its Complaint that the '153 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  However, on information and belief, each claim of the '153 patent asserted against Lam is invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. § 101 *et seq.*, including but not limited to sections 101, 102, 103, and 112.  As a non-limiting example, the claims are anticipated or rendered obvious in view of Cardineau, Brian, et al. "Photolithographic properties of tin-oxo clusters using extreme ultraviolet light (13.5 nm)." Microelectronic Engineering 127 (2014): 44-50.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

64.    An actual controversy exists with respect to the alleged infringement of the '153 patent and the validity of the claims of the '153 patent.

65.    Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed the '153 patent, thereby causing Lam irreparable injury and damage.

66.    A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '153 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

## COUNT XIII (Declaratory Judgment of Invalidity of the '048 Patent)

67.    Lam realleges and incorporates by reference the allegations in Paragraphs 1-66 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

68.    Inpria alleges in its Complaint that the '048 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  However, on information and belief, each claim of the '048 patent asserted against Lam is invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. § 101 *et seq.*, including but not limited to sections 101, 102, 103, and 112.  As a non-limiting example, the claims are anticipated or rendered obvious in view of Cardineau, Brian, et al. "Photolithographic properties of tin-oxo clusters using extreme ultraviolet light (13.5 nm)." Microelectronic Engineering 127 (2014): 44-50.

69.    An actual controversy exists with respect to the alleged infringement of the '048 patent and the validity of the claims of the '048 patent.

70.    Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed the '048 patent, thereby causing Lam irreparable injury and damage.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

71.     A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '048 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

### COUNT XIV (Declaratory Judgment of Invalidity of the '903 Patent)

72.     Lam realleges and incorporates by reference the allegations in Paragraphs 1-71 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

73.     Inpria alleges in its Complaint that the '903 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  However, each asserted claim of the '903 patent asserted against Lam is invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. § 101 *et seq.*, including but not limited to sections 101, 102, 103, and 112.  As a non-limiting example, the claims are anticipated or rendered obvious in view of U.S. Patent Publication No. 2016/0116839.

74.     An actual controversy exists with respect to the alleged infringement of the '903 patent and the validity of the asserted claims of the '903 patent.

75.     Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed the '903 patent, thereby causing Lam irreparable injury and damage.

76.     A judicial determination of the respective rights of the parties with respect to the invalidity of the asserted claims of the '903 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

**COUNT XV (Declaratory Judgment of Invalidity of the '312 Patent)**

77.    Lam realleges and incorporates by reference the allegations in Paragraphs 1-76 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

78.    Inpria alleges in its Complaint that the '312 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  However, each asserted claim of the '312 patent asserted against Lam is invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. § 101 *et seq.*, including but not limited to sections 101, 102, 103, and 112.  As a non-limiting example, the claims are anticipated or rendered obvious in view of Stowers, Jason K. *Direct patterning of solution deposited metal oxides*. Oregon State University, 2008.

79.    An actual controversy exists with respect to the alleged infringement of the '312 patent and the validity of the asserted claims of the '312 patent.

80.    Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed the '312 patent, thereby causing Lam irreparable injury and damage.

81.    A judicial determination of the respective rights of the parties with respect to the invalidity of the asserted claims of the '312 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## COUNT XVI (Declaratory Judgment of Invalidity of the '081 Patent)

82.     Lam realleges and incorporates by reference the allegations in Paragraphs 1-81 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

83.     Inpria alleges in its Complaint that the '081 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  However, each asserted claim of the '081 patent asserted against Lam is invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. § 101 *et seq.*, including but not limited to sections 101, 102, 103, and 112.

84.     An actual controversy exists with respect to the alleged infringement of the '081 patent and the validity of the asserted claims of the '081 patent.  As a non-limiting example, the claims are anticipated or rendered obvious in view of Cardineau, Brian, et al. "Photolithographic properties of tin-oxo clusters using extreme ultraviolet light (13.5 nm)." Microelectronic Engineering 127 (2014): 44-50.

85.     Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed the '081 patent, thereby causing Lam irreparable injury and damage.

86.     A judicial determination of the respective rights of the parties with respect to the invalidity of the asserted claims of the '081 patent is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

### COUNT XVII (Declaratory Judgment of Unenforceability of the '505, '048, '081, '153, and '564 Patents Due to Inequitable Conduct)

87.     Lam realleges and incorporates by reference the allegations in Paragraphs 1-86 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

88.     As set forth below, the claims of the '505, '048, '081 and '153 Patents are unenforceable due to inequitable conduct committed based on material omissions that occurred during prosecution of the '505, '048, '081 and '153 Patents at the USPTO. In view of the circumstances, the single most reasonable inference that can be drawn from the facts known to date is that at least Brian Cardineau (one of the named inventors of the '153, '505, '048 and '081 Patents) and Andrew Grenville (CEO of Inpria) intended to deceive the USPTO by withholding Mr. Cardineau's paper, Cardineau, Brian, et al. "Photolithographic properties of tin-oxo clusters using extreme ultraviolet light (13.5 nm)." Microelectronic Engineering 127 (2014): 44-50 ("Cardineau Paper") from the Examiner during prosecution of the '505, '048, '081 and '153 Patents. Inventors Brian Cardineau and Andrew Grenville further intended to deceive the USPTO by withholding Mr. Cardineau's dissertation, Cardineau, Brian, "Novel Resist Systems for EUV Lithography: LER, Chain-Scission, Nanoparticle and MORE," (2013) (Ph.D. Dissertation, University at Albany, State University of New York) (Proquest) ("Cardineau Dissertation").

89.     The Cardineau Paper published and was publicly available at least as early as April 24, 2014. *See* Cardineau Paper at 44.

90.     Upon information and belief, the Cardineau Dissertation published and was publicly available at least as early as May 20, 2013.  Upon information and belief, the Cardineau Dissertation published and was publicly available no later than August 14, 2014.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

91.    The Cardineau Paper discloses the development of "tin clusters of the type $[(RSn)_{12}O_{14}(OH)_6] X_2$ … into novel high-resolution photoresists." The Cardineau Paper states that "[u]sing these tin clusters, 18-nm lines were printed showcasing the high resolution capabilities of these materials as photoresists for EUV lithography." *Id.* at Abstract. These tin clusters were prepared, for example, by the "[h]ydrolysis of phenyltin trichloride using ammonium hydroxide." Cardineau Paper at 48.  Figure 6B of Cardineau depicts the hydrolysis reaction as follows:

*Id.* at 48; *see also id.* 49 (describing hydrolysis of allyltin trichloride, butyltin trichloride and phenyltin trichloride to form clusters $[(H_2C = CHCH_2Sn)_{12}O_{14}(OH)_6]Cl_2$; $[(BuSn)_{12}O_{14}(OH)_6]Cl_2$; and $[(PhSn)_{12}O_{14}(OH)_6]Cl_2$, respectively).

92.    The Cardineau Paper further discloses how these tin clusters were prepared, following the method of Eychenne-Baron et al., "New Synthesis of the Nanobuilding Block $\{(BuSn)_{12}O_{14}(OH)_6\}^{2+}$ and Exchange Properties of $\{(BuSn)_{12}O_{14}(OH)_6\}(O_3SC_6H_4CH_3)_2$," J. Organometallic Chem. 567:137-142 (1998) ("Eychenne-Baron"). Eychenne-Baron discloses a method of synthesizing these tin clusters via dehydration of butylstannoic acid. Eychenne-Baron at 138; Cardineau Paper at 45.  Figure 3 of the Cardineau Paper depicts the synthetic pathway as follows:

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Cardineau Paper at 46.

### *The '505 Patent*

93.    The '505 Patent was filed as Application No. 16/861,333 on April 29, 2020, and purports to claim priority to Provisional Application Nos. 62/297,540 filed on February 19, 2016 and 62/240,812 filed on October 13, 2015. The '505 Patent issued on August 4, 2020, and lists Stephen T. Meyers, Jeremy T. Anderson, Brian J. Cardineau, Joseph B. Edson, Kai Jiang, Douglas A. Keszler, and Alan J. Telecky as inventors (collectively the "'505 Patent Inventors").

94.    Claim 1 of the '505 Patent is directed to a method for forming a radiation patternable film by vapor deposition comprising "inputting into a deposition chamber closed from the ambient atmosphere a first precursor vapor comprising a composition represented by the formula $R_nSnX_{4-n}$ wherein R is an organic ligand with 1-31 carbon atoms bound to Sn with a metal-carbon bond, n=1-3 and X is a ligand having a hydrolysable bond with Sn and inputting a second precursor vapor comprising an oxygen-containing compound …"

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

95.     The '505 patent had an accelerated prosecution. The Examiner allowed the claims without issuing an office action. In the Notice of Allowance, the Examiner stated:

> None of the prior art references of record disclose the claimed method for forming a radiation patternable film as recited in claim 1 and the method of forming a pattern as recited in claim 1 and the method of forming a pattern as recited in claim 16. ***The particular first precursor and second precursor are not disclosed in the prior art***.

6-22-2020 NOA.

96.     The Cardineau Paper discloses the formation of radiation patternable tin cluster films formed by the hydrolysis of allyltin trichloride, butyltin trichloride and phenyltin trichloride with ammonium hydroxide. *Supra* ¶¶ 89-90. Allyltin trichloride, butyltin trichloride and phenyltin trichloride are compounds of the formula $R_nSnX_{4-n}$ wherein R is an organic ligand with 1-31 carbon atoms bound to Sn with a metal-carbon bond, n=1-3 and X is a ligand having a hydrolysable bond with Sn, and ammonium hydroxide (NaOH) is an oxygen containing compound, as recited in claim 1 of the '505 Patent.

97.     As noted above, Mr. Cardineau is a named inventor of the '505 Patent. Upon information and belief, Mr. Cardineau is the same Brian J. Cardineau who is the first author on the Cardineau Paper. Therefore, Mr. Cardineau was aware of the Cardineau Paper prior to the '505 Patent's issuance. The Cardineau Paper was not submitted to the USPTO during prosecution of the '505 Patent. Upon information and belief, the Examiner of the '505 Patent was never informed about the existence of the Cardineau Paper during prosecution of the '505 Patent. Had the USPTO been aware of the Cardineau paper, it would not have allowed the '505 Patents to issue.

98.     Upon information and belief, Mr. Cardineau understood that, as a named inventor of the '505 Patents, he has a duty of candor before the USPTO. The Cardineau Paper was known to at least Mr. Cardineau before the '505 Patents issued. Upon information and belief, Mr. Cardineau disclosed to Inpria his dissertation research in 2013 before he was employed by Inpria.

41

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Nevertheless, Mr. Cardineau withheld the Cardineau Paper from submission to the USPTO. The single most reasonable inference that can be drawn from Mr. Cardineau's nondisclosure of material information is that it was done with the intent to mislead the USPTO.

### The '048 Patent

99.    The '048 Patent was filed as Application No. 16/987,120 on August 6, 2020, and purports to claim priority to Provisional Application Nos. 62/297,540 filed on February 19, 2016 and 62/240,812 filed on October 13, 2015. The '048 Patent issued on December 27, 2022 and lists Stephen T. Meyers, Jeremy T. Anderson, Brian J. Cardineau, Joseph B. Edson, Kai Jiang, Douglas A. Keszler, and Alan J. Telecky as inventors (collectively the "'048 Patent Inventors").

100.    Claim 1 of the '048 Patent is directed to a vapor deposition system comprising "a supply of an organotin composition comprising a compound described by the formula $RSnX_3$, where R is an organic ligand with 1-31 carbon atoms and is bound to Sn with a metal-carbon bond," wherein X is selected from substituents in a Markush group.

101.    During prosecution of the '048 Patent, the Examiner rejected the claims as obvious over various combinations of references. *See, e.g.*, 6-28-2022 Office Action at 3. In response, Inpria argued that the prior art did not teach an organotin composition comprising a compound described by the formula $RSnX_3$ as claimed. 9-15-2022 Appeal Brief at 18. In the Notice of Allowance, the Examiner stated:

> [W]hile the prior art teaches a system with the structural elements of … independent claim 1, ***the prior art does not explicitly teach the claim organotin composition*** …

11-10-2022 NOA.

102.    As noted above, the Cardineau Paper discloses the formation of radiation patternable tin cluster films formed by the hydrolysis of allyltin trichloride, butyltin trichloride and phenyltin trichloride with ammonium hydroxide. *Supra* ¶ 89-90. Allyltin trichloride, butyltin

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

trichloride and phenyltin trichloride are compounds of the formula $RSnX_3$, where R is an organic ligand with 1-31 carbon atoms and is bound to Sn with a metal-carbon bond, as recited in claim 1 of the '048 Patent.

103.    As noted above, Mr. Cardineau is a named inventor of the '048 Patent. Upon information and belief, Mr. Cardineau is the same Brian J. Cardineau who is the first author on the Cardineau Paper. Therefore, Mr. Cardineau was aware of the Cardineau Paper prior to the '048 Patent's issuance. The Cardineau Paper was not submitted to the USPTO during prosecution of the '048 Patent. Upon information and belief, the Examiner of the '048 Patent was never informed about the existence of the Cardineau Paper during prosecution of the '048 Patent. Had the USPTO been aware of the Cardineau Paper, it would not have allowed the '048 Patent to issue.

104.    Upon information and belief, Mr. Cardineau understood that, as a named inventor of the '048 Patents, he has a duty of candor before the USPTO. The Cardineau Paper was known to at least Mr. Cardineau before the '048 Patents issued. Nevertheless, Mr. Cardineau withheld the Cardineau Paper from submission to the USPTO. The single most reasonable inference that can be drawn from Mr. Cardineau's nondisclosure of material information is that it was done with the intent to mislead the USPTO.

### '081 Patent

105.    The '081 Patent was filed as 17/832,920 on June 6, 2022, as a continuation of the '048 Patent, and purports to claim priority to Provisional Application Nos. 62/297,540 filed on February 19, 2016, and 62/240,812 filed on October 13, 2015. The '081 Patent issued on November 7, 2023, and lists Stephen T. Meyers, Jeremy T. Anderson, Brian J. Cardineau, Joseph B. Edson, Kai Jiang, Douglas A. Keszler, and Alan J. Telecky as inventors (collectively the "'081 Patent Inventors").

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

106.    Claim 1 of the '081 patent discloses a method for forming a radiation patternable organometallic coating comprising "depositing a tin composition having organic ligands and hydrolysable ligands to form a coating …, wherein the organic ligands comprise radiation sensitive Sn—C bonds."

107.    During prosecution, the Examiner rejected the claims as obvious for obviousness type double patenting, but did not reject the claims over the prior art. In the Notice of Allowance, the Examiner stated:

> None of the prior art of the prior art references discloses … deposition of a tin composition having organic ligands and hydrolysable ligands to form a coating …

8-1-2023 NOA.

108.    As noted above, the Cardineau Paper discloses the formation of radiation patternable tin cluster films formed by the hydrolysis of allyltin trichloride, butyltin trichloride and phenyltin trichloride with ammonium hydroxide. *Supra* ¶¶ 89-90. Allyltin trichloride, butyltin trichloride and phenyltin trichloride are compounds having organic ligands and hydrolysable ligands, as recited in claim 1 of the '081 Patent.

109.    As noted above, Mr. Cardineau is a named inventor of the '081 Patent. Upon information and belief, Mr. Cardineau is the same Brian J. Cardineau who is the first author on the Cardineau Paper. Therefore, Mr. Cardineau was aware of the Cardineau Paper prior to the '081 Patent's issuance. The Cardineau Paper was not submitted to the USPTO during prosecution of the '081 Patent. Upon information and belief, the Examiner of the '081 Patent was never informed about the existence of the Cardineau Paper during prosecution of the '081 Patent. Had the USPTO been aware of the Cardinau paper, it would not have allowed the '081 Patents to issue.

110.    Upon information and belief, Mr. Cardineau understood that, as a named inventor of the '081 Patents, he has a duty of candor before the USPTO. The Cardineau Paper was known

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

to at least Mr. Cardineau before the '081 Patents issued. Nevertheless, Mr. Cardineau withheld the Cardineau Paper from submission to the USPTO. The single most reasonable inference that can be drawn from Mr. Cardineau's nondisclosure of material information is that it was done with the intent to mislead the USPTO.

### '153 Patent

111.    The '153 Patent was filed as Application No. 14/920,107 on October 22, 2015, and claims priority to Provisional Application Nos. 62/067,552 filed on October 23, 2014, and 62/119,972 filed on February 24, 2015. The '153 Patent lists Stephen T. Meyers, Jeremy T. Anderson, Joseph Burton Edson, Kai Jiang, Douglas A. Keszler, Michael K. Kocsis, Alan J. Telecky, and Brian J. Cardineau as inventors (collectively the "'153 Patent Inventors").

112.    Claim 11 of the '153 Patent is directed to a method for patterning a film on a substrate comprising exposing the film with EUV "wherein the film comprises a first organometallic compound represented by the formula $RSnO_{(3/2-x/2)}(OH)_x$ where ($0<x<3$), where R is an alkyl group bonded to the tin."

113.    Claim 18 of the '153 Patent is directed to a patterned structure comprising a substrate having a coating associated with a surface "wherein at least portions of the coating are represented by the formulation $(R)_zSnO_{2-z/2-x/2}(OH)_x$ ($z>0$, $x>0$, and $0<(x+z)<4$), where R is an alkyl group bonded to the tin at a secondary or tertiary carbon atom."

114.    As noted above, the Cardineau Paper discloses preparing tin clusters via dehydration of butylstannoic acid as disclosed in Eychenne-Baron. Cardineau Paper at 46; Eychenne-Baron at 138.

115.    The Cardineau Paper dissolved the tin cluster "in 2-butanone and spin coated into a thin film." Cardineau Paper at 45. The resulting film was exposed to EUV and then developed

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

the film in aqueous isopropanol. *Id.* The Cardineau Paper reported that "[u]pon exposure to 20 mJ/cm$^2$ EUV light, the film became less soluble in developer – thereby exhibiting properties of a negative tone photoresist." *Id.* Using this methodology, Cardineau was "able to print 18-nm dense lines." *Id.* at 45.

116.    US Patent Application Publication No. 2015/0056542 ("Meyers '542") – the application of the asserted '684 Patent – discloses a similar method for forming a radiation patternable coating. Meyers '542 at ¶¶ 92-98. Meyers '542 formed a precursor solution "by adding 0.209 g monobutyltin oxide hydrate (BuSnOOH) powder (TCI America) to 10 mL of 4-methyl-2-pentanol." *Id.* at ¶ 93. Meyers '542 reported that "[d]ynamic light scattering (DLS) analysis with a Möbius apparatus (Wyatt Technology) of the precursor solution (FIG. 10) is consistent with a monomodal distribution of particles with a mean diameter of ˜2 nm, consistent with the reported diameter (Eychenne-Baron et al., Organometallics, 19, 1940-1949 (2000)) of dodecameric butyltin hydroxide oxide polyatomic cations." *Id.*

117.    The resist precursor was spin-coated onto a substrate and baked to form a film of approximately 22 nm. *Id.* at ¶ 95. The substrates were exposed to EUV and developed with PEGMA to provide "[n]egative images of the well-resolved line-space patterns." *Id.* at ¶ 97.

118.    Butylstannoic acid has the formula BuSnOOH as shown in the Cardineau Paper Figure 3. Cardineau Paper at 46; Eychenne-Baron at 138. Butylstannoic acid is a compound of the formula $RSnO_{(3/2-x/2)}(OH)_x$ where ($0<x<3$), where R is an alkyl group bonded to the tin as recited in Claim 11 of the '153 Patent where, x is 1. Butylstannoic acid is a compound of the formulation $(R)_zSnO_{2-z/2-x/2}(OH)_x$ ($z>0$, $x>0$, and $0 <(x+z)<4$), where z is 1, and x is 1.

119.    The '153 Patent also uses stannoic acid compounds to form resist solutions that comprise dodecameric clusters described by Eychenne-Baron. '153 Patent at 28:19-9:11. The '153

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Patent discloses forming coated substrates using the same compounds and methods as Meyers '542. *Id.* at 29:34-30:57. In addition to the of the BuSnOOH compositions disclosed by the Cardineau Paper and Meyers '542, the '153 Patent discloses iPrSnOOH and tBuSnOOH compounds. *Id.* at 27:22-28:13.

120.    The Cardineau Paper is material to patentability. As described above, the Cardineau Paper discloses a method for patterning a film on a substrate wherein the film comprises a first organometallic compound represented by the formula $RSnO_{(3/2-x/2)}(OH)_x$ where $(0<x<3)$, where R is an alkyl group bonded to the tin.

121.    Indeed, the inventors of the '153 Patent disclosed the Cardineau Paper during prosecution of U.S. Application No. 17/705,795 (the '795 Application), a Continuation of the '153 Patent. '795 Application 02-07-2023 IDS at 2. In fact, the examiner rejected claims of the '795 Application that claimed use of a compound represented by the formula $RSnO_{(3/2-x/2)}(OH)_x$ as being anticipated by the Cardineau Paper. '795 Application 03-24-2023 Final Office Action at 5-8.

122.    The then-pending independent claim 1 of the '795 Application recited claimed:

> A method for forming a radiation sensitive, patternable organotin oxide-containing film, the method comprising:
> depositing a coating on a substrate surface using a tin precursor composition having a radiation sensitive Sn-C bond and a hydrolysable ligand to form a radiation sensitive, patternable organotin oxide-containing film, the composition comprising a composition that when completely hydrolyzed is described by the formula $RSnO_{(3/2-x/2)}(OH)_x$, $(0 < (x+z) < 4)$, where R is an alkyl, cycloalkyl or substituted alkyl moiety having from 1 to 31 carbons.

'795 Application 01-09-2023 Claims at 1.

123.    Applicants amended independent claim 1 of the '795 Application to overcome the rejection over the Cardineau Paper. '795 Application 06-20-2023 Claims at 2.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

124.    As noted above, Mr. Cardineau is a named inventor of the '153 Patent. Upon information and belief, Mr. Cardineau is the same Brian J. Cardineau who is the first author on the Cardineau Paper. Therefore, Mr. Cardineau was aware of the Cardineau Paper prior to the '153 Patent's issuance. The Cardineau Paper was not submitted to the USPTO during prosecution of the '153 Patent. Upon information and belief, the Examiner of the '153 Patent was never informed about the existence of the Cardineau Paper during prosecution of the '153 Patent. Had the USPTO been aware of the Cardineau Paper, it would not have allowed the '153 Patent to issue.

125.    Upon information and belief, Mr. Cardineau understood that, as a named inventor of the '153 Patent, he has a duty of candor before the USPTO. The Cardineau Paper was known to at least Mr. Cardineau before the '153 Patent issued. Nevertheless, Mr. Cardineau withheld the Cardineau Paper from submission to the USPTO. The single most reasonable inference that can be drawn from Mr. Cardineau's nondisclosure of material information is that it was done with the intent to mislead the USPTO.

### The '564 Patent

126.    The '564 Patent was filed as Application No. 14/858,612 ("the '612 Application") on September 17, 2015, claimed priority to U.S. Patent Application No. 12/850,867, filed on August 5, 2010, which in turn claimed priority U.S. Provisional Patent Application No. 61/350,103 ("the '103 Provisional"), filed on June 1, 2010. The '564 Patent lists Jason K. Stowers, Alan J. Telecky, Douglas A. Keszler, and Andrew Grenville as inventors (collectively the "'564 Patent Inventors").

127.    Claim 1 of the '564 Patent is directed to a structure  "comprising a substrate and a coating material on a surface of the substrate, wherein the coating material comprises metal ions with radiation sensitive ligands and wherein the coating material has an average thickness from 5

48

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

nm to 30 nm, wherein exposure of the coating material to UV, EUV and/or electron-beam radiation alters the chemical properties of the coating material creating an exposed coating material with differential dissolution rates between exposed and un-exposed regions of the coating material."

128.    As noted above, the Cardineau Paper discloses preparing tin clusters via dehydration of butylstannoic acid as disclosed in Eychenne-Baron. Cardineau Paper at 46; Eychenne-Baron at 138. The tin clusters are "spherical tin-oxo cages in which each of the twelve tin atoms is covalently bound to one organic (**R**) group. The clusters have a +2 charge." Cardineau Paper at 45.

129.    The tin cluster were dissolved "in 2-butanone and spin coated" to form 40 nm thick resist films. *Id.* at 45, 49. The resulting film was exposed to EUV and then developed the film in aqueous isopropanol. *Id.* Cardineau reported that "[u]pon exposure to 20 mJ/cm$^2$ EUV light, the film became less soluble in developer – thereby exhibiting properties of a negative tone photoresist." *Id.* Using this methodology, Cardineau was "able to print 18-nm dense lines." *Id.* at 45. The Cardineau Paper concluded that the EUV sensitivity was due to "homolytic cleavage of the tin-carbon bond" which is a "photochemical change" that "result[s] in the observed [] negative-tone imaging properties." *Id.* at 48.

130.    The '564 patent was not entitled to its claimed priority date because the specification does not provide support for the claimed limitation that the coating have a thickness of 5 nm to 30 nm. Rather, the '612 Application discloses only:

> In some embodiments, the coating materials can have an average thickness of no more than about 1 micron, in further embodiments no more than about 250 nanometers (nm), in additional embodiments from about 1 nanometers (nm) to about 50 nm, in other embodiments from about 1 nm to about 40 nm and in some embodiments from about 1 nm to about 25 nm.

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

'612 Application at 21. Similarly, the '103 Provisional does not disclose the ranges or the endpoints either. Rather, it only discloses an "optimal thickness range of 20 to 40 nm." '103 Provisional at 2.

131. These disclosures in the '612 Application and '103 Provisional are insufficient to establish written description. "[W]here a specification discloses a broad range of values and a value within that range is claimed, the disclosure must allow one skilled in the art to immediately discern the limitation at issue in the claims." *Gen. Hosp. Corp. v. Sienna Biopharm., Inc.* 888 F.3d 1368, 1372 (Fed. Cir. 2018). Selecting 5 nm and 30 nm as the claimed endpoints of the thickness limitation from the disclosures in the '867 Application and '103 Provisional "amount[] to cobbling together numbers after the fact." *Indivior UK Ltd. v. Dr. Reddy's Lab'ys S.A.*, 18 F.4th 1323, 1328-1329 (Fed. Cir. 2021). Accordingly, the '564 Patent is entitled only to the filing date of the '612 Application—September 18, 2015. The Cardineau Paper is therefore prior art to the '564 Patent.

132. Cardineau is material to patentability. As described above, the Cardineau Paper discloses a substrate (1) having a coating material comprising metal ions (i.e. the tin-oxo clusters having a 2+ charge) with radiation sensitive ligands (i.e. the organic (R) groups). The Cardineau Paper further discloses that exposure of the coating material to EUV alters the chemical properties of the coating material creating an exposed coating material with differential dissolution rates between exposed and un-exposed regions of the coating material (i.e. the homolytic cleavage of the organic (R) groups resulting in the negative-tone resist).

133. Upon information and belief, the '564 inventors had knowledge of the Cardineau Paper before the '564 Patent issued. For example, on April 15, 2015—before the '612 Application was filed—inventor Douglas Keszler published an article citing the Cardineau Paper: Son, Jung Ho, Park, Deok-Hie, **Keszler, Douglas A**., & Casey, William H., "Acid Stable

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Peroxoniobophosphate Clusters to Make Patterned Films," Chem. Eur. J. 21:6727-6731 (2015) at 6727, 6731 (cited reference number 2). Therefore, at least Mr. Keszler as aware of the Cardineau Paper prior to the '564 Patent's issuance. The Cardineau Paper was not submitted to the USPTO during prosecution of the '564 Patent. Upon information and belief, the Examiner of the '564 Patent was never informed about the existence of the Cardineau Paper during prosecution of the '564 Patent. Had the Examiner been aware of the Cardineau Paper, the Examiner would not have allowed the '564 Patent to issue.

134.    Upon information and belief, Mr. Kesler understood that, as a named inventor of the '564 Patent, he has a duty of candor before the USPTO. For example, on September 30, 2015, Mr. Keszler signed a declaration stating that he "acknowledge[d] the duty to disclose to the United States Patent Office all information known to me to be material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56." The Cardineau Paper was known to at least Mr. Keszler before the '564 Patent issued. Nevertheless, Mr. Keszler withheld the Cardineau Paper from submission to the USPTO. The single most reasonable inference that can be drawn from Mr. Keszler's nondisclosure of material information is that it was done with the intent to mislead the USPTO.

135.    This case is exceptional, and the Lam is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## COUNT XVIII (Declaratory Judgment of Unenforceability of the Inpria Patents Due to Inequitable Conduct)

136.    Lam realleges and incorporates by reference the allegations in Paragraphs 1-135 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

137.    As set forth below, the claims of the Inpria Patents are unenforceable because they were obtained based on a pervasive pattern of inequitable conduct.

***Dr. Brainard studied organometallic resists for EUV***

138.    Dr. Robert Brainard, Ph.D. ("Dr. Brainard") is a Professor in the Department of Nanoscale Science & Engineering at SUNY at Albany, in the College of Nanotechnology, Science, and Engineering (CNSE). Upon information and belief, Dr. Brainard is an earlier researcher in the field of the design, synthesis, and testing of photoresists for EUV.  Dr. Brainard was one of the first chemists in the world to design resists for use in Extreme Ultraviolet (EUV, 13.5 nm) Lithography, starting in 1998 while working at Rohm and Haas in Massachusetts. As a professor, he and his students have continued to design, synthesize, and characterize new materials for use in photoresists. Additionally, much of his group's research has focused on understanding the fundamental mechanisms of exposure to EUV light. *See* https://sunypoly.edu/faculty-and-staff/robert-brainard.html.

139.    Upon information and belief, Dr. Brainard began designing, synthesizing, and testing organometallic compounds containing transition or main group metallic elements as molecular organometallic resists for EUV (also referred to by the acronym "MORE") in 2011 and continues to design, synthesize, and test new resists today.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

140.    Upon information and belief, in 2011, Dr. Brainard conceived of using thin films of organometallic compounds with high EUV optical density and high mass densities as high resolution, low line edge roughness (LER) EUV photoresists—including as particularly relevant here, tin-oxide photoresists. The use of such materials for photoresists shared some of the strengths of prior hafnium-based resists while avoiding some of their weaknesses.

***SUNY and Inpria are Members of SEMATECH and shared confidential information***

141.    Upon information and belief, in 2003, SUNY's CNSE partnered with SEMATECH (**SE**miconductor **MA**nufacturing **TECH**nology), a consortium aimed at cooperation between companies, universities, regional government, and others in order to foster technology innovation in the semiconductor industry. SEMATECH had access to laboratories and other facilities in Albany, New York, and its headquarters were at CNSE in Albany, New York. In 2015, SEMATECH was merged into SUNY Polytechnic Institute, and, on information and belief, SUNY RF is the successor to and owner of all, right, title and interest in SEMATECH and its intellectual property.

142.    Upon information and belief, in April 2012, Inpria joined SEMATECH's Resist Materials and Development Center (RMDC). In an April 24, 2012 press release, Inpria announced that, "[a]s a resist member of SEMATECH's lithography program, Inpria will collaborate with SEMATECH engineers on critical issues for resist in extreme ultraviolet (EUV) lithography." Inpria's CEO, Andrew Grenville, praised the partnership, stating that "[o]ur partnership with SEMATECH provides Inpria the opportunity to rapidly increase the rate of development for our EUV lithography materials . . . . This collaboration further demonstrates our commitment to tackle the grand challenges in lithography faced by the semiconductor industry." *See*

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

https://www.businesswire.com/news/home/20120424005187/en/npria-Joins-SEMATECH's-Resist-Center-at-UAlbany-NanoCollege-for-Advanced-EUV-Resist-Development.

143.    Upon information and belief, by 2012, SUNY and Inpria began collaborating on the MORE project when then-Inpria CEO Andrew Grenville contacted Dr. Brainard and Brian Cardineau regarding Dr. Brainard's MORE research. Upon information and belief, such collaboration took the form of email, telephonic, and in-person communications, both one-on-one and through SEMATECH, during which Grenville and the other alleged named inventors at Inpria became aware of Dr. Brainard's MORE research subject to a duty of confidentiality, including for example, as required of all SEMATECH members, as understood by the parties, and pursuant to a non-disclosure agreement effective as of June 21, 2013. Upon information and belief, in or around October 2014, Inpria took its research and development partnership with CNSE one step further when Inpria and Grenville again sought out Dr. Brainard and his team of researchers to learn from their prior research and to conduct additional research into MORE that could be shared with Inpria. Upon information and belief, Inpria and Grenville entered into a two-year Research Agreement with SUNY RF—effective January 1, 2015 (hereinafter the "2015 Research Agreement" or the "2015 SRA," attached as Exhibit 4)—to promote "research and development activities related to organometallic photoresist materials." The Research agreement lists Andrew Grenville (CEO and President of Inpria) as the principal liaison and Stephen Meyers (Lead, Resist Chemistry) as Inpria's technical contact and project coordinator. Ex. 4 at 1, 6, 24. Andrew Grenville signed the agreement. *Id.* at 10. Upon information and belief, as Grenville relayed to Dr. Brainard in October 2014, "Our high level goals are well aligned (i.e., to make the best EUV resist!), and we will crack this nut with and only with the integrated team capable of doing so. I am intent on doing so under working relationships that are fair and equitable all around."

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

144.    Upon information and belief, Dr. Brainard, and students and researchers working under Dr. Brainard's direction had developed an expertise in the MORE field—as well as certain "PRIOR PROJECT IP" concerning "Molecular Organometallic Resists for EUV."Upon information and belief, Inpria requested in the 2015 SRA and SUNY RF agreed to provide Dr. Brainard as the "principal investigator" to "supervise and conduct the work on the PROJECT," as described in the "Scope of Work" attached as Exhibit A to the 2015 SRA. Inpria's Grenville was designated as Inpria's "principal liaison" for the Project, and he signed the 2015 SRA on January 15, 2015.

145.    Upon information and belief, Inpria entered into another two-year Research Agreement with SUNY RF—effective May 1, 2017 (hereinafter the "2017 Research Agreement" or the "2017 SRA," attached as Ex. 5)—to continue to promote "research and development activities related to organometallic photoresist materials." Upon information and belief, Inpria again requested that Dr. Brainard serve as the "principal investigator" to supervise and conduct the work of the 2017 Project, as described in the 2017 "Scope of Work." Inpria's Grenville was again designated as Inpria's "principal liaison" for the Project and Meyers was additionally listed as Inpria's technical contact and project coordinator. Ex. 4 at 1,  17 Grenville signed the 2017 SRA on May 5, 2017. *Id.* at 10. Upon information and belief, on April 11, 2019, SUNY RF and Inpria agreed to extend the term of the 2017 Project to August 31, 2019.

146.    Upon information and belief, for the purposes of completing these Research Projects, SUNY RF agreed to grant Inpria a limited license to the intellectual property that SUNY RF had acquired during the course of Dr. Brainard's previous research and development in the MORE field. Upon information and belief, these licenses were expressly limited and could only be used for the purposes of completing the Research Projects and for no other purposes, and SUNY

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

RF expressly stated in both Research Agreements that SUNY RF did not grant Inpria a license to otherwise use, make, sell, offer to sell, export, commercialize, etc., or profit in any way from SUNY RF's PRIOR PROJECT IP.

147.    Upon information and belief, SUNY RF and Inpria also expressly agreed that SUNY RF and Inpria would hold joint title to all intellectual property rights generated, conceived, or reduced to practice during the Research Projects that were not generated, conceived or reduced to practice exclusively by either SUNY RF or Inpria (hereinafter referred to as "JOINT IP"). SUNY RF did not grant Inpria any license with respect to SUNY RF's interest in said JOINT IP. Instead, both Research Agreements offered Inpria an exclusive 120-day option to acquire an exclusive, royalty bearing license to SUNY RF's interest in such JOINT IP. Upon information and belief, Inpria, however, never exercised these options and thus never acquired any license to SUNY RF's interest in such JOINT IP, and SUNY RF has never otherwise granted Inpria a license to use, make, sell, offer to sell, export, commercialize, etc., or profit in any way from SUNY RF's interest in such JOINT IP.

148.    Upon information and belief, For several years, from January 1, 2015 to August 31, 2019, SUNY RF and Dr. Brainard and his researchers conducted the Research Projects, researching and developing MORE photoresists, and methods concerning the same, for use with EUV lithography and provided Inpria access to SUNY RF's research for the limited purpose of completing the Research Projects and for no other purpose. Upon information and belief, over this nearly five-year project, Dr. Brainard and his researchers provided at least monthly reports of their findings to Inpria and attended numerous meetings and phone calls with Inpria scientists and business executives during which Dr. Brainard and the SUNY RF team relayed the results of their research and development concerning MORE materials and methods. On information and belief,

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

at no time during this nearly five-year project did Inpria disclose to SUNY RF that Inpria had secretly been incorporating SUNY RF's PRIOR PROJECT IP, FOUNDATION Inventions, and/or JOINT IP into both Inpria's commercial products and methods and patent applications that Inpria had filed around the world.

149.    Inpria and JSR also hired many of Dr. Brainard's former graduate students and researchers from his MORE program, including Brian Cardineau (now Principal Chemist at Inpria), Amrit Narasimhan (now Lead Engineer (Lithography) at Inpria) and Dr. William Earley (a former Senior Research Chemist at Inpria, now deceased), and included them on the Research Projects while simultaneously filing the Inpria Patents and commercializing the research and technology owned and disclosed by SUNY RF.

150.    Upon information and belief, SUNY RF disclosed to Inpria its "revolutionary new photoresists based on Molecular Organometallic Resists for EUV (MORE)"—conceived of by Dr. Brainard on June 28, 2011—including a "Tin-12 Oxocluster with an oxalate counterion" (also known as dodecameric butyltin hydroxide oxide polyatomic cations) in which "each tin has one bond to carbon and four or five bonds to oxygen" with "three hydroxyl groups" at "each side of the structure" and "prepared with sulfonate and carboxylate anionic ligands." One of the expressly stated goals of SUNY RF invention and PRIOR PROJECT IP disclosed to Inpria was "to synthesize a series of Sn-12 clusters containing alkyl groups with different radical stabilities."

151.    Dr. Brainard, alone or with one or more of his student advisees (including then-SUNY graduate student and now Inpria Principal Chemist, Brian Cardineau, and then-SUNY researcher and former Inpria employee, William Earley), conceived of and/or reduced to practice one or more of the claimed inventions recited in each of the '684, '505, '048, '081, '153, and '903

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Patents and then disclosed this research to Inpria through SEMATECH and/or through the Parties' Research Agreements.

***To the extent that the '684 Patent is valid, Dr. Brainard alone or with one or more of his student advisees is a Co-Inventor of the '684 Patent***

152.     Upon information and belief, Dr. Brainard, with assistance from Brian Cardineau, conceived of and/or reduced to practice one or more of the purported inventions claimed in the '684 Patent.

153.     On August 22, 2013, U.S. Application No. 13/973,098 ("the '098 Application") was filed. On April 15, 2020, the '098 Application issued as the '684 Patent. The '684 Patent lists as inventors Stephen T. Meyers, Douglas A. Keszler, Kai Jiang, Jeremy Anderson, and Andrew Grenville.

154.     The '684 Patent claims, *inter alia*:

A coated substrate comprising a radiation sensitive coating having an average thickness from about 5 nm to about 200 nm and a thickness variation of no more than about 50% from the average at any point along the coating, the coating comprising a metal oxo-hydroxo network with metal cations having organic ligands with metal carbon bonds and/or with metal carboxylate bonds, wherein the oxo-hydroxo network has both M-O—H linkages and M-O-M linkages.

'684 Patent at claim 10.

155.     The '684 Patent includes an experimental example for the preparation of a precursor solution from  monobutyltin oxide hydrate (BuSnOOH):

A resist precursor solution was prepared by adding 0.209 g monobutyltin oxide hydrate (BuSnOOH) powder (TCI America) to 10 mL of 4-methyl-2-pentanol. The solution was placed in a closed vial and allowed to stir for 24 h. The resulting mixture was centrifuged at 4000 rpm for 15 minutes, and filtered through a 0.45 μm PTFE syringe filter to remove insoluble material. Solvent evaporation and calcination of this sample at 600° C. revealed a tin concentration of 0.093 M on the basis of $SnO_2$ residual mass. Dynamic light scattering (DLS) analysis with a Möbius apparatus (Wyatt Technology) of the precursor solution (FIG. 10) is consistent with a monomodal distribution of particles with a mean diameter of ~2

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

> nm, consistent with the reported diameter (Eychenne-Baron et al., Organometallics,
> 19, 1940-1949 (2000)) of dodecameric butyltin hydroxide oxide polyatomic
> cations. Thus, the results are consistent with cluster formation within the non-
> aqueous solutions.

'684 Patent at 21:42-58. The '684 Patent describes that this precursor solution can be spin-

coated on wafers and effectively patterned with EUV. *Id.* at 22:1-43.

156.    The compounds having a "monomodal distribution of particles with a mean

diameter of ~2 consistent with the reported diameter" in Eychenne-Baron have the M-O-M, M-

OH and M-Carbon bonds required by the claims of the '684 Patent.

157.    Upon information and belief, dodecameric butyltin hydroxide oxide polyatomic

cations were conceived of and reduced to practice by Dr. Brainard with assistance from Brian

Cardineau at SUNY and disclosed to Inpria. Upon information and belief, Dr. Brainard and Brian

Cardineau disclosed this purported invention to Inpria and its agents, such as Inpria CEO Andrew

Grenville and Inpria Lead Resist Chemist Stephen Meyer. For example, an "invention disclosure,"

which includes a documented conception dates of no later than "June 28, 2011," discloses a

purported invention "to use organo-tin and organo-bismuth compounds or polymers as resists for

use in Extreme Ultraviolet Lithography." It expressly discloses "Sn-12 clusters," which "are

oxoclusters containing twelve tin atoms found to undergo EUV photochemistry in our preliminary

trials," which have been investigated "through anionic ligand exchange and containing butyl,

phenyl, and allyl organometallic groups." Exhibits 4-5 (Exhibit C to the 2015 and 2017 Research

Agreements). This disclosure provides that the "best organometallic Tin-based resist was our Tin-

12 Oxocluster with an oxalate counter-anion." This "invention disclosure" further describes the

synthesis and testing of tin clusters having various alkyl and alkenyl ligands.

158.    Upon information and belief, on May 1, 2012, Dr. Brainard made a confidential

presentation to SEMATECH members, including Inpria, describing his objective to "[i]nvent

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

revolutionary new photoresists based on Molecular Organometallic Resists for EUV (MORE)." This presentation explained that his MORE program was focused on five classes of compounds, including "Mono-Nuclear Organometallic or Inorganic Compounds," "Transition Metal Oxide/Oxo-Carboxylate Clusters," and "Tin Oxoclusters" among others. It explained that his MORE program was focused "on elements with high EUV OD's and high mass densities," including "In" (indium), "Sn" (tin), and "Sb" (antimony) among others. Upon information and belief, Dr. Brainard made additional confidential MORE presentations to SEMATECH members, including Inpria, including on June 14, 2013.

159.    Upon information and belief, on May 20, 2013, then-CNSE graduate student Brian Cardineau presented his doctoral thesis titled "Novel Resist Systems for EUV Lithography: LER, Nanoparticle, Chain-Scission and MORE" in "partial fulfillment of the degree of Doctor of Philosophy in Nanoscale Science at the College of Nanoscale Science and Engineering." The thesis was conducted at CNSE under his researcher adviser, Dr. Brainard. Upon information and belief, Inpria had access to and obtained this doctoral thesis presentation. In explaining "MORE Benefits," the thesis presentation explained, "[w]e have proposed a new platform of resist consisting of high optical density metal oxide organometallic compounds," which potential benefits included "High EUV OD," "High Mass Density," "No Acid Diffusion," "Excellent Etch Rates," and "High Uncatalyzed Reactivity." The thesis presentation also expressly concerned "Sn-12 Clusters" which "we tested for EUV sensitivity" and which cluster was known in the literature at "Eychenne-Baron et al, Organometallics, 19, (2000), 1940-1949"—the exact same reference that Inpria would later quote in its application for the '684 Patent.

160.    Neither Dr. Brainard nor Brian Cardineau is named as an inventor of the '684 Patent. During prosecution, the '684 Patent, none of Inpria, the '684 inventors, or the attorneys

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

involved in the prosecution of the '684 Patent, including Peter S. Dardi, disclosed to the U.S. Patent and Trademark Office the contributions of Dr. Brainard or Brian Cardineau and did not request that either Dr. Brainard or Brian Cardineau be named as an inventor.

161.    Upon information and belief, Inpria, the '684 Patent Inventors and the attorneys involved in the prosecution of the '684 Patent Applications, including Peter S. Dardi understood that the '684 Patent Inventors had not conceived of the subject matter claimed in the '684 Patent. Namely, Andrew Grenville, who communicated directly with Dr. Brainard, and Stephen Meyers, who was the technical contact under the 2015 and 2017 SRA, knew that the '684 Patent Inventors had not conceived of the subject matter claimed in the '684 Patent. Nevertheless, each of the '684 Patent Inventors signed declarations in which they each declared that they were the "original inventor or an original joint inventor of a claimed invention in application" and acknowledged their duty to disclose to the United States Patent and Trademark Office all information known to be material to patentability.

162.    Thus, Inpria, the '684 Patent Inventors and the attorneys involved in the prosecution of the '684 Patent Applications, including Peter S. Dardi, knew one fact and presented another, thereby permitting an inference that they made the false representations with the intent to deceive. *See Dippin Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007). In view of the circumstances, the single most reasonable inference that can be drawn from the facts known to date is that at least Inpria, including at least Andrew Grenville and Stephen Meyers, intended to deceive the USPTO by filing false declarations and failing to disclose the true inventors of the '684 Patent.

163.    A patent may only be awarded to "**[w]hoever invents or discovers** any new and useful process, machine, manufacture, or composition of matter, or any new and useful

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

improvement thereof." 35 U.S.C. § 101 (emphasis added). "As a critical requirement for obtaining a patent, inventorship is material." *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000) (citing pre-AIA  35 U.S.C. § 102(f)).

164.    Upon information and belief, the '684 Patent Inventors, and their attorneys, including Peter S. Dardi, along with any individuals at Inpria involved in the filing and prosecution of the '684 Patents, each violated their duty of candor and good faith to the USPTO by submitting declarations stating that they were the "original inventor or an original joint inventor of a claimed invention in application." Inventorship is *per se* material to patentability.

165.    As a result of the '684 Patent Inventors' and their attorneys' including Peter S. Dardi, intentional false claim of inventorship with the intent to deceive the USPTO, the '684 Patent Inventors, and their attorneys, including Peter S. Dardi, committed inequitable conduct, thereby rendering the '684, Patent unenforceable. Upon information and belief other individuals involved in the prosecution of the '684 Patent, such as individuals at Inpria, also committed inequitable conduct rendering the '684 Patent unenforceable.

166.    This case is exceptional, and the Lam is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

***To the extent that the '505, '048, and '081 Patents are valid, Dr. Brainard alone or with one or more of his student advisees is a Co-Inventor of the  '505, '048, and '081 Patents***

167.    Upon information and belief, Dr. Brainard, with assistance from Brian Cardineau, Dan Freedman, Miles Marnell, James Passarelli, Michael Murphy, and Ryan Del Re, conceived of and/or reduced to practice one or more of the purported inventions claimed in the '505, '048, and '081 Patents.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

168.    The '505, '048, and '081 Patents all claim priority to the same provisional patent application filed by former CNSE graduate student Brian Cardineau during the course of the Research Agreements on October 13, 2015, share the same specification, and concern "Organotin Oxide Hydroxide Patterning Compositions, Precursors, and Patterning." As stated in their specifications, these patents relate to "precursor compositions that can be coated and in situ hydrolysed to form coatings comprising organotin oxide hydroxide," and are expressly stated to be based on the subject matter claimed in the '684 Patent, discussed above and that were informed by SUNY RF purported inventions and disclosures to Inpria. According to the specifications, the organometallic composition in the claimed precursor solutions '505, '048, and '081 Patents "can be represented by the formula $R_zSnO_{(2-(z/2)-(x/2))}(OH)_x$ where $0<z\leq2$ and $0<(z+x)\leq4$, by the formula $R_nSnX_{4-n}$ where n=1 or 2, or a mixture thereof, in which R is a hydrocarbyl group with 1-31 carbon atoms, and X is a ligand with a hydrolysable M-X bond."

169.    The '505 Patent claims:

A method for forming a radiation patternable film comprising an oxo-hydroxo network with metal cations having organic ligands with metal carbon bonds and metal oxygen bonds, the method comprising:
inputting into a deposition chamber closed from the ambient atmosphere a first precursor vapor comprising a composition represented by the formula $R_nSnX_{4-n}$ wherein R is an organic ligand with 1-31 carbon atoms bound to Sn with a metal-carbon bond, n=1-3 and X is a ligand having a hydrolysable bond with Sn; and
inputting a second precursor vapor comprising an oxygen-containing compound capable of reacting with the composition in the first precursor vapor under conditions in the deposition chamber to form a composition with non-volatile components and a volatile component comprising a reaction product with X ligand or ligands, wherein a substrate is configured with a surface to receive the non-volatile components of the composition

'505 Patent at claim 1.

170.    The '048 Patent claims:

A system comprising:
a deposition chamber having an interior isolated from the ambient

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

atmosphere;

an inlet into the deposition chamber configured to receive a deposition on a surface of the substrate, wherein the substrate is maintained at a temperature of less than 200° C.;

an inlet into the deposition chamber;

structure configured to deliver flow from a supply of an inert gas;

a supply of an organotin composition comprising a compound described by the formula $RSnX_3$, where R is an organic ligand with 1-31 carbon atoms and is bound to Sn with a metal-carbon bond and wherein X is selected from the group consisting of alkylamido or dialkylamido ($—NR^1R^2$, where $R^1$ and $R^2$ are independently hydrocarbon groups with 1-10 carbon atoms or hydrogen), siloxo ($—OSiR^1R^2R^3$, where $R^1$, $R^2$, are independently hydrocarbon groups with 1-10 carbon atoms), silylamido ($—N(SiR^1{}_3)(R^2)$, where $R^1$ and $R^2$ are independently hydrocarbon groups with 1-10 carbon atoms), disilylamido ($—N(SiR^1{}_3)(SiR^2{}_3)$ where $R^1$ and $R^2$ are independently hydrocarbon groups with 1-10 carbon atoms), alkoxo and aryloxo ($—OR$, where R is an alkyl or aryl group with 1-10 carbon atoms), azido ($—N_3$), alkynido ($—C\equiv CR$, where R is a hydrocarbon group with 1-9 carbon atoms), amidato ($—NR^1(COR^2)$ where $R^1$ and $R^2$ are independently hydrocarbon groups with 1-7 carbon atoms or hydrogen), amidinato ($—NR^1C(NR^2)R^3$) where $R^1$ and $R^2$ are independently hydrocarbon groups with 1-8 carbon atoms or hydrogen), imido ($—N(COR^1)(COR^2)$, where $R^1$ and $R^2$ are independently hydrocarbon groups with 1-8 carbon atoms or hydrogen), or fluorinated analogues thereof, or combinations thereof;

structure configured to deliver flow of a first precursor vapor from the supply of the organotin compound with the inert gas as a carrier gas to the inlet to provide for formation of an organotin layer on the substrate surface within the deposition chamber; and

structure to deliver a second precursor vapor comprising water, hydrogen peroxide or a combination thereof capable of reacting with the composition in the first precursor vapor under conditions in the deposition chamber to form a composition with non-volatile components and a volatile component comprising hydrolysis reaction product with X, wherein the substrate is configured with a surface to receive the non-volatile components of the composition.

'048 Patent at claim 1.

171.    The '081 Patent claims:

A method for forming a radiation patternable organometallic coating, the method comprising:

depositing a tin composition having organic ligands and hydrolysable ligands to form a coating with a dry thickness from about 1 nanometers (nm) to about 50 nm,

wherein the organic ligands comprise radiation sensitive Sn—C bonds, and

wherein the depositing is by a vapor-based deposition process.

'081 Patent at claim 1.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

172.    Upon information and belief, Dr. Brainard, with assistance from Brian Cardineau, Dan Freedman, Miles Marnell, James Passarelli, Michael Murphy, and Ryan Del Re, conceived of and/or reduced to practice the purported inventions claimed in the 505, '048, and '081 Patents. For example, the invention disclosure report RN2-11-27 Molecular Organometallic Resists for EUV (MORE) discloses a purported invention "to use thin films of organometallic compounds with high EUV OD and high mass densities" "as high resolution, low LER EUV photoresists," including "Mono-Nuclear Organometallic or Inorganic Compounds," "Transition Metal Oxide/Oxo-Carboxylate Clusters," and "Tin Oxoclusters." RN2-11-27 explains that "[b]ecause the proposed research is so revolutionary, we will need to start this program by addressing much more fundamental questions about material properties than would typically be required [for] resists based on organic polymers." RN2-11-27 also discloses that "[w]e will start by dissolving the high OD compounds in organic solvents or water and spin coating to a target thickness of 20 nm."

173.    RN2-11-27.2 concerning Tin and Bismuth Compounds discloses various purported inventions related to precursor solutions containing Tin-12 oxoclusters, such as in the form "[(RSn)12O14(OH)6][X]2", including mechanisms causing solubility changes during exposure including anionic ligand decomposition, homolysis of the Sn-C bonds, and metathesis of the Sn-O framework. As one example, it expressly discloses synthesis of novel Tin-12 oxoclusters with various alkyl groups, including phenyl and butyl, or allyl groups using an organic amine, tetrahydrofuran, and water under hydrolysis conditions. Upon information and belief, none of the alleged named inventors contributed to or signed any of these invention disclosure reports, except for Brian Cardineau who did so while at SUNY and pursuant to an assignment of such inventions to SUNY RF.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

174.    Upon information and belief, on May 20, 2013, then-CNSE graduate student Brian Cardineau presented his doctoral thesis titled "Novel Resist Systems for EUV Lithography: LER, Nanoparticle, Chain-Scission and MORE" in "partial fulfillment of the degree of Doctor of Philosophy in Nanoscale Science at the College of Nanoscale Science and Engineering." The thesis was conducted at CNSE under his researcher adviser Dr. Brainard. It discloses synthesizing tin-oxoclusters with R groups phenyl, allyl, butyl, in a base and water, as well as modifying the various ligands to affect EUV resolution. Upon information and belief, none of the alleged named inventors contributed to this report, except for Brian Cardineau. Upon information and belief, Brian Cardineau contributed to this report while at SUNY and pursuant to an assignment of such inventions to SUNY RF.

175.    In the 2015 Statement of Work, SUNY RF described its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including its discovery that one of the "key features" of the mechanism of tin-based resists "is the idea that the exposed resist reacts with air or moisture to create an insoluble tin-oxide compound" and to synthesize tin clusters with benzyl groups and expose them to "air/humidity." Upon information and belief, none of the alleged named inventors contributed to of this prior work or Statement of Work, except for Brian Cardineau. Upon information and belief, Brian Cardineau contributed to this report while at SUNY and pursuant to an assignment of such inventions to SUNY RF.

176.    Upon information and belief, on May 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{5-n}$, including both its molecular studies of Tin-based resists with different R and X groups, including those in aliphatic, aromatic Sb – C, and carboxylate groups, and its milestones concerning polynuclear metal-based resists including those that combined Tin-12 with

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

organometallic metal acrylate. Upon information and belief, none of the alleged named inventors contributed to any of these reports.

177.    Upon information and belief, on June 19, 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including its discovery that "tin will be most stable if it is of the form $R_2SnX_2$" "[w]here R is alkyl and X is an oxygen ligand (e.g., CO2-)" and the "need to fill the empty orbitals in the tin to increase the solubility of the tin oxalates," including by intramolecular rearrangement" where "unconstrained carbonyls can coordinate Sn, making a six coordinate system." Upon information and belief, none of the alleged named inventors contributed to any of these reports.

178.    Upon information and belief, on August 17, 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including by recounting its past successes synthesizing benzyl tin complexes and outlining its strategy for further tin research in the form "$R_2SnX_2$" with varying R and X groups. Upon information and belief, none of the alleged named inventors contributed to any of these reports.

179.    Upon information and belief, on September 30, 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including synthesizing $R_2SnX_2$ compounds with iodine in the R and/or X groups, and using helper ligands in the form of a ketone or an ester as an R group to increase the solubility of such organotin resists. It also recounted again that one of the attributes that made "MORE an industry leading resist" was that it was capable of "aqueous development."

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Upon information and belief, none of the alleged named inventors contributed to any of these reports.

180.    Upon information and belief, on December 4, 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including by summarizing its mechanistic findings in 2015 concerning $R_2SnX_2$ compounds developed in water vapor and describing further changes in R and R' groups to increase stability and sensitivity of such organotin compositions and resists. Upon information and belief, none of the alleged named inventors contributed to any of these reports.

181.    Upon information and belief, throughout 2016, SUNY RF sent confidential research presentations to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including those that were synthesized by incorporating water into the resist films and into vacuum chambers through for example, formulation solvents, hydrates, and hydroscopic polymers, as well as SUNY RF's so-called "Return to Aqueous Development," to research and develop why water development allowed for superior contrast in MORE resists. Upon information and belief, none of the alleged named inventors contributed to any of these reports.

182.    Upon information and belief, Inpria, the '505 Patent Inventors, the '048 Patent Inventors, the '081 Patent Inventors and the attorneys involved in the prosecution of the '505 Patent, '048 Patent, and '081 Patent Applications, including Peter S. Dardi and Diane E. Bennett understood that the '505 Patent Inventors, the '048 Patent Inventors, the '081 Patent Inventors had not invented the subject matter claimed in the '505, '048, and '081 Patents. Nevertheless, each of the '505 Patent Inventors, the '048 Patent Inventors, the '081 Patent Inventors signed declarations in which they each declared that they were an "original inventor or an original joint inventor of a

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

claimed invention in application" and acknowledged their duty to disclose to the United States Patent and Trademark Office all information known to be material to patentability.

183.    Thus, the '505 Patent Inventors, the '048 Patent Inventors, the '081 Patent Inventors and the attorneys involved in the prosecution of the '505, '048, and '081 Patent Applications, including Peter S. Dardi and Diane E. Bennett, and individuals at Inpria involved in the prosecution of the '505, '048, and '081 Patent Applications knew one fact and presented another, thereby permitting an inference that they made the false representations with the intent to deceive. *See Dippin Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007). In view of the circumstances, the single most reasonable inference that can be drawn from the facts known to date is that at least Andrew Grenville and Stephen Meyers intended to deceive the USPTO by filing false declarations and failing to disclose the true inventors of the '505, '048, and '081 Patents.

184.    A patent may only be awarded to "**[w]hoever invents or discovers** any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101 (emphasis added). "As a critical requirement for obtaining a patent, inventorship is material." *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000) (citing pre-AIA  35 U.S.C. § 102(f)).

185.    Upon information and belief, the '505 Patent Inventors, the '048 Patent Inventors, the '081 Patent Inventors and the attorneys involved in the prosecution of the '505, '048, and '081 Patent Applications, including Peter S. Dardi and Diane E. Bennett, along with any individuals at Inpria involved in the filing and prosecution of the '505, '048, and '081 Patents, each violated their duty of candor and good faith to the USPTO by submitting declarations that they were the "original

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

inventor or an original joint inventor of a claimed invention in application." Inventorship is *per se* material to patentability.

186.    As a result of the '505 Patent Inventors, the '048 Patent Inventors, the '081 Patent Inventors and the attorneys involved in the prosecution of the '505, '048, and '081 Patent Applications, including Peter S. Dardi and Diane E. Bennett, intentional false claim of inventorship with the intent to deceive the USPTO, the '505 Patent Inventors, the '048 Patent Inventors, the '081 Patent Inventors and the attorneys involved in the prosecution of the '505, '048, and '081 Patent Applications, including Peter S. Dardi and Diane E. Bennett, committed inequitable conduct, thereby rendering the '684, Patent unenforceable. Upon information and belief other individuals involved in the prosecution of the '505, '048, and '081 Patents, such as individuals at Inpria, also committed inequitable conduct rendering the '505, '048, and '081 Patents unenforceable.

187.    This case is exceptional, and Lam is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

**To the extent that the '153 is valid, Dr. Brainard alone or with one or more of his student advisees is a Co-Inventor of the '153 Patent**

188.    Upon information and belief, Dr. Brainard, with assistance from Brian Cardineau, Dan Freedman, Miles Marnell, James Passarelli, Michael Murphy, and Ryan Del Re, conceived of and/or reduced to practice one or more of the inventions claimed in the '153 Patent.

189.    The '153 Patent claims:

> 11. A method for patterning a film on a substrate, the method comprising:
>      exposing the film with EUV doses of no more than about $80 \text{ mJ/cm}^2$ wherein the film has an average thickness from about 2 nm to about 50 nm and wherein the film comprises a first organometallic compound represented by the formula $RsnO_{3/2-x/2}(OH)_x$ where ($0<x<3$), where R is an alkyl group bonded to the tin; and

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

developing the film to form features at half-pitch no more than about 25 nm and linewidth roughness no more than about 5 nm.

And

19. A patterned structure comprising a substrate having a surface and a coating associated with the surface wherein at least portions of the coating are represented by the formulation $(R)_z SnO_{2-z/2-x/2}(OH)_x$ ($z>0$, $x>0$, and $0 <(x+z)<4$), where R is an alkyl group bonded to the tin at a secondary or tertiary carbon atom, wherein the coating has an average thickness of no more than about 50 nm.

'153 Patent at Claims 11, 18.

190.    Upon information and belief, Dr. Brainard, with assistance from Brian Cardineau, Dan Freedman, Miles Marnell, James Passarelli, Michael Murphy, and Ryan Del Re, conceived of and/or reduced to practice one or more of the purported inventions claimed in the '153 Patent and disclosed them to Inpria and its agents such as Inpria CEO Andrew Grenville and Inpria scientist Stephen Meyers. For example, the invention disclosure report RN2-11-27 Molecular Organometallic Resists for EUV (MORE) discloses a purported invention "to use thin films of organometallic compounds with high EUV OD and high mass densities" "as high resolution, low LER EUV photoresists," including "Mono-Nuclear Organometallic or Inorganic Compounds," "Transition Metal Oxide/Oxo-Carboxylate Clusters," and "Tin Oxoclusters." RN2-11-27 explains that "[b]ecause the proposed research is so revolutionary, we will need to start this program by addressing much more fundamental questions about material properties than would typically be required [for] resists based on organic polymers." RN2-11-27 also discloses that "[w]e will start by dissolving the high OD compounds in organic solvents or water and spin coating to a target thickness of 20 nm."

191.    RN2-11-27.2 concerning Tin and Bismuth Compounds discloses various purported inventions related to precursor solutions containing Tin-12 oxoclusters, such as in the form

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

"$[(RSn)_{12}O_{14}(OH)_6][X]_2$", including mechanisms causing solubility changes during exposure including anionic ligand decomposition, homolysis of the Sn-C bonds, and metathesis of the Sn-O framework. As one example, it expressly discloses synthesis of novel Tin-12 oxoclusters with various alkyl groups including branched alkyl groups. It also expressly discloses synthesis of novel Tin-12 oxoclusters with various alkyl groups, including phenyl and butyl, or allyl groups using an organic amine, tetrahydrofuran, and water under hydrolysis conditions. Upon information and belief, none of the alleged named inventors contributed to or signed any of these invention disclosure reports, except for Brian Cardineau who did so while at SUNY and pursuant to an assignment of such purported inventions to SUNY RF.

192.    Upon information and belief, on May 20, 2013, then-CNSE graduate student Brian Cardineau presented his doctoral thesis titled "Novel Resist Systems for EUV Lithography: LER, Nanoparticle, Chain-Scission and MORE" in "partial fulfillment of the degree of Doctor of Philosophy in Nanoscale Science at the College of Nanoscale Science and Engineering." The thesis was conducted at CNSE under his researcher adviser Dr. Brainard. Inpria had access to and, on information and belief, obtained this doctoral thesis presentation. In explaining "MORE Benefits," the thesis presentation explained, "[w]e have proposed a new platform of resist consisting of high optical density metal oxide organometallic compounds," which potential benefits included "High EUV OD," "High Mass Density," "No Acid Diffusion," "Excellent Etch Rates," and "High Uncatalyzed Reactivity." The thesis presentation also expressly concerned "Sn-12 Clusters" which "we tested for EUV sensitivity" and which cluster was known in the literature at "Eychenne-Baron et al, Organometallics, 19, (2000), 1940-1949"—the exact same reference that Inpria would later quote in its application for the '153 Patent.

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

193.    In the 2015 Statement of Work, SUNY RF described its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including its discovery that one of the "key features" of the mechanism of tin-based resists "is the idea that the exposed resist reacts with air or moisture to create an insoluble tin-oxide compound" and to synthesize tin clusters with benzyl groups and expose them to "air/humidity." Upon information and belief, none of the alleged named inventors contributed to of this prior work or Statement of Work, except for Brian Cardineau Upon information and belief, Brian Cardineau contributed to this report while at SUNY and pursuant to an assignment of such inventions to SUNY RF.

194.    Upon information and belief, on May 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $RnS_nX5-n$, including both its molecular studies of Tin-based resists with different R and X groups, including those in aliphatic, aromatic $Sb – C$, and carboxylate groups, and its milestones concerning polynuclear metal-based resists including those that combined Tin-12 with organometallic metal acrylate. Upon information and belief, none of the alleged named inventors contributed to any of these reports.

195.    Upon information and belief, on June 19, 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including its discovery that "tin will be most stable if it is of the form $R_2SnX_2$" "[w]here R is alkyl and X is an oxygen ligand (e.g., CO2-)" and the "need to fill the empty orbitals in the tin to increase the solubility of the tin oxalates," including by intramolecular rearrangement" where "unconstrained carbonyls can coordinate Sn, making a six coordinate system." Upon information and belief, none of the alleged named inventors contributed to any of these reports.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

196.    Upon information and belief, on August 17, 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including by recounting its past successes synthesizing benzyl tin complexes and outlining its strategy for further tin research in the form "$R_2SnX_2$" with varying R and X groups. Upon information and belief, none of the alleged named inventors contributed to any of these reports.

197.    Upon information and belief, on September 30, 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including synthesizing $R_2SnX_2$ compounds with iodine in the R and/or X groups, and using helper ligands in the form of a ketone or an ester as an R group to increase the solubility of such organotin resists. It also recounted again that one of the attributes that made "MORE an industry leading resist" was that it was capable of "aqueous development." Upon information and belief, none of the alleged named inventors contributed to any of these reports.

198.    Upon information and belief, on December 4, 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including by summarizing its mechanistic findings in 2015 concerning $R_2SnX_2$ compounds developed in water vapor and describing further changes in R and R' groups to increase stability and sensitivity of such organotin compositions and resists. Upon information and belief, none of the alleged named inventors contributed to any of these reports.

199.    Upon information and belief, throughout 2016, SUNY RF sent confidential research presentations to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including those that were synthesized by incorporating

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

water into the resist films and into vacuum chambers through for example, formulation solvents, hydrates, and hydroscopic polymers, as well as SUNY RF's so-called "Return to Aqueous Development," to research and develop why water development allowed for superior contrast in MORE resists. Upon information and belief, none of the alleged named inventors contributed to any of these reports.

200.    Upon information and belief, the '153 Patent Inventors and the attorneys involved in the prosecution of the '153 Patent Application, including Peter S. Dardi, and individuals from Inpria involved in the prosecution of the '153 Patent Application understood that the '153 Patent Inventors had not invented the subject matter claimed in the '153 Patent. Nevertheless, each of the '153 Patent Inventors signed declarations in which they each declared that they were the "original inventor or an original joint inventor of a claimed invention in application" and acknowledged their duty to disclose to the United States Patent and Trademark Office all information known to be material to patentability.

201.    Thus, the '153 Patent Inventors and the attorneys involved in the prosecution of the '153 Patent Application, including Peter S. Dardi, and individuals from Inpria involved in the prosecution of the '153 Patent Application knew one fact and presented another, thereby permitting an inference that they made the false representations with the intent to deceive. *See Dippin Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007). In view of the circumstances, the single most reasonable inference that can be drawn from the facts known to date is that at least Andrew Grenville and Stephen Meyers intended to deceive the USPTO by filing false declarations and failing to disclose the true inventors of the '153 Patent.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

202.    A patent may only be awarded to "**[w]hoever invents or discovers** any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101 (emphasis added). "As a critical requirement for obtaining a patent, inventorship is material." *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000) (citing pre-AIA  35 U.S.C. § 102(f)).

203.    Upon information and belief, the '153 Patent Inventors, and their attorneys, including Peter S. Dardi, along with any individuals at Inpria involved in the filing and prosecution of the '153 Patents, each violated their duty of candor and good faith to the USPTO by submitting declarations that they were the "original inventor or an original joint inventor of a claimed invention in application." Inventorship is *per se* material to patentability.

204.    As a result of the '153 Patent Inventors', the attorneys involved in the prosecution of the '153 Patent Application, including Peter S. Dardi, and the individuals' from Inpria involved in the prosecution of the '153 Patent Application intentional false claim of inventorship with the intent to deceive the USPTO, the '153 Patent Inventors and the attorneys involved in the prosecution of the '153 Patent Application, including Peter S. Dardi, and individuals from Inpria involved in the prosecution of the '153 Patent Application committed inequitable conduct, thereby rendering the '153 , Patent unenforceable. Upon information and belief other individuals involved in the prosecution of the '153 Patent, such as individuals at Inpria, also committed inequitable conduct rendering the '153 Patent unenforceable.

205.    This case is exceptional, and the Lam is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

***To the extent that the '903 is valid, Dr. Brainard alone or with one or more of his student advisees is a Co-Inventor of the '903 Patent***

206.    On April 11, 2018, U.S. Application No. 15/950,286 ("the '286 Application") was filed. On May 24, 2023, the '286 Application issued as the '903 Patent. The '903 Patent lists as inventors Joseph B. Edson, Thomas J. Lamkin, William Earley, and Truman Wambach. Upon information and belief, William Earley, previously worked on the MORE project at SUNY under Dr. Brainard, and later joined Inpria.

207.    The '903 Patent claims:

A high purity liquid composition comprising:
a monoalkyl tin triamide compound represented by the chemical formula $RSn(NR'_2)_3$ and
no more than 0.5 mole % dialkyltin compounds as an impurity relative to the total tin amount,.
wherein R is a hydrocarbyl group with 1-31 carbon atoms, and
wherein R′ is a hydrocarbyl group with 1-10 carbon atoms.

'903 Patent at claim 1.

208.    For example, the invention disclosure report RN2-11-27 Molecular Organometallic Resists for EUV (MORE) discloses a purported invention "to use thin films of organometallic compounds with high EUV OD and high mass densities" "as high resolution, low LER EUV photoresists," including "Mono-Nuclear Organometallic or Inorganic Compounds," "Transition Metal Oxide/Oxo-Carboxylate Clusters," and "Tin Oxoclusters." RN2-11-27 explains that "[b]ecause the proposed research is so revolutionary, we will need to start this program by addressing much more fundamental questions about material properties than would typically be required [for] resists based on organic polymers."

209.    RN2-11-27.2 concerning Tin and Bismuth Compounds discloses various inventions related to precursor solutions containing Tin-12 oxoclusters, such as in the form

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

"$[(RSn)_{12}O_{14}(OH)_6][X]_2$", including mechanisms causing solubility changes during exposure including anionic ligand decomposition, homolysis of the Sn-C bonds, and metathesis of the Sn-O framework. As one example, it expressly discloses synthesis of novel Tin-12 oxoclusters with various alkyl groups, including phenyl and butyl, or allyl groups using an organic amine, tetrahydrofuran, and water under hydrolysis conditions. Upon information and belief, none of the alleged named inventors contributed to or signed any of these invention disclosure reports, except for Brian Cardineau who did so while at SUNY and pursuant to an assignment of such inventions to SUNY RF.

210.    Upon information and belief, on May 20, 2013, then-CNSE graduate student Brian Cardineau presented his doctoral thesis titled "Novel Resist Systems for EUV Lithography: LER, Nanoparticle, Chain-Scission and MORE" in "partial fulfillment of the degree of Doctor of Philosophy in Nanoscale Science at the College of Nanoscale Science and Engineering." The thesis was conducted at CNSE under his researcher adviser Dr. Brainard. It discloses synthesizing tin-oxoclusters with R groups phenyl, allyl, butyl, in a base and water, as well as modifying the various ligands to affect EUV resolution. Upon information and belief, none of the alleged named inventors contributed to the doctoral thesis, except for Brian Cardineau. Upon information and belief, Brian Cardineau contributed to the doctoral thesis while at SUNY and pursuant to an assignment of such inventions to SUNY RF.

211.    In the 2015 Statement of Work, SUNY RF described its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including its discovery that one of the "key features" of the mechanism of tin-based resists "is the idea that the exposed resist reacts with air or moisture to create an insoluble tin-oxide compound" and to synthesize tin clusters with benzyl groups and expose them to "air/humidity." Upon information and belief, none of the alleged

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

named inventors contributed to of this prior work or Statement of Work, except for Brian Cardineau Upon information and belief, Brian Cardineau contributed to this report while at SUNY and pursuant to an assignment of such inventions to SUNY RF.

212.    Upon information and belief, on May 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX5-n$, including both its molecular studies of Tin-based resists with different R and X groups, including those in aliphatic, aromatic $Sb - C$, and carboxylate groups, and its milestones concerning polynuclear metal-based resists including those that combined Tin-12 with organometallic metal acrylate. Upon information and belief, none of the alleged named inventors contributed to this presentation.

213.    Upon information and belief, on June 19, 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including its discovery that "tin will be most stable if it is of the form $R_2SnX_2$" "[w]here R is alkyl and X is an oxygen ligand (e.g., CO2-)" and the "need to fill the empty orbitals in the tin to increase the solubility of the tin oxalates," including by intramolecular rearrangement" where "unconstrained carbonyls can coordinate Sn, making a six coordinate system." Upon information and belief, none of the alleged named inventors contributed to this presentation.

214.    Upon information and belief, on August 17, 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including by recounting its past successes synthesizing benzyl tin complexes and outlining its strategy for further tin research in the form "$R_2SnX_2$" with varying

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

R and X groups. Upon information and belief, none of the alleged named inventors contributed to this presentation.

215.    Upon information and belief, on September 30, 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including synthesizing $R_2SnX_2$ compounds with iodine in the R and/or X groups, and using helper ligands in the form of a ketone or an ester as an R group to increase the solubility of such organotin resists. It also recounted again that one of the attributes that made "MORE an industry leading resist" was that it was capable of "aqueous development." Upon information and belief, none of the alleged named inventors contributed to this presentation.

216.    Upon information and belief, on December 4, 2015, SUNY RF sent a confidential research presentation to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including by summarizing its mechanistic findings in 2015 concerning $R_2SnX_2$ compounds developed in water vapor and describing further changes in R and R' groups to increase stability and sensitivity of such organotin compositions and resists. Upon information and belief, none of the alleged named inventors contributed to this presentation.

217.    Upon information and belief, throughout 2016, SUNY RF sent confidential research presentations to Inpria describing its conception and reduction to practice of various metal-based resists of the form $R_nSnX_{4-n}$, including those that were synthesized by incorporating water into the resist films and into vacuum chambers through for example, formulation solvents, hydrates, and hydroscopic polymers, as well as SUNY RF's so-called "Return to Aqueous Development," to research and develop why water development allowed for superior contrast in MORE resists. Upon information and belief, none of the alleged named inventors contributed to any of these presentations.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

218.    Upon information and belief, Dr. Brainard, with assistance from Brian Cardineau, Dan Freedman, Miles Marnell, James Passarelli, Michael Murphy, and Ryan Del Re, conceived of and/or reduced to practice one or more of the purported inventions claimed in the '903 Patents.

219.    Upon information and belief, Inpria, the '903 Patent Inventors and the attorneys involved in the prosecution of the '903 Patent Applications, including Peter S. Dardi and Diane E. Bennett, understood that the '903 Patent Inventors had not invented the subject matter claimed in the '903 Patent. Nevertheless, each of the '903 Patent Inventors signed declarations in which they each declared that they were the "original inventor or an original joint inventor of a claimed invention in application" and acknowledged their duty to disclose to the United States Patent and Trademark Office all information known to be material to patentability.

220.    Thus, Inpria, the '903 Patent Inventors and the attorneys involved in the prosecution of the '903 Patent Applications, including Peter S. Dardi and Diane E. Bennett, knew one fact and presented another, thereby permitting an inference that they made the false representations with the intent to deceive. *See Dippin Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007). In view of the circumstances, the single most reasonable inference that can be drawn from the facts known to date is that at least the '903 Patent Inventors intended to deceive the USPTO by filing false declarations and failing to disclose the true inventors of the '903 Patent.

221.    A patent may only be awarded to "**[w]hoever invents or discovers** any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101 (emphasis added). "As a critical requirement for obtaining a patent, inventorship is material." *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000) (citing pre-AIA 35 U.S.C. § 102(f)).

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

222.    Upon information and belief, the '903 Patent Inventors, and their attorneys, including Peter S. Dardi and Diane E. Bennett, along with any individuals at Inpria involved in the filing and prosecution of the '903 Patents, each violated their duty of candor and good faith to the USPTO by submitting declarations that they were the "original inventor or an original joint inventor of a claimed invention in application." Inventorship is *per se* material to patentability.

223.    As a result of the '903 Patent Inventors' and their attorneys' including Peter S. Dardi and Diane E. Bennett, intentional false claims of inventorship with the intent to deceive the USPTO, the '903 Patent Inventors, and their attorneys, including Peter S. Dardi and Diane E. Bennett, committed inequitable conduct, thereby rendering the '903 Patent unenforceable. Upon information and belief other individuals involved in the prosecution of the '903 Patent, such as individuals at Inpria, also committed inequitable conduct rendering the '903 Patent unenforceable.

224.    This case is exceptional, and the Lam is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

**COUNT XIX (Declaratory Judgment of Infectious Unenforceability of the Inpria Patents Due to Inequitable Conduct)**

225.    Lam realleges and incorporates by reference the allegations in Paragraphs 1-224 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

226.    To the extent that the Asserted Patents are valid, each Asserted Patent is unenforceable for inequitable conduct under the doctrine of infectious unenforceability.

227.    Upon information and belief, and based on the foregoing, the '684, '505, '048, '081, '153, and '903 Patent Inventors, and their attorneys, including Peter S. Dardi, along with any individuals at Inpria involved in the filing and prosecution of these Patents, including Andrew

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Grenville and Stephen Meyers, each violated their duty of candor and good faith to the USPTO during the prosecution of each such Patent by submitting declarations stating that they were the "original inventor or an original joint inventor of a claimed invention in application."

228.    Upon information and belief, these individuals at Inpria engaged in a long-term, deliberate, concerted, and organized effort to exclude SUNY professors and scientists like Dr. Brainard, alone or with one or more of his student advisees, as named inventors, and from receiving credit for the inventing the inventions described and claimed in the '684, '505, '048, '081, '153, and '903 Patents. *See The Research Foundation for the State University of New York v. Inpria Corp. and JSR Corp.*, C.A. No. 1:24-cv-00120-MAD-ML (N.D. New York), D.I. 86 (SUNY Am. Compl.); Ex. 6. Such a long-running, complex, multi-faceted scheme orchestrated by Inpria employees and their attorneys warrants finding each of the Asserted Patents unenforceable under the doctrine of infectious enforceability. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011) ("Moreover, the taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family. Thus, a finding of inequitable conduct may endanger a substantial portion of a company's patent portfolio."); *Jackson v. SeaSpine Holdings Corp.*, No. 1:20-cv-01784-RGA, 2023 WL 5175387, at *8 (D. Del. Aug. 11, 2023), *report and recommendation adopted*, 2023 WL 5651842, at *1 (D. Del. Aug. 31, 2023).

229.    Upon information and belief, these individuals intended to deceive the USPTO into believing that the '684, '505, '048, '081, '153, and '903 Patent Inventors invented, and were the only such inventors, of the subject matter claimed in the '684, '505, '048, '081, '153, and '903 Patents.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

230.    Upon information and belief, these individuals deliberately hid from the USPTO SUNY's public disclosures regarding the subject matter claimed in the '684, '505, '048, '081, '153, and '903 Patents, with the intent to deceive the USPTO into believing such subject matter was not in the public domain so that the USPTO would issue the '684, '505, '048, '081, '153, and '903 Patents.

231.    Each of the Asserted Patents are related to applications for EUV semiconductor processing.

232.    The inequitable conduct of the '684 Patent Inventors, their attorneys including Peter S. Dardi, and individuals at Inpria involved in the prosecution of the '684 Patent infects and renders at least the '564, '312, '505, '048, '081, '153, and '903 Patents unenforceable under the doctrine of infectious unenforceability.

233.    The '505 Patent Inventors' inequitable conduct in connection with the prosecution of the application that matured into the '505 Patent infects and renders at least the '564, '312, '684, '048, '081, '153, and '903 Patents unenforceable under the doctrine of infectious unenforceability.

234.    The '048 Patent Inventors' inequitable conduct in connection with the prosecution of the application that matured into the '048 Patent infects and renders at least the '564, '312, '684, '505, '081, '153, and '903 Patents unenforceable under the doctrine of infectious unenforceability.

235.    The '081 Patent Inventors' inequitable conduct in connection with the prosecution of the application that matured into the '081 Patent infects and renders at least the '564, '312, '684, '505, '048, '153, and '903 Patents unenforceable under the doctrine of infectious unenforceability.

236.    The '153 Patent Inventors' inequitable conduct in connection with the prosecution of the application that matured into the '153 Patent infects and renders at least the '564, '312, '684, '505, '048, '081, and '903 Patents unenforceable under the doctrine of infectious unenforceability.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

237.    The '903 Patent Inventors' inequitable conduct in connection with the prosecution of the application that matured into the '903 Patent infects and renders unenforceable at least the '564, '312, '684, '505, '048, '081, and '153 Patents under the doctrine of infectious unenforceability.

238.    This case is exceptional, and the Lam is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

## COUNT XX (Declaratory Judgment of Invalidity of the '684, '153, '505, '048, '081, and '903 Patents for Failure to Name Correct Inventors)

239.    Lam realleges and incorporates by reference the allegations in Paragraphs 1-238 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

240.    Each claim of the '684, '153, '505, '048, '081, and '903 Patents asserted against Lam is invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. § 101, including but not limited to for failing to name one or more of the proper inventors.

241.    An actual controversy exists with respect to the alleged infringement of the '684, '153, '505, '048, '081, and '903 Patents and the validity of the claims of the '684, '153, '505, '048, '081, and '903 Patents.

242.    Defendants seek a declaratory judgment that the '684, '153, '505, '048, '081, and '903 Patents are invalid under 35 U.S.C. §101 for failing to name one or more of the proper inventors of the '684, '153, '505, '048, '081, and '903 Patents who contributed to the purported inventions claimed in the '684, '153, '505, '048, '081, and '903 Patents, including one or more

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

employees and/or students of SUNY who contributed to the conception and/or reduction to practice of the purported inventions claimed in the '684, '153, '505, '048, '081, and '903 Patents.

243.    A patent may only be awarded to "**[w]hoever invents or discovers** any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101 (emphasis added). Therefore, a patent is invalid if it fails to name the correct inventors. 35 U.S.C. §101; *Cubist Pharm., Inc. v. Hospira, Inc.*, 75 F. Supp. 3d 641, 673 (D. Del. 2014).

244.    None of the '684, '153, '505, '048, '081, and '903 Patents name Robert Brainard, Dan Freedman, Miles Marnell, James Passarelli, Michael Murphy, or Ryan Del Re as an inventor. Brian Cardineau is listed as an inventor on only the '153, '505, '048, and '081 Patents. Similarly, William Earley is named as an inventor on only the '903 Patent.

245.    Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed the '684, '153, '505, '048, '081, and '903 Patents, thereby causing Lam irreparable injury and damage.

246.    A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '684, '153, '505, '048, '081, and '903 Patents is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## COUNT XXI (Declaratory Judgment of Invalidity of the '048 and '081 Patents for New Matter)

247.    Lam realleges and incorporates by reference the allegations in Paragraphs 1-248 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

248.    Lam seek a declaratory judgment that the '048 Patent is invalid under 35 U.S.C. §132 for improperly adding new matter. By way of example, Figure 16 of the '048 Patent was new matter that was improperly added during prosecution of the '048 Patent.

249.    A patent is invalid if new matter is improperly added to the specification. *Commonwealth Sci. & Indus. Res. Organisation v. Buffalo Tech. (USA)*, 542 F.3d 1363, 1380-81 (Fed. Cir. 2008).

250.    On August 6, 2020, Inpria and the '048 Inventors, through their attorneys and agents, Peter S. Dardi and Diane E. Bennett, filed U.S. Patent Application No. 16/987,120 ("the '120 Application") claiming:

> An apparatus comprising:
> a deposition chamber having an interior isolated from the ambient atmosphere;
> a substrate within the interior of the deposition chamber configured to receive a deposition on the surface of the substrate; and
> structure configured to deliver flow from a supply of organotin compound to provide for formation of an organotin layer on the substrate surface within the deposition chamber.

'120 Application at claim 1. The as-filed Application included Figures 1-15. The '120 Application issued as the '048 Patent on December 7, 2022.

251.    The '120 Application claimed priority to U.S. Patent Application No. 16/238,779, filed on January 3, 2019, which in turn claimed priority to U.S. Patent Application No. 15/291,738, filed on October 12, 2016, which in turn claimed priority to U.S. Provisional Patent Application

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

No. 62/297,540, filed on October 12, 2016, and U.S. Provisional Patent Application No. 62/240,812, filed on October 13, 2015 (collectively, "the '120 Application Priority Applications").

252.    On October 6, 2020, the Examiner rejected the claims of the '120 Application as indefinite. The Examiner stated that the claims included means-plus-function limitations but the Specification failed to disclose the corresponding structure. On January 20, 2021, Inpria and the '048 Inventors, through their attorney and patent agent, Peter S. Dardi and Diane E. Bennett, amended the specification, claims, and drawings and filed a response to the October 6, 2020 Office Action.

253.    The January 20, 2021 Amendment added Figure 16 to the drawings:



254.    The January 20, 2021 Amendment also added the following description of Figure 16 to the specification:

> Fig. 16 is a schematic of an apparatus for the formation of an organotin oxide hydroxide layer on a substrate.
>
> Fig. 16 illustrates apparatus 150 for the formation of an organotin oxide hydroxide layer on a substrate. Deposition chamber 151 interfaces with inlet 152, separate inlet 154 and outlet 153 connected with pump 155 and pump 156. Substrate 157 is mounted within the interior of deposition chamber 151 on thermal block 158. In this embodiment, vessel 168 is depicted as a bubbler connected to supply of inert gas 170. Structure 160 is

88

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

configured to supply organotin compound 164 to deposition chamber 151 through inlet 152. Apparatus 150 also depicts structure 174, configured to deliver a second precursor vapor to deposition chamber 151 through separate inlet 154.

255.    As support for the amendment, Inpria pointed to Maeng et al., "Atomic Layer Deposition of Ta-Based Thin Films: Reactions of Alkylamide Precursor with Various Reactants," J. Vacuum Sci. & Technol. B 24:2276 (2006) ("Maeng"), which had purportedly been incorporated by reference into the '120 Application Specification. In particular, Inpria pointed to Figure 1 of Maeng. However, Figure 16 is a revised version Figure 1 of Maeng and includes details not found in Maeng.

256.    The Examiner maintained the rejection because the drawings did not include a structure that "delivers a flow from a supply of an inert gas, deliver a first precursor vapor, deliver a second precursor vapor, deliver a third precursor vapor, deliver flow comprises one or more vapor inputting structures, deliver a first flow, deliver a second flow or deliver a third flow." Final Office Action dated February 5, 2021 at 3-4.

257.    In response to the February 5, 2021 Final Office Action, Inpria and the '048 Inventors, through their attorney and patent agent, Peter S. Dardi and Diane E. Bennett, further amended Figure 16 to add elements 176, 178, and 180:

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**



Response to Office Action dated April 5, 2021. The April 5, 2021 Amendment further amended the Specification to recite that "Apparatus 150 also depicts structure 180, configured to supply third precursor vapor 178 to deposition chamber 151 through inlet 176." *Id.* As support for these amendments, Inpria and the '048 Inventors, through their attorneys and agents, Peter S. Dardi and Diane E. Bennett, again pointed to Maeng, stating that "Applicant refers in particular to Fig. 1 of Maeng et al., which illustrates the apparatus for the introduction of a vapor phase (gas) reactant, as further described for example at page 2279 in the last paragraph of the left hand column and in the first paragraph of the Discussion on page 2280."

258.    After the April 5, 2021 Amendment to the Drawings and Specification of the '120 Application to include Figure 16 and the corresponding description, the Examiner withdrew indefiniteness rejections.

259.    On June 6, 2022, Inpria and the '081 Inventors, through their attorney and patent agent, Peter S. Dardi and Diane E. Bennett, filed U.S. Patent Application No. 17/832,920 ("the '920 Application") claiming:

> A method for forming a radiation patternable organometallic coating, the method comprising:

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

> depositing a tin composition having organic ligands and hydrolysable ligands to form a coating with a dry thickness from about nanometers (nm) to about 50 nm,
> > wherein the organic ligands comprise radiation sensitive Sn-C bonds, and
> > wherein the depositing is by vapor-based deposition process.

'920 Application at claim 1. The as-filed Application included Figures 1-16. The '920 Application issued as the '081 Patent on October 18, 2023.

260.    The '920 Application claimed priority to the '120 Application, filed on August 6, 2020, which claimed priority to U.S. Patent Application No. 16/238,779, filed on January 3, 2019, which in turn claimed priority to U.S. Patent Application No. 15/291,738, filed on October 12, 2016, which in turn claimed priority to U.S. Provisional Patent Application No. 62/297,540, filed on October 12, 2016 and U.S. Provisional Patent Application No. 62/240,812, filed on October 13, 2015.

261.    Figure 16 and its corresponding description in the Specification of the '920 Application was not included in any of the priority documents. Inpria asserted that the drawings "correspond to the Amendments to the Specification and the Amendments to the Drawings as filed during prosecution of the" '120 Application. Response to Notice to File Corrected Application Papers at 1.

262.    A specification can only incorporate "essential material" by reference if the reference is to a U.S. patent or patent application publication, and not to a non-patent publication. *Droplets, Inc. v. E*TRADE Bank*, 887 F.3d 1309, 1318 (Fed. Cir. 2018). The drawing Inpria incorporated by reference is "essential material" because it provides the corresponding structure to the means plus function limitations and, thus, was necessary to meet the requirements of § 112. *Id.*

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

263.    Because the '048 and '081 Patents' Specification did not include support for the incorporation of Maeng Figure 1, and subsequent modifications thereof, as Figure 16 of the '048 Patent, the addition of Figure 16 constituted addition of new matter.

264.    Absent a declaration and order as sought by Lam, Inpria will continue to wrongfully assert that Lam has infringed the '048 and '081 Patents, thereby causing Lam irreparable injury and damage.

265.    A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '048 and '081 Patents is now necessary and appropriate under 28 U.S.C. §§ 2201 and 2202.

## COUNT XXII (Breach of Contract - Indemnity)

266.    Lam realleges and incorporates by reference the allegations in Paragraphs 1-265 of its Counterclaims and all of the Defenses and Additional and Affirmative Defenses above as if fully set forth herein.

267.    Inpria filed its Original Complaint against Lam on October 14, 2022, alleging that Lam infringed one or more claims the '684, '564, '153, '505, '048, '903, '312, and '081 patents (collectively, the "Asserted Patents").

268.    The Research Foundation for the State University of New York ("SUNY") filed a complaint against Inpria on January 25, 2024, alleging, *inter alia*, that numerous Inpria patents fail to name the true inventors, because multiple SUNY professors and researchers should be named as the sole, or at least joint, inventors to these patents.  SUNY further alleges that SUNY is the owner of these patents.  *See The Research Foundation for the State University of New York v. Inpria Corp. and JSR Corp.*, C.A. No. 1:24-cv-00120-MAD-ML (N.D. New York); Ex. 6.  Each

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

of the Asserted Patents that Inpria has asserted against Lam in this action is also the subject of SUNY's claims of inventorship and ownership.

269.    SUNY and Inpria entered into research agreements on January 1, 2015 (referred to herein as "2015 Research Agreement") and on May 1, 2017 (referred to herein as "2017 Research Agreement) (collectively, the "SUNY-Inpria Research Agreements").

270.    The 2015 and 2017 Research Agreements contain identical indemnification clauses which state:

> Sponsor ("Indemnitor") [Inpria] shall indemnify, save, hold harmless and defend FOUNDATION [SUNY], Fuller Road Management Corporation, State University of New York, SUNY Polytechnic Institute, and the State of New York, the entities directly or indirectly controlled by, controlling or under common control with, any of the foregoing, and each of their respective officers, directors, managers, shareholders, members, employees, agents, **licensees, advisors**, and assigns (collectively, the "Indemnitees") **from and against any and all claims, damages, demands, actions, judgments, lawsuits, proceedings, assessments, liabilities, losses, penalties, costs and expenses** (including, without limitation, reasonable attorneys' fees, costs and expenses), whether or not subject to litigation (collectively, "Indemnified Claims"), **incurred in connection with, by reason of, or arising out of** (a) SPONSOR's access to or use or misuse of the any facilities, reports, or technology which are provided to SPONSOR hereunder, (b) the breach by SPONSOR (or its employees or agents) of this Agreement, (c) any act or omission, fraud or self-dealing of SPONSOR (or its employees or agents) in connection with the performance of this Agreement, (d) any damage or destruction

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

of property, or injury, sickness, disease or death to persons, resulting from SPONSOR's or any of its employees' or agents' negligence or misconduct, or (e) any act or omission in violation of statutory duty or regulation by SPONSOR or any of its employees or agents.

Ex. 4 at § 16; Ex. 5 at § 16.

271.    Lam is a licensee of SUNY ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

Ex. 7 §§ 4.9, 4.9.2. Several other provisions of the ██████████ confirm Lam is a licensee of SUNY. *See, e.g., id.* §§ 3.1.3(f), 3.2, 5.4.4. Accordingly, Lam is a licensee of SUNY and therefore a beneficiary of the SUNY-Inpria Research Agreements' indemnification obligations.  Lam is also an advisor to SUNY pursuant to the ██████████ (*see, e.g., id.* §§ 5, 6(b), 3.1.1) and additional agreements between the parties in which Lam and SUNY ████████████████

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

█████████████████████████████████. Lam is also an assign of SUNY pursuant to the same agreements.

272.    Pursuant to the SUNY-Inpria Research Agreements, Inpria is required to indemnify a SUNY licensee and/or advisor (e.g., Lam).  The SUNY-Inpria Research Agreements state:

> SPONSOR ("Indemnitor") [Inpria] shall indemnify, save, hold harmless and defend FOUNDATION [SUNY], … licensees [and] advisors … **from and against any and all claims, damages, demands, actions, judgments, lawsuits, proceedings, assessments, liabilities, losses, penalties, costs and expenses** (including, without limitation, reasonable attorneys' fees, costs and expenses), whether or not subject to litigation (collectively, "Indemnified Claims"), **incurred in connection with, by reason of, or arising out of** (a) SPONSOR's access to or use or misuse of the any facilities, reports, or technology which are provided to SPONSOR hereunder, (b) the breach by SPONSOR (or its employees or agents) of this Agreement, (c) any act or omission, fraud or self-dealing of SPONSOR (or its employees or agents) in connection with the performance of this Agreement, (d) any damage or destruction of property, or injury, sickness, disease or death to persons, resulting from SPONSOR's or any of its employees' or agents' negligence or misconduct, or (e) any act or omission in violation of statutory duty or regulation by SPONSOR or any of its employees or agents.

Ex. 4 § 16, Ex. 5 §16.

273.    Inpria's alleged claims against Lam were incurred in connection with, by reason of, or arising out of Inpria's access to or misuse of the any facilities, reports, or technology provided to Inpria under the SUNY-Inpria Research Agreements.  On information and belief, Inpria's access

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

to or misuse of SUNY reports or technology provided to Inpria under the SUNY-Inpria Research Agreements resulted in Inpria claiming sole ownership of each of the Asserted Patents. For example, SUNY provided invention disclosure reports listed in Exhibit C to the SUNY-Inpria Research Agreements which described technologies invented by SUNY faculty and students. On information and belief, Inpria accessed and misused subject matter disclosed in the invention disclosure reports in connection with pursuing the asserted patent rights, without disclosing the contributions to the Asserted Patents by SUNY faculty and students.

274.    Inpria's alleged claims against Lam were incurred in connection with, by reason of, or arising out of Inpria's breach of the SUNY-Inpria Research Agreements. For example, under the 2015 Research Agreement, SUNY agreed to "contribute the PRIOR PROJECT IP set forth in Exhibit C to complete and carry out the PROJECT" and granted Inpria a limited license to use the PRIOR ART PROJECT IP to carry out the PROJECT. Ex. 4 at § 9(h). The PROJECT was entitled "Molecular Organometallic Resists for EUV (MORE)." *Id.* at 1. The 2015 Research Agreement also states that SUNY "shall hold title to all INTELLECTUAL PROPERTY RIGHTS which are generated, conceived or reduced to practice during the conduct of work under the Agreement utilizing facilities or personnel of FOUNDATION, SUNY Poly or SUNY exclusively," referred to as "FOUNDATION Inventions." Ex. 4 § 9(a). It further states that SUNY and Inpria "shall hold joint title to all INTELLECTUAL PROPERTY RIGHTS generated, conceived or reduced to practice during the conduct of work under the Agreement that are not FOUNDATION Inventions or SPONSOR Inventions" ("JOINT IP"). *Id.* § 9(e). The 2017 Research Agreement requires the same. Ex. 5. SUNY did not grant Inpria any interest in, or license to SUNY's FOUNDATION Inventions or JOINT IP interests. SUNY also did not grant Inpria a license to use the PROJECT PRIOR IP for any purpose other than carrying out the PROJECT.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

275.    On information and belief, Inpria breached and continues to breach the SUNY-Inpria Research Agreements by continuing to use SUNY's PRIOR PROJECT IP beyond the scope of the licenses granted in the SUNY-Inpria Research Agreements.  For example, Inpria has used or continues to use SUNY's PRIOR PROJECT IP for commercial purposes, including but not limited to each instance of using, manufacturing, offering for sale, selling, exporting, importing and licensing of EUV metal oxide photoresists and related materials that incorporate and infringe SUNY's PRIOR PROJECT IP.  Non-limiting examples of such include (a) Inpria's manufacture of products that embody the PRIOR PROJECT IP such as metal-oxide photoresists (manufacturing which according to a February 20, 2020 press release Inpria had "recently brought online its high-volume manufacturing plant to support the initial production ramp for customers"); (b) Inpria's sale of products and methods that embody the PRIOR PROJECT IP such as metal-oxide photoresists ███████████████████████████████████████████████████ ██████████████████████████ (c) Inpria's offering for sale of the same products and methods to these same customers and other prospective customers around the world, as demonstrated by Inpria's website and financial documents admitting the same.  On information and belief, each of these acts are ongoing and each act constitutes a breach of the SUNY-Inpria Research Agreements for which a reasonable royalty is due to SUNY for Inpria exceeding the scope of its limited license to use PRIOR PROJECT IP only to complete and carry out the PROJECT of the SUNY-Inpria Research Agreements. On information and belief, Inpria also breached and continue to breach the SUNY-Inpria Research Agreements by using SUNY's PRIOR PROJECT IP in the provisional patent applications and patent applications that matured into the Asserted Patents.

276.    On information and belief, Inpria breached and continues to breach the SUNY-Inpria Research Agreements by continuing to use SUNY's FOUNDATION IP inventions without

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

authorization. For example, Inpria has used or continues to use SUNY's FOUNDATION IP for commercial purposes, including but not limited to each instance of using, manufacturing, offering for sale, selling, exporting, importing and licensing of EUV metal oxide photoresists and related materials that incorporate SUNY's FOUNDATION IP.  Non-limiting examples of such include (a) Inpria's manufacture of products that embody the PRIOR FOUNDATION IP such as metal-oxide photoresists (manufacturing which according to a February 20, 2020 press release Inpria had "recently brought online its high-volume manufacturing plant to support the initial production ramp for customers"); (b) Inpria's sale of products and methods that embody the FOUNDATION IP such as metal-oxide photoresists ███████████████████████████████████ ████████████████████████████████ (c) Inpria's and JSR's offering for sale of the same products and methods to these same customers and other prospective customers around the world, as demonstrated by Inpria's website and financial documents admitting the same. On information and belief, each of these acts are ongoing and each act constitutes a breach of the SUNY-Inpria Research Agreements for which a reasonable royalty is due to SUNY for Inpria using FOUNDATION IP in violation of the SUNY-Inpria Research Agreements. On information and belief, Inpria also breached and continue to breach the SUNY-Inpria Research Agreements by using SUNY's FOUNDATION IP in the provisional patent applications and patent applications that matured into the Asserted Patents.

277.    On information and belief, Inpria breached and continues to breach the SUNY-Inpria Research Agreements by continuing to exclusively use SUNY's interest in the JOINT IP. For example, Inpria has used or continues to use SUNY's interest in the JOINT IP for commercial purposes, including but not limited to each instance of using, manufacturing, offering for sale, selling, exporting, importing and licensing of EUV metal oxide photoresists and related materials

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

that incorporate JOINT IP.  Non-limiting examples of such include (a) Inpria's and JSR's manufacture of products that embody the JOINT IP such as metal-oxide photoresists (manufacturing which according to a February 20, 2020 press release Inpria had "recently brought online its high-volume manufacturing plant to support the initial production ramp for customers"); (b) Inpria's and JSR's sale of products and methods that embody and infringe the JOINT IP such as metal-oxide photoresists ██████████████████████████████████████ ███████████████████████████████ (c) Inpria's and JSR's offering for sale of the same products and methods to these same customers and other prospective customers around the world, as demonstrated by Inpria's website and financial documents admitting the same. On information and belief, each of these acts are ongoing and each act constitutes a breach of the SUNY-Inpria Research Agreements for which a reasonable royalty is due to SUNY for Inpria's unlawful of exclusive use of JOINT IP contrary to the terms of the SUNY-Inpria Research Agreements. On information and belief, Inpria also breached and continue to breach the SUNY-Inpria Research Agreements by using the JOINT IP in the provisional patent applications and patent applications that matured into the Asserted Patents.

278.    On information and belief, Inpria breaches the contracts by misappropriating information obtained during the course of the PROJECT to prosecute patent applications that issued as the Asserted Patents, including by failing to disclose the true inventors of the Asserted Patents and thereby preventing SUNY from claiming ownership of the Asserted Patents.  On information and belief, Inpria failed to comply with its obligations pursuant to the 2015 and 2017 Research Agreements.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

279.    On information and belief, Inpria breached the covenant of good faith and fair dealing that is implied by law in all contracts by failing to cooperate with SUNY and take actions to correct and protect SUNY's ownership rights in the Asserted Patents.

280.    Moreover, SUNY's inventorship and ownership of the Asserted Patents is predicated on Inpria's obligations under the SUNY-Inpria Research Agreements.  SUNY alleges that SUNY faculty and students are omitted inventors to the Asserted Patents, thereby making SUNY a rightful owner of each of the Asserted Patents, because SUNY's PRIOR PROJECT IP, FOUNDATION IP, and JOINT IP contributed to the conception and reduction to practice to the inventions claimed in each of the Asserted Patents.  Inpria's failure to name the corrector inventors on the asserted patents is a further breach of the agreement.

281.    Inpria's alleged claims against Lam were incurred in connection with, by reason of, or arising out of Inpria's act or omission, fraud or self-dealing in connection with the performance of this Agreement and Inpria's act or omission in violation of statutory duty or regulation.  Inpria owes a duty of candor and good faith in dealing with the United States Patent and Trademark Office ("PTO"), which includes a duty to disclose to the Office all information known to be material to patentability.  37 CFR § 1.56.  On information belief, including but not limited to the reasons stated above (*see supra* Counts XVII – XIX), Inpria violated and failed to adhere to its duty of candor to the PTO. For example, Inpria failed to disclose the contributions of SUNY faculty and students to the inventions claimed in each Asserted Patent. Inpria misuse of SUNY's contributions and its failure to disclose the SUNY contributions is also an act or omission, fraud or self dealing in connection with its performance under the Agreement.

282.    Accordingly, Inpria's claims against SUNY licensee, Lam, incurred in connection with, by reason or arising out of Inpria's access and misuse of SUNY's technology and intellectual

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

property rights, breach of the Research Agreements, act or omission, fraud or self-dealing in connection with the performance of the Research Agreement, and violations of its statutory duty of candor to the PTO.  Pursuant to the SUNY-Inpria Research Agreements, the indemnification provisions "shall remain operative and in full force and shall survive the execution and performance herof and the termination or expiration of the [SUNY-Inpria Research Agreements]."  Ex. 4 § 16, Ex. 5 § 16.  Therefore, Inpria is required to indemnify Lam from the present lawsuit.

283.    Inpria violated its indemnification obligations by bringing its present suit against Lam.  Inpria's pending suit against Lam—a SUNY licensee—is a breach of the SUNY-Inpria Research Agreements. Inpria is contractually obligated to indemnify Lam and, pursuant to this indemnification obligation agreement, is required to immediately dismiss the current suit and to remedy any an all harm it has caused Lam due to its filing and improperly persisting in asserting its patent claims against Lam.

284.    Inpria's breach of the SUNY-Inpria Research Agreements have proximately caused Lam harm, including, but not limited to, fees and costs associated with the defense of Inpria's claims asserted in the present action.


## LAM'S PRAYER FOR RELIEF

Wherefore, Lam respectfully requests that the Court enter an Order and Judgment against Inpria, as follows:

a.   Granting judgment in favor of Lam and against Inpria on all counts;

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

b.  Dismissing with prejudice Inpria's Complaint and all purported causes of action therein against Lam, denying any and all relief sought by Inpria, and ordering that Inpria take nothing by reason of its Amended Complaint;

c.  Declaring that Lam has not infringed and is not currently infringing any claim of the '505 patent;

d.  Declaring that Lam has not infringed and is not currently infringing any claim of the '564 patent;

e.  Declaring that Lam has not infringed and is not currently infringing any claim of the '684 patent;

f.  Declaring that Lam has not infringed and is not currently infringing any claim of the '153 patent;

g.  Declaring that Lam has not infringed and is not currently infringing any claim of the '048 patent;

h.  Declaring that Lam has not infringed and is not currently infringing any claim of the '903 patent;

i.  Declaring that Lam has not infringed and is not currently infringing any claim of the '312 patent;

j.  Declaring that Lam has not infringed and is not currently infringing any claim of the '081 patent;

k.  Declaring that the asserted claims of the '505 patent are invalid;

l.  Declaring that the claims of the '564 patent are invalid;

m.  Declaring that the asserted claims of the '684 patent are invalid;

n.  Declaring that the asserted claims of the '153 patent are invalid;

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

o.  Declaring that the asserted claims of the '048 patent are invalid;

p.  Declaring that the asserted claims of the '903 patent are invalid;

q.  Declaring that the asserted claims of the '312 patent are invalid;

r.  Declaring that the asserted claims of the '081 patent are invalid;

s.  Declaring that the '505 patent is unenforceable;

t.  Declaring that the '048 patent is unenforceable;

u.  Declaring that the '081 patent is unenforceable;

v.  Declaring that the '684 patent is unenforceable;

w.  Declaring that the '153 patent is unenforceable;

x.  Declaring that the '564 patent is unenforceable;

y.  Declaring that the '312 patent is unenforceable;

z.  Declaring that the '903 patent is unenforceable;

aa. Declaring that the '684, '153, '505, '048, '081, and '903 Patents are invalid for failing to name the correct inventors;

bb. Declaring that the '048 and '081 Patents are invalid for new matter;

cc.  Declaring that Inpria has breached its indemnity obligations to Lam and dismissing this action against Lam and awarding damages to make Lam whole for any fees, costs, lost profits, price erosion, harm to goodwill, and lost market share that Lam has incurred or experienced as a result of Inpria bringing this action;

dd. Awarding Lam its costs and expenses incurred in this action to the extent authorized by applicable law, including its reasonable attorneys' fees under 35 U.S.C. § 285;

ee. That Lam be awarded its costs incurred in this action; and

ff.  Awarding any other such relief as this Court deems just and proper.

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Lam demands a trial by jury as to all issues so triable.


Dated:  September 17, 2024

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ John V. Gorman*

John V. Gorman (DE Bar No. 6599)
Amy M. Dudash (DE Bar No. 5741)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
Telephone:  302.574.3000
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

Michael J. Lyons (admitted *pro hac vice*)
Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Katerina Hora Jacobson (admitted *pro hac vice*)
1400 Page Mill Road
Palo Alto, CA 94304
Telephone:  650.843.4000
michael.lyons@morganlewis.com
ahren.hsu-hoffman@morganlewis.com
katerina.horajacobson@morganlewis.com

Alison P. Patitucci (admitted *pro hac vice*)
Phillip D. Wolfe (admitted *pro hac vice*)
2222 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
alison.patitucci@morganlewis.com
phillip.wolfe@morganlewis.com

*Attorneys for Defendant/Counter Plaintiff Lam Research Corp.*