# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INPRIA CORPORATION<br><br>      Plaintiff,<br>v.<br><br>LAM RESEARCH CORP.,<br><br>      Defendants. | Case No. 1-22-cv-01359-CJB<br><br>▮<br><br>REDACTED - PUBLIC VERSION |

**DEFENDANT LAM RESEARCH CORP.'S LETTER BRIEF IN SUPPORT OF ITS
MOTION TO COMPEL PRODUCTION OF JSR CORP. ACQUISITION DOCUMENTS**

Michael J. Lyons (admitted *pro hac vice*)
Dion M. Bregman (admitted *pro hac vice*)
Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Katerina Hora Jacobson (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: 650.843.4000
michael.lyons@morganlewis.com
dion.bregman@morganlewis.com
ahren.hsu-hoffman@morganlewis.com
katerina.horajacobson@morganlewis.com

Amanda S. Williamson (admitted *pro hac vice*)
Zachary D. Miller (admitted *pro hac vice*)
Karon N. Fowler (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606
Telephone: 312.324.1000
amanda.williamson@morganlewis.com
zachary.miller@morganlewis.com
karon.fowler@morganlewis.com

Phillip D. Wolfe (admitted *pro hac vice*)
Alison P. Patitucci (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000

John V. Gorman (DE Bar No. 6599)
Amy M. Dudash (DE Bar No. 5741)
MORGAN, LEWIS & BOCKIUS LLP
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
Telephone: 302.574.3000
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

*Attorneys for Defendant Lam Research Corp.*

Dated:  March 14, 2024

phillip.wolfe@morganlewis.com
alison.patitucci@morganlewis.com

Dear Judge Burke:

With the close of fact discovery fast approaching, Inpria seeks to hide behind its foreign parent corporation JSR Corp. ("JSR") by refusing to produce documents related to the acquisition of Inpria by JSR. Lam has been seeking documents regarding this acquisition for nearly a year. *See* Ex. A at 9 (May 17, 2024 Request No. 54 seeking, *inter alia*, documents "related to any . . . acquisition" by JSR including "valuation calculations related to any such acquisition"). To date, despite months of negotiations, Inpria has refused to produce responsive, relevant documents— namely, calculations, analysis, and documents supporting the "Fair value" of Inpria's "Other intangible assets" (i.e., "technology assets") at ¥8,218 million as shown in JSR's 2023 Annual Report. Ex. B (1/22/2025 P. Wolfe email); Ex. C at 28-29 (JSR 2023 Annual Report, referencing "assumptions" about "future sales and technology obsolescence rates.").

Inpria's excuse for not producing these responsive, relevant documents is that they are allegedly not within Inpria's possession, custody, or control. *See* Ex. D at 2 (2/19/2025 B. Wilner letter) (representing that Inpria "produced responsive, non-privileged documents regarding JSR's acquisition of Inpria" in Inpria's "possession, custody, and control"). But Inpria has never asked JSR for these documents or—to Lam's knowledge based on meet-and-confer discussions—ever worked with JSR to conduct a specific search for this targeted set of documents. This falls far short of satisfying Inpria's discovery obligations.

Inpria is in control of the documents of its corporate parent JSR. Indeed, another court recently found allegations of an alter ego relationship between JSR and Inpria sufficient to withstand dismissal. *See The Research Foundation for the State University of New York v. Inpria Corp.*, No. 1:24-cv-00120, D.I. 116 (Ex. E) at 57-62 ("[T]he Court finds that SUNY RF has plausibly alleged its alter ego theory of liability against JSR.") (*SUNY Decision*). The *SUNY Decision* underscores how suspect Inpria's claim of lack of control over JSR valuation documents is here.

"Corporate subsidiaries [like Inpria] have been directed to produce the records of their non-party corporate parents [like JSR] when the interrelationship between the companies is so extensive that it can be inferred that the subsidiary has the ability to demand and have access to documents in the normal course of business." *Jordan v. Sw. Energy Co.*, 2022 WL 16964003, at *5 (M.D. Pa. Nov. 16, 2022) (citing *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 443 (D.N.J. 1991)). "If a party has control over or shares control of documents with a third person, then a court can order production by means of its power over the party litigant." *Id*. (quoting *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 129 (D. Del. 1986) (internal quotations omitted)). "The key factual issues in making this determination of the degree of corporate party control over non-party corporation" are: (1) "the parent's ownership share in the subsidiary or affiliated corporation"; (2) "whether the corporations had interlocking management structures"; and (3) "the degree of control exercised by the parent over the subsidiary's directors, officers, and employees." *Id*. (quoting *Afros*, 113 F.R.D. at 129).

Each of the *Afros* factors weigh strongly in favor of finding Inpria has "control" over JSR's documents. **First**, Inpria is a wholly-owned subsidiary of JSR. Ex. C at 28.

**Second**, there is significant evidence of cross-over between Inpria and JSR at the executive and director levels, with parent JSR exercising control over Inpria. This interconnectivity between

Inpria and JSR was laid out in litigation involving Inpria and JSR wherein a court credited allegations at the motion to dismiss phase that "Inpria and JSR 'share officers, directors, and personnel[,]' and that JSR controls 'other of Inpria's officers, directors, and management.'" *SUNY Decision*, D.I. 116 at 60. In the *SUNY Decision*, the court summed up the executive cross-over: "JSR's CEO Eric Johnson formerly sat on Inpria's board of directors," "JSR has advertised job posting and elicited employees for Inpria," and JSR "terminat[ed] the employment of former Inpria CEO Andrew Grenville and other alleged named inventors." *Id*.

***Third***, Inpria's documents show that JSR—and another of its U.S. subsidiaries, JSR Micro., Inc.—are exercising significant control over Inpria. For example, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This is consistent with SUNY's allegations of a "lack of an arms-length relationship and/or that JSR used Inpria's property as if it were its own," and that JSR "exercises complete control over Inpria's manufacturing plant in Corvallis, Oregon and, on information and belief, uses it to research, develop, and manufacture JSR's metal photoresists." *SUNY Decision*, D.I. 116 at 61. Indeed, JSR's website shows that its products incorporate Inpria technology and sells Inpria's products. Ex. H; Ex. I; *SUNY Decision*, D.I. 116 at 61.

These facts alone warrant a finding of control between Inpria and JSR such that the Court should compel Inpria to produce all documents related JSR's acquisition of Inpria, including those held by JSR relating to valuation of Inpria's IP portfolio that was published in JSR's 2023 annual report.

Further, even though Lam need not prove JSR is Inpria's alter ego to show that Inpria "controls" responsive documents—even if those documents are in JSR's "possession" (see *Camden Iron*, 138 F.R.D. at 442)—there is ample evidence of such an alter ego relationship. Again, SUNY has summed up the interconnectivity and control: JSR "comingled its assets with Inpria's and has exercised dominion and control over Inpria's assets" by pledging "Inpria's corporate assets as security for a bank loan in order to 'consummate JIC's [Japan Investment Corp.'s] tender offer and acquisition' of JSR." *SUNY Decision*, D.I. 116 at 59. Notably, in attempting to obtain dismissal of alter ego allegations, Inpria and JSR did not argue "that pledging Inpria's assets in connection with a tender offer *is not* akin to commingling assets." *Id*. at 60 (emphasis in original). SUNY has alleged that JSR provided the Asserted Patents in this case "as security for the bank loan in order to consummate the tender offer and acquisition"—evidence of the alter ego relationship between Inpria and JSR. Ex. J, SUNY First Amended Complaint, D.I. 86, ¶¶ 1873, 1916, 1924, 1971, 1979, 1987, 1995, 2003.

***

At bottom, "it is inconceivable that [Inpria] would not have access to the[ ] [requested] documents and the ability to obtain them for its usual business." *Camden Iron*, 138 F.R.D. at 443. Because Inpria has the ability to seek documents on demand from JSR regarding JSR's acquisition of it, Inpria "controls" those documents and should be compelled to produce them.

Respectfully submitted,

*/s/ Amy M. Dudash*

Amy M. Dudash (DE Bar No. 5741)

c: Counsel of Record (via CM/ECF)