**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INPRIA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LAM RESEARCH CORP.,<br><br>Defendant. | C.A. No. 22-01359-CJB<br><br>**JURY TRIAL DEMANDED**<br><br>**REDACTED VERSION**<br>**Filed: April 24, 2025** |

**PLAINTIFF INPRIA CORPORATION'S OPENING BRIEF IN SUPPORT OF PLAINTIFF INPRIA CORPORATION'S MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS


I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. FACTUAL BACKGROUND ..... 2

- A. Inpria and Its Groundbreaking MOR Technology ..... 2
- B. Rather Than Innovate, Lam Copied Inpria's MOR Technology ..... 4
- C. Finding No Way Around Infringement, Lam Now Seeks to Put a "[redacted] ..... 6

III. LEGAL STANDARD ..... 7

IV. ARGUMENT ..... 7

- A. Inpria Will Suceed on the Merits ..... 7
  - 1. Lam Infringes the Asserted Claims ..... 7
  - 2. The Asserted Claims Are Valid ..... 11
- B. Inpria Will Suffer Further Imminent and Irreparable Harm ..... 14
  - 1. Inpria's Irreparable Harms Are Presently Existing and Immediate ..... 15
  - 2. Inpria and Lam Are Direct Competitors ..... 19
  - 3. Inpria Is Likely to Lose Brand Recognition ..... 22
  - 4. Inpria Will Suffer Price Erosion ..... 23
- C. The Balance of Hardships Clearly Favors Inpria ..... 24
- D. The Injunction Is in the Public Interest ..... 25

V. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acumed LLC v. Stryker Corp.*,
551 F.3d 1323 (Fed. Cir. 2008)....................24

*In re Aflibercept Patent Litigation*,
1:23-CV-97, 2024 WL 3423047 (N.D.W.Va. Jul. 9, 2024) ....................21

*Apple, Inc. v. Samsung Elecs. Co. Ltd.*,
735 F.3d 1352 (Fed. Cir. 2013)....................7

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
809 F.3d 633 (Fed. Cir. 2015)....................22

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (en banc)....................13

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
3:06–CV–1105, 2011 WL 2927817 (M.D. Pa. Jul. 18, 2011)....................20, 21

*BlephEx, LLC v. Myco Indus.*,
24 F.4th 1391 (Fed. Cir. 2022) ....................11

*Broadcom Corp. v. Emulex Corp.*,
732 F.3d 1325 (Fed. Cir. 2013)....................17, 22

*Broadcom Corp. v. Emulex Corp.*,
SACV 09-1058, 2012 WL 13036855 (C.D. Cal. Mar. 16, 2012)....................21

*In re Broadstripe, LLC*,
No. 09–10006, 2009 WL 774401 (D. Del. Mar. 26, 2009) ....................19

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012)....................14, 15, 23, 25

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975)....................15

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013)....................19, 25

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998)....................13

*GeoDecisions v. Data Transfer Sols., LLC*,
No. 1:10-cv-2180, 2010 WL 5014514 (M.D. Pa. Dec. 3, 2010) ....................15

*HR Staffing Consultants LLC v. Butts*,
627 F. App'x 168 (3d Cir. 2015) ....................15

*Natera, Inc. v. NeoGenomics Labs., Inc.*,
106 F.4th 1369 (Fed. Cir. 2024) ....................14, 21, 22

*Neology, Inc. v. Federal Signal Corp.*,
CA 11-672-LPS/MPT, 2012 WL 2308202 (D. Del. June 18, 2012) ....................25

*Phillips v. AWH* Corp.,
415 F.3d 1303 (Fed. Cir. 2005) (en banc)....................7

*Premier Dental Prods. Co. v. Darby Dental Supply Co., Inc.*,
794 F.2d 850 (3d Cir. 1986)....................15

*Reilly v. City of Harrisburg*,
858 F.3d 173 (3d Cir. 2017)....................7

*Sanofi-Synthelabo v. Apotex, Inc.*,
470 F.3d 1368 (Fed. Cir. 2006)....................7, 23

*Synthes, Inc. v. Gregoris*,
228 F. Supp. 3d 421 (E.D. Pa. 2017) ....................15

*The Research Found. Of State Univ. of New York v. Mylan Pharm. Inc.*,
723 F. Supp. 2d 638 (D. Del. 2010)....................25

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) (en banc)....................13

*Titan Tire Corp. v. Case New Holland, Inc.*,
566 F.3d 1372 (Fed. Cir. 2009)....................7

*TruePosition Inc. v. Andrew Corp.*,
568 F.Supp.2d 500 (D. Del.2008)....................20

**Statutes**

35 U.S.C. § 112....................7, 13

35 U.S.C. § 271(a) ....................8

35 U.S.C. § 271(g) ....................8

**Other Authorities**

Federal Rule of Civil Procedure 65 ....................7

MPEP § 2163 ....................13

# GLOSSARY

| Defined Term | Definition |
|---|---|
| Aether Bake Tools | Lam's bake tools for baking Aether MORs, [redacted] |
| Aether Deposition Tools | Lam's deposition tools used for forming Aether MORs, [redacted] |
| Aether Development Tools | Lam's development tools for developing Aether MORs, [redacted] |
| Aether MOR(s) | MOR formed using one or more Aether Precursors |
| Aether Platform | (i) Aether Precursors; (ii) Aether MORs; (iii) Aether Deposition Tools; (iv) Aether Development Tools; and (v) Aether Bake Tools |
| Aether Precursor(s) | Lam's tin-based precursors [redacted] that are used in Lam's tools for forming MORs |
| Cardineau | Brian Cardineau et al., *Photolithographic properties of tin-oxo clusters using extreme ultraviolet light (13.5 nm)*, 127 Microelectron. Eng. 44 (2014). |
| CVD | Chemical vapor deposition |
| DRAM | Dynamic random-access memory |
| EUV | Extreme ultraviolet |
| EUVL | Extreme ultraviolet lithography |
| Keszler | WO2008/082448 |
| IMEC | Interuniversity Microelectronic Center |
| Inpria | Plaintiff Inpria Corporation |
| Lam | Defendant Lam Research Corporation |
| MOR(s) | Metal oxide resist(s) |
| MPEP | Manual of Patent Examining Procedure |
| Patents-in-Suit | U.S. Patent No. 9,310,684 (the "'684 patent"); U.S. Patent No. 9,823,564 (the "'564 patent"); U.S. Patent No. 10,645,153 (the "'153 patent"); U.S. Patent No. 10,732,505 (the "'505 patent"); U.S. Patent No. 11,537,048 (the "'048 patent"); U.S. Patent No. 11,673,903 (the "'903 patent"); U.S. Patent No. 11,693,312 (the "'312 patent"); U.S. Patent No. 11,809,081 (the "'081 patent") |
| Asserted Patents | The '505 patent, the '081 patent, and the '312 patent |
| Asserted Claims | Claims 15 and 23 of the '505 patent; claim 11 of the '081 patent; and claim 14 of the '312 patent |
| POSA | Person of ordinary skill in the art |

Inpria respectfully submits this motion for a preliminary injunction to enjoin Lam from infringing the Asserted Claims by: (i) using its Aether Deposition Tools (or substantially similar technology) to make Aether metal-oxide resists ("MORs"); (ii) importing Aether MORs made using such tools; and (iii) making, using, selling, offering to sell, or importing Aether MORs.

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

In just the past few months, Lam's blatantly infringing technology was selected by [redacted] over Inpria's for its next-generation memory products. With similar selections by [redacted] on the horizon, [redacted]. In Lam's own words, [redacted] (Ex. 23 at LAM_0304658.) Lam must be stopped to prevent any further irreparable harm.

Inpria stands at the forefront of semiconductor innovation with its revolutionary MOR technology for extreme ultraviolet light ("EUVL"). This groundbreaking advancement has propelled the industry forward by enabling use of specialized resists[1] to create extremely fine and precise patterns on semiconductor materials. These patterns are crucial for forming circuits found in advanced semiconductor chips, which power devices like smartphones, computers, and other electronics. Lam has chosen to unlawfully copy Inpria's pioneering technology, brazenly infringing Inpria's patents and threatening fair competition in the semiconductor market.

Lam is not just violating Inpria's patent rights, it is aiming to destroy a smaller, innovative competitor. Despite initially recognizing the immense value of Inpria's patented

[1] A resist is a special light- or radiation-sensitive material used in semiconductor manufacturing. Relevant background relating to this technology is provided in the accompanying declaration of Dr. Bruce Smith. (Smith Decl. ¶¶ 35-45.)

technology (evidenced by Lam's attempts to first license the patents and then acquire Inpria for $225 million), Lam now argues that these same patents are worthless, not innovative, and not infringed. Meanwhile, Lam's recent belated document productions reveal that it is coercing its customers to adopt its infringing technology by leveraging its control over other tools, effectively forcing semiconductor manufacturers to abandon Inpria's competing MOR products.

Inpria is at a critical juncture. [redacted] Inpria's ability to compete is being stifled, putting the company's long-term survival in serious jeopardy. If not stopped immediately, Lam will [redacted].

Accordingly, Inpria respectfully requests that the Court grant the motion for a preliminary injunction to enjoin Lam from engaging in any further activities relating to its Aether Platform that infringe the Asserted Claims.

## II. FACTUAL BACKGROUND

### A. Inpria and Its Groundbreaking MOR Technology

Almost two decades ago, a group of scientists recognized the potential of MORs for EUVL—a critical advancement in the semiconductor industry. Led by Prof. Douglas Keszler, a renowned scientist from Oregon State University, and Dr. Andrew Grenville, a seasoned veteran of Intel Corporation, this group founded Inpria to transform their innovative idea into a reality.

Within a few years, with limited funding and a small team of employees, Inpria developed MORs that shattered previous records for resist performance. For example, Inpria's initial MORs printed "8 nm" dense lines—"the highest resolution EUV [extreme ultraviolet] photoresists ever created." (Ex. 1 at LAM_0002858; Ex. 2 at LAM_0001704.) This

breakthrough was made possible by Inpria's deep expertise in chemistry, which allowed it to reimagine fundamental concepts of resists. (Meyers Decl. ¶¶ 3-6; Ex. 3 at INP-000025721; Ex. 214 at LAM_0002246.)

In particular, these initial MORs contained metals capable of high radiation absorption bound to compounds called "ligands." (Ex. 3 at INP-000025721; Ex. 214 at LAM_0002246.) These ligands possessed a unique property—they formed bonds with the metal that would survive the resist formation process but easily break upon exposure to radiation (such as EUV) after resist formation. (Ex. 3 at INP-000025721; Ex. 214 at LAM_0002246.) The process of breaking these bonds via exposure to EUV caused changes to the exposed MOR areas, enabling precise patterning, similar to how a photographic film captures an image when exposed to light. (Ex. 3 at INP-000025721; Ex. 214 at LAM_0002246.) This novel technique, described and claimed in Inpria's '312 patent not only established Inpria as a leading startup but also inspired other research groups to explore MOR technology for EUVL.[2] (Ex. 215 at INP-000084701.)

Inpria also reimagined the MOR-formation process, particularly tin-based MORs, by reacting tin-based precursors with an oxygen-containing compound (like water) *in situ* (*i.e.*, during precursor deposition). (Ex. 4 at INP-000038712, 8726.)[3] This approach, described and claimed in the '505 and '081 patents, formed improved MORs and eliminated the need for more complex chemical reactions and processing, which had previously hindered industry adoption of

---

[2] The '312 patent discloses a precursor solution having both metal ions (*e.g.*, Hafnium, Zirconium, Tin) and radiation sensitive ligands (*e.g.*, peroxide groups). (Ex. 5 at Fig. 1, 5:59-6:7, 10:62-11:44.) The precursor solution is coated or deposited onto the semiconductor wafer to form the MOR. (*Id.* at 7:40-52, 22:19-23:12.) As described in the '312 patent and recited in claim 1, the metal ions and radiation-sensitive ligands form bonds that can be broken upon exposure to EUV. (*Id.* at Fig. 1, 15:50-65.)

[3] A "precursor" refers to a starting material for the MOR formation process.

MORs.[4] (Smith Decl. ¶¶53-54, 60.)[5] Tin-based MORs could be formed, for the first time, through an *in situ* reaction using spin-on ("wet") and vapor ("dry") deposition methods. (*Id.*)

**B. <u>Rather Than Innovate, Lam Copied Inpria's MOR Technology</u>**

Recognizing Inpria's achievements, in 2015, Lam was [redacted] (Ex. 7 at LAM_0819147-48.) Despite [redacted], Lam kept a close watch on Inpria and eventually copied its technology. In December 2016, for example, Lam [redacted] (Ex. 9 at slide 5.) But the process for creating Inpria's tin-based resists was not public until April 2017, when the parent application of the '505 and '081 patents published as U.S. Patent Publication No. 2017/0102612. (Ex. 13.) Within a few months thereafter, Lam started considering [redacted] (Ex. 10; *see also* Ex. 11 at 7; Rao. Decl. at ¶ 18.) For this development, Lam's consultant, [redacted] (Ex. 12 at LAM_0531126 (emphasis added).[6])

Leveraging this knowledge about Inpria's technology, [redacted]. (Ex. 11 at 7.) The

---

[4] Inpria's '505 and '081 patents describe methods for forming tin-based MORs by reacting a precursor having the general formula "$R_nSnX_{4-n}$," where "R" and "X" are ligands bonded to tin ("Sn"), and an oxygen-containing compound such as water vapor ($H_2O$). (Ex. 6 (INP-000853083) at 18:2-49, 19:46-61.) The patents describe several examples of $R_nSnX_{4-n}$ precursors, (*see id.*, 18:35-45, 19:21-38), and explain how this reaction can be carried out *in situ* using either a spin-coating process or a chemical vapor deposition ("CVD") process (*see id.*, 5:48-6:25).

[5] Smith Decl. refers to the declarations of Dr. Bruce Smith, submitted together with this Motion.

[6] [redacted] (*See* Ex. 13 (LAM_0943368).)

program's architect, Dr. Weidman, now a full-time employee at Lam, [redacted] (Ex. 14 at slide 5.) But, as illustrated in the figure below, [redacted]

[redacted]

(Ex. 14 at slide 5; Smith Decl. ¶¶ 67-69 ([redacted]) Over the next few months, [redacted] (Ex. 16 at slide 9; Smith Decl. ¶¶ 67-68.)

To this day, Lam continues to practice Inpria's inventions. For example, just six months ago, during this litigation, [redacted] But using a precursor blend to achieve patterning at lower doses is described in Inpria's 2017 publication and claimed in the '505 patent. (Ex. 6 at 25:62-26:2, claim 23; Smith Decl. ¶¶ 55-57, 59, 67-68, 136-37.)

Lam is fully aware that its actions constitute infringement. It has acknowledged that [redacted] (Ex. 19 at LAM_0803508), and that its conduct could result in [redacted]

[redacted] (Ex. 20.) Nevertheless, Lam has continued to develop, test, and market its Aether Platform.

### C. Finding No Way Around Infringement, Lam Now Seeks to [redacted]

Recognizing that it could not proceed with its [redacted] to Inpria's MOR technology without infringing Inpria's patents, [redacted] (*See* Ex. 21; Ex. 216; Ex. 218.) [redacted] (*See* Ex. 22; Ex. 219.) This is the value Lam placed on Inpria's patent portfolio, which it now contends is worthless and not infringed. (*See* Ex. 20 at row 14.) [redacted] (Ex. 23 at 4658.)

To that end, [redacted] (Ex. 24 at LAM_0285434.) This strategy is already taking effect, escalating the harm to Inpria. In January 2025, [redacted] (Ex. 36; Ex. 99.) Next up are [redacted] which is set to choose between Inpria and Lam this spring, as well as [redacted] which will make its selection over the next three months. (Meyers Decl. ¶¶ 34-35, 38.) As described further below, it was not until Lam's recent, and belated productions that the extent of Lam's predatory tactics were revealed to Inpria.

Absent a preliminary injunction to stop Lam, [redacted]

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, district courts may grant preliminary injunctive relief if the plaintiff demonstrates "(1) a reasonable likelihood of its success on merits; (2) irreparable harm if an injunction is not granted; (3) balance of hardships tipping in its favor; and (4) the injunction's impact . . . on the public interest." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1374 (Fed. Cir. 2006) (cleaned up). "The first two factors of the traditional standard are the most critical." *Reilly v. City of Harrisburg*, 858 F.3d 173, 177 (3d Cir. 2017) (cleaned up). Each factor is satisfied here.[7]

## IV. ARGUMENT

### A. Inpria Will Suceed on the Merits

Inpria "will likely prove infringement" and "withstand challenges, if any, to . . . validity."[8] *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009).

#### 1. Lam Infringes the Asserted Claims

As explained below and in Dr. Smith's declaration, Lam infringes the Asserted Claims by using its Aether Platform to deposit and process Aether MORs.[9] Lam has used the claimed

---

[7] "[T]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *See Apple, Inc. v. Samsung Elecs. Co. Ltd.*, 735 F.3d 1352, 1361 (Fed. Cir. 2013) (cleaned up).

[8] Inpria's analysis of the merits is based on the Court's claim construction order (D.I. 244). The remaining claim terms have been given their plain and ordinary meaning as understood by a person of ordinary skill in the art ("POSA"). *Phillips v. AWH* Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). Claim terms not yet construed by the Court have no bearing on infringement; rather, the only dispute relating to those terms is whether they are definite under 35 U.S.C. § 112(b). (D.I. 199.)

[9] Dr. Smith provides a detailed analysis of the Asserted Patents and Lam's infringement. (*See* Smith Decl. ¶¶ 6-175, Appx. C-E.)

processes thousands of times to deposit Aether MORs at its Fremont, California location. (Ex. 27; Ex. 29; Ex. 11 at 5-6; Smith Decl. ¶¶ 129-133, 139-140, 150.) Each instance of such deposition constitutes infringement of one or more of claims 15 and 23 of the ’505 patent and claim 11 of the ’081 patent under § 271(a). (Smith Decl. ¶¶ 134, 142, 151.) And each time Lam makes or processes Aether MORs (*e.g.*, with its Aether Bake Tools or Aether Development Tools) in Fremont, or imports them, Lam infringes claim 14 of the ’312 patent under § 271(a). (*See, e.g.*, Ex. 31 at slides 3, 11, 13; Smith Decl. ¶¶ 157-161.) Finally, Lam’s importation of Aether MORs made using the methods recited in claims 15 and 23 of the ’505 patent and claim 11 of the ’081 patent, such as importation of Aether MORs processed at IMEC, infringes under § 271(g). (*See, e.g.*, Ex. 32; Smith Decl. ¶¶ 132-133, 139-140, 150, 159.)

**(a) Lam Infringes Claims 15 and 23 of the ’505 Patent**

Claim 15, which depends from claim 1, requires a process involving a reaction between a tin-based precursor vapor (described by the formula “$R_nSnX_{4-n}$”) and an oxygen-containing vapor, where “X” is one of the groups listed in claim 15. Claim 23, which depends from claims 1 and 12, specifies that the process uses an ***additional*** tin-based precursor having the formula “$SnL_4$.” Lam’s Aether MOR deposition processes infringe these claims.

Lam deposits Aether MORs through a CVD reaction between tin-based precursors (having the formula “$R_nSnX_{4-n}$”) and water (an oxygen-containing compound). (Smith Decl. ¶¶ 80, 85-86.) For example, in one process, [redacted][10] (Ex. 25 at slide 3; Ex. 26 at slide 4; Smith Decl. ¶ 86.)

---

[10] [redacted] (Smith Decl. ¶ 67.)

This process infringes claim 15 because, as seen in the figure below, [redacted] satisfies the formula “$R_nSnX_{4-n}$,” [redacted] (Smith Decl. Appx. C ¶¶ 8, 14.) [redacted] is also expressly listed in claim 15. (*Id.* at ¶ 14.)

[redacted]

(Ex. 26 (LAM_0000989) at 4 ([redacted]

In a modified version of the above process, [redacted] (*See* Ex. 28 at slide 2; Ex. 11 at 6; Ex. 120 at slide 13; Smith Decl. ¶¶ 91, 136-142, Appx. C ¶¶ 19-24.) These modified processes infringe claim 23 because [redacted] (Smith Decl. Appx. C ¶¶ 22-23.)

---

11 [redacted] (Smith Decl. Appx. C ¶ 17.)

Lam contends that it does not infringe claims 15 and 23 of the '505 patent solely because the Aether MORs formed by the above processes lack "an oxo-hydroxo network with metal cations," as recited in independent claim 1 of the '505 patent. (D.I. 297 at 1.) Lam's argument is flawed. The Aether MORs are formed using the same process and precursors [redacted] described in the '505 patent, resulting in MOR films having the same formula as those described in the '505 patent. (Smith Decl. ¶¶ 144-145 (comparing Ex. 26 at slide 4 *with*, '505 patent at 5:37-40).) As such, there can be no dispute that Lam practices the claimed inventions.

Moreover, as shown in the figure above, Lam's own documents indicate that [redacted] Smith Decl. ¶¶ 8, 144.) The tin atoms (annotated in red) are tin "cations" because they share electrons with the negatively charged oxygen anions (in the tin-oxo bond) and hydroxide anions (in the tin-hydroxo bond). (Smith Decl. ¶¶ 8, 144-146.)

**(b) Lam Infringes Claim 11 of the '081 Patent**

Claim 11 of the '081 patent generally relates to a method for forming a radiation patternable organometallic coating, where the method includes "depositing a tin composition having organic ligands and hydrolysable ligands." As discussed above with respect to the '505 patent, [redacted] to form Aether MORs. (*See, e.g.*, Ex. 25 at slide 3 [redacted] Smith Decl. ¶¶ 80, 88, 150, Appx. D ¶¶ 3-18.) Lam's contention that it does not deposit a tin composition having organic ligands and hydrolysable ligands (*see* D.I. 297 at 1) is simply untrue. Each of these tin-based precursors is a "tin composition" as claimed

because it has an "organic ligand" and a "hydrolysable ligand." (Smith Decl. ¶¶ 88-90, 153.) For example, [redacted] (*See, e.g.,* Ex. 26 at 4; Smith Decl. ¶¶ 80-81, Appx. D ¶ 6.)

**(c) Lam Infringes Claim 14 of the '312 Patent**

Claim 14 of the '312 patent generally requires a substrate with a film that contains "metal" ions bonded to "radiation sensitive ligands." Lam's Aether MORs are films formed on a semiconductor substrate. (Smith Decl. ¶¶ 75-76, Appx. E ¶¶ 3-4.) As discussed above, the Aether MORs also include tin (Sn) cations, which are "metal ions." (Ex. 33 at slide 4; Smith Decl. ¶¶ 144-146, 163.) Additionally, the Aether MORs include ligands that are "radiation sensitive" because they detach from tin upon radiation exposure. (Ex. 33 at slide 4 (radiation exposure removes "isopropyl" group); Smith Decl. ¶¶ 77-79.)

Lam asserts that it does not infringe claim 14 of the '312 patent because its Aether MORs do not constitute "a film . . . comprising metal ions," as required by independent claim 1 of the '312 patent. (D.I. 297 at 1.) This argument is flawed for reasons similar to those discussed above for the '505 patent. The tin atoms (annotated in red) in the Aether MORs are tin "cations" (and therefore, tin "ions") because they share electrons with the negatively charged oxygen anions (in the tin-oxo bond) and hydroxide anions (in the tin-hydroxo bond). (Smith Decl. ¶¶ 144-146, 163.)

**2. The Asserted Claims Are Valid**

In the context of a preliminary injunction, Lam "bears the initial burden to come forward with evidence of invalidity." *BlephEx, LLC v. Myco Indus.*, 24 F.4th 1391, 1398-99 (Fed. Cir. 2022) (internal citations omitted). Once Lam presents such evidence in its Opposition, Inpria

will provide a fulsome response to Lam's invalidity challenge in its Reply. In fact, Lam has severely hindered Inpria's ability to address validity in this Motion by adopting a kitchen-sink approach, as detailed in the parties' February 25, 2025 joint letter. (*See* D.I. 297 at 1-2.) Despite the Court urging the parties to "narrow[] the scope of their arguments" and "focus only on [the] 'best' arguments" (*see* D.I. 307), Lam ignored Inpria's request to focus the invalidity disputes for purposes of this motion. (Ex. 222.)

Regardless, Lam's invalidity positions lack substantial merit. This is illustrated by Lam's failure to challenge the Asserted Patents in an *inter partes* review, while it did challenge other Patents-in-Suit. Lam's invalidity positions also contradict its own valuation of Inpria's intellectual property, evidenced by Lam's extensive copying [redacted] of Inpria's technology (*see supra* Sections II.B-C), as well as the industry acclaim for that technology (*see infra* Section IV.B.3.) Nevertheless, Inpria provides below a summary of exemplary deficiencies in Lam's invalidity positions, to the extent Lam raises any of them.

**The '505 and '081 Patents Do Not Omit Any Inventors**: Lam's assertion that the '505 and '081 patents are invalid or unenforceable for omitting one or more State University of New York ("SUNY") individuals as inventors is unfounded.[12] Lam relies solely on SUNY allegations made in a separate case. But neither SUNY nor Lam has provided a declaration from any of the alleged inventors stating that they contributed to any of the Asserted Claims. This is unsurprising, as Dr. Robert Brainard, the SUNY Professor whom Lam credits as an "inventor" (D.I. 174 at Count XVIII), [redacted]. (Ex. 34 (INP-000029991) at 30000 [redacted]).) Dr.

[12] Lam does not argue that the '312 patent omits any inventors. (*See* D.I. 174 at Count XX.)

Brainard declared that [redacted] (*Id*. at 9998.)

Furthermore, neither Lam nor SUNY has linked any specific contributions by SUNY employees to particular claim limitations (*see, e.g.*, D.I. 174 at ¶¶ 239-246; D.I. 185 at 13-14), as required, *see Ethicon, Inc. v. U.S. Surgical Corp*., 135 F.3d 1456, 1461 (Fed. Cir. 1998) ("this court must determine what [the alleged inventor's] contribution was and then whether that contribution's role appears in the claimed invention"). Therefore, Lam's assertion of incorrect inventorship is baseless. In turn, Lam's inequitable conduct allegation premised on the same alleged inventorship issue necessarily fails. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc). It also fails due to the absence of evidence that anyone at Inpria misrepresented inventorship to the Patent Office with a specific intent to deceive. *Id.*

**The Asserted Claims Comply with 35 U.S.C. § 112**: Although Lam has relied on Inpria's patents for years to copy Inpria's technology (*see supra* Section II.B), which were allowed by the Patent Office after examining their compliance with the requirements of 35 U.S.C. § 112 (*see, e.g.*, MPEP § 2163), Lam now asserts that the Asserted Claims recite a genus lacking written description support and enablement. Lam, however, overlooks that (i) the claims recite "structural features common to members of the genus so that one of skill in the art [could] 'visualize or recognize' the members of the genus," *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1345 (Fed. Cir. 2010) (en banc) (citation omitted), and that (ii) the specifications identify representative species covered by the claims and provide guidance on how to identify others. (*See, e.g.*, Ex. 6 ('505 patent) at 5:44-47, 8:34-42, 12:38-43, col. 18 (Table 1), 19:10-38; Ex. 95 ('081 patent) at 9:37-41, 11:25-62, 18:7-11, Table 1, 19:30-58; Ex. 5 ('312

patent) at 10:62-12:56, 11:33-12:38.) The patent specifications also prove detailed descriptions that fully enable the Asserted Claims and do not require "undue experimentation." (*Id.*)

**The Asserted Claims Are Neither Anticipated nor Obvious**: The Patent Office extensively examined the Asserted Patents, including the many prior art references cited on the face of those patents. Lam's prior art contentions do not point out anything that the Patent Office purportedly missed. Lam's prior art references do not teach the recited combination of claim limitations, are not prior art, or were already considered by the Patent Office.

For example, no prior art reference identified by Lam (*see* D.I. 297) discloses a precursor having the formula "$R_nSnX_{4-n}$" with the "X" ligand recited in claim 15 of the '505 patent. They also do not disclose the use of both the claimed first ($R_nSnX_{4-n}$) and third ($SnL_4$) precursors, as recited in claim 23 of the '505 patent. Lam's suggestion that arriving at the combination of limitations would have been obvious relies on impermissible hindsight that requires altering specific formulas and formation processes. Lam's'081 patent assertions fare no better, as no prior art identified by Lam (*see* D.I. 297) discloses the claimed tin composition with a "branched alkly ligand," as recited in claim 11, and no evidence has been presented suggesting that the claim as a whole would have been obvious. Lam's prior art-based arguments for claim 14 of the '312 patent are also flawed. Stowers 2008 does not qualify as prior art due to a one-year publication embargo. (*See* Ex. 35 at OSU00000052.) Additionally, the Patent Office allowed the '312 patent claims over Keszler, which is cited on the face of the '312 patent.

**B. <u>Inpria Will Suffer Further Imminent and Irreparable Harm</u>**

Lam's infringement will continue to cause Inpria irreparable harm in the form of present and future market share loss, reputational harm, and price erosion. *See Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012); *see also Natera, Inc. v. NeoGenomics*

*Labs., Inc.*, 106 F.4th 1369, 1378 (Fed. Cir. 2024) (preliminary injunction appropriate where the harm is "not quantifiable"). In fact, Lam's business goal to [redacted] by excluding Inpria from the market (Ex. 23 at LAM_0304658), is precisely the type of harm that courts consistently find to warrant a preliminary injunction. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) (affirming preliminary injunction, explaining that a threat to a business's very existence is "[c]ertainly the . . . type of injury [that] sufficiently meets the standards for granting interim relief, for otherwise a favorable final judgment might well be useless"); *HR Staffing Consultants LLC v. Butts*, 627 F. App'x 168, 174 (3d Cir. 2015) (affirming preliminary injunction as appropriate where it "is essential to [plaintiff's] very existence"); *GeoDecisions v. Data Transfer Sols., LLC*, No. 1:10-cv-2180, 2010 WL 5014514, at *10 (M.D. Pa. Dec. 3, 2010) (loss of current and future business relationships are "classic examples of irreparable injuries" requiring a preliminary injunction).

**1. Inpria's Irreparable Harms Are Presently Existing and Immediate**

A preliminary injunction is warranted because Inpria faces "immediate irreparable harm, or a presently existing actual threat of harm." *Premier Dental Prods. Co. v. Darby Dental Supply Co., Inc.*, 794 F.2d 850, 858 (3d Cir. 1986); *accord Synthes, Inc. v. Gregoris*, 228 F. Supp. 3d 421, 440 (E.D. Pa. 2017).

**(a) Inpria Has Recently Suffered Decades-Long Market Share Loss, and Is at Risk of Losing Even More**

Though Lam has long copied Inpria's technology, it is only recently that Lam's infringement has changed market conditions, which has already resulted in devastating harm to Inpria. (Meyers Decl. ¶ 2.) In January 2025, a leading semiconductor manufacturer [redacted] selected Lam's infringing MOR technology over Inpria's for DRAM processes. (Ex. 36 at INP-000853284; Ex. 99 at INP-000853278-79.) Such market share loss is an irreparable

harm that warrants a preliminary injunction. *Celsis In Vitro*, 664 F.3d at 930. [redacted] (Ex. 38.) [redacted][13] (Meyers Decl. ¶ 40.)

This loss is effectively permanent. That is because it takes customers years to test the precursors and the resulting resist. (Ex. 39 at INP-000852627; Rao Decl. ¶¶ 10, 35-38, 50; Meyers Decl. ¶¶ 18, 20, 56)[14] Once selected, a customer invests [redacted] to build fabrication lines centered around that resist. (Rao Decl. ¶ 35; Meyers Decl. ¶¶ 15-19. Reconfiguring these fabrication lines is cost-prohibitive. (Ex. 40 at INP-000852578-79; Ex. 41 at INP-000852600-01; Ex. 42 at INP-000852590.) Thus, once a customer, [redacted] chooses a baseline resist, it is unlikely to change that decision for decades. (*See* Meyers Decl. ¶¶ 21-27; Rao Decl. ¶ 52.)

Lam's infringement, if permitted to continue, will cause Inpria greater, expedited market share loss. [redacted] is expected to make a baseline decision between Inpria and Lam's products within the next few months, and this only makes matters worse. (Rao Decl. ¶¶ 44-45; Ex. 51 at LAM_0034653.) [redacted]

[13] To the extent Lam argues that Inpria did not suffer market share loss because Inpria was not in competition for [redacted] business, that is wrong. (D.I. 297 at 4.) The record shows that the parties were competing for [redacted] business, with [redacted] preferring Inpria's MOR products over the Aether Platform for its DRAM processes at various points in time. *See, e.g.*, Ex. 43 at LAM_0578594 ([redacted]). [redacted]. (Meyers Decl. ¶ 49.)

[14] Meyers Decl. refers to the declarations of Dr. Stephen Meyers, and Rao Decl. refers to the declaration of Dr. Mohan Rao, submitted together with this Motion.

[redacted] (Ex. 52 at INP-000852566.) [redacted] is also an innovation leader, such that its adoption of a given technology would have a decision-making impact on remaining chipmakers who have yet to select their baseline between Inpria and Lam. (Rao Decl. ¶¶ 34, 46-47.) Losing [redacted] would thus mean that Inpria will not only lose a large segment of the market (on top of losing [redacted]), but will also accelerate any future loss of customers. (Rao Decl. ¶¶ 34, 46, 49; Meyers Decl. ¶ 28.) Additionally, [redacted] is set to make a baseline decision between Inpria and Lam's products in the next three months. (Rao Decl. ¶ 44; Meyers Decl. ¶ 38.) If not selected, [redacted], jeopardizing its ability to compete and survive in the semiconductor industry. (*See also* Meyers Decl. ¶ 55; Rao Decl. ¶¶ 32-38.)

*Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1337 (Fed. Cir. 2013), confirms that Inpria is facing irreparable harm. There, the Court issued an injunction where the parties competed to have their product chosen and integrated into their customers' equipment design. *Id.* Because altering the customer's equipment was difficult, "once a supplier is chosen to meet the needs of a new product line, the supplier's component is essentially designed into the OEM product for its life cycle," excluding its competitor from the market for, at a minimum, the lifecycle of that OEM product. *Id.* The same conclusion applies with equal force here. As in *Broadcom*, when a customer chooses an MOR for baseline and builds the fabrication lines around it, other MOR suppliers are excluded from the market for decades.

**(b) Lam's Business Goal of Putting Inpria Out of Business**

Recent discovery has revealed that Lam has been engaging in shocking business practices designed to amplify Inpria's existing harms. An internal email produced only recently on

January 31, 2025, shows that [redacted] (Ex. 44 at LAM_0784210 (emphasis added).) Recent discovery also revealed that Lam sought to [redacted] (Ex. 45 at slide 12; Ex. 46 at slide 21) and [redacted],[15] [redacted] (Ex. 47 (LAM_0089889) at slide 2 ([redacted]); Ex. 48 at slide 6; Ex. 49 at slide 1; *see also* Rao Decl. ¶ 24.) Lam's continued infringement is expected to further erode Inpria's reputation in the semiconductor space. (*See* Meyers Decl. ¶¶ 50-52.)

An internal email produced in February 2025 further revealed that Dr. Pramod Subramonium, Lam's managing director of the Aether Platform, issued a directive to [redacted]."[16] [redacted] (Ex. 24 at LAM_0285434.) Lam decided to communicate to [redacted], among others, that it would [redacted]. (Ex. 50 at LAM_0435791 (instructing that [redacted]

[15] "Nimbus" refers to Lams's technology for depositing an underlayer beneath the resist. (Smith Decl. ¶ 93.) Because the underlayer improves resist performance, many semiconductor chipmakers use Nimbus in their fabrication lines. (*Id.*)

[16] "Kyber" is a Lam tool for further processing MORs. (*Id.* ¶ 94.) [redacted]

[redacted]

Lam's schemes came to a head in February 2025, when Lam disclosed in its joint letter to the court that it sought an early summary judgment because a covenant not to sue between Inpria and Intel broadly, if not entirely, shielded Lam from infringement liability, so long as its activities supported Intel. (D.I. 297.) Lam has thus made clear that it views the Inpria-Intel covenant not to sue, which Lam claims is a broad license to use Inpria's technology (it is not), as a free-pass to infringe Inpria's technology without paying a dime. In other words, Lam believes it can directly infringe Inpria's patents now to solidify its position with customers, and then be insulated from damages later because of Intel's alleged license. Absent an injunction, Lam will hide behind the covenant not to sue to continue its infringement and harm Inpria. Lam's business plots and its eleventh-hour legal defense show that Lam has no intention of slowing down its infringement, which will further erode Inpria's reputation as a market leader in the MOR technology. These conducts also amplify the harm that its infringement caused Inpria, to a point where it may not survive as a business absent an injunction. The risk to Inpria's existence is now imminent. (Rao Decl. ¶¶ 11-12, 53; Meyers Decl. ¶ 48); *see also In re Broadstripe, LLC*, No. 09–10006, 2009 WL 774401 (D. Del. Mar. 26, 2009) (holding that to grant a preliminary injunction, "the harm must be imminent and must not be speculative and cannot occur in some indefinite future." (citations omitted).)

**2. Inpria and Lam Are Direct Competitors**

"Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented invention." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d

1336, 1345 (Fed. Cir. 2013). Direct competition renders permanent market share loss inevitable. *See TruePosition Inc. v. Andrew Corp.*, 568 F.Supp.2d 500, 531 (D. Del.2008) (collecting cases). That the parties are direct competitors is "a factor of substantial weight in the irreparable injury analysis." *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 3:06–CV–1105, 2011 WL 2927817, at *10 (M.D. Pa. Jul. 18, 2011) (collecting cases).

Lam seeks to relitigate an issue on which this Court already decided. In the February 25, 2025 joint letter to the Court, Lam argued that "Inpria and Lam are not competing in the same space." (D.I. 297 at 4.) The Court rejected that argument before, and should do so again now. (D.I. 116 at 4-5.) As the Court previously determined—after reviewing a substantial number of documents, including Lam's own internal presentation from 2023 that refers to [redacted]—"there is good evidence before this Court that Plaintiff and Defendant are competitors." (D.I. 116 at 4-5; see also D.I. 115, Exs. A-C.)

Recent discovery has only bolstered that conclusion: In a September 28, 2024 email, Dr. Weidman, the Technical Director for the Aether Platform, proclaimed that [redacted] (Ex. 30 at LAM_0938450-53.) Dr. Weidman further states, [redacted] and [redacted] (*Id.*) Other documents point to the same conclusion.[17] (*See also* Rao Decl. ¶¶ 8-9, 25-31; Meyers Decl. ¶

[17] (*See, e.g.*, Ex. 54 at slide 27; Ex. 55 at slide 2; Ex. 56 at slide 2; Ex. 57 at slide 20; Ex. 46 at slide 8; Ex. 58 at LAM_0095717-20; Ex. 59 at slide 16; Ex. 60 ([redacted]

11.) Thus, "[e]ach sale of [Lam's Aether Platform will] likely deprive[] [Inpria] of market share, revenue, and brand recognition," warranting a preliminary injunction. *See Arlington*, 2011 WL 2927817, at *10; (Rao Decl. ¶¶ 12, 40-43, 48-51.)

In arguing that Lam does not itself manufacture its precursors, and that it primarily supplies the tools in the Aether Platform, Lam once again rehashes old arguments. This Court, in denying Lam's motion to stay, stated:

> Although the nature of the products that the parties make or supply may be different, the above evidence suggests that they are attempting to compete for the business of the same semiconductor manufacturers with those products—to the potential detriment of the other party.

(D.I. 116 at 5.) Nothing has changed since the Court's Order.[18] Direct competition exists even where the parties do not sell the same product, so long as the products "compet[e] for the same customers in the same markets, or when products meet the same needs[.]" *In re Aflibercept Patent Litigation*, 1:23-CV-97, 2024 WL 3423047 at *41 (N.D.W.Va. Jul. 9, 2024) (cleaned up); *see also Broadcom Corp. v. Emulex Corp.*, SACV 09–1058, 2012 WL 13036855 at *3 (C.D. Cal. Mar. 16, 2012), *aff'd*, 732 F.3d 1325 (Fed. Cir. 2013).

As direct competitors, "any growth experienced by [Lam] would therefore result in lost sales to [Inpria]." *Natera*, 106 F.4th at 1379. Lam's use of Inpria's technology to further refine and develop its Aether Platform will support Lam's growth, because it will encourage customers

[redacted]); Ex. 61 at INP-000083191 ([redacted].)

[18] [redacted]. (Rao Decl. ¶¶ 22-23; Ex. 62 at LAM_0003741, 3745; Ex. 63 at slides 4-5; Ex. 54 at slide 9; Ex. 55 at slide 2; Ex. 64; Ex. 65 at LAM_0003753; Ex. 66 a LAM_0004898, 901; Ex. 67 at LAM_0013155-56; Ex. 68 at slide 2; Ex. 46 at slide 8.)

to select the Aether Platform over Lam's MOR products. Thus, "direct competition establishes nexus." *Id.*; *Broadcom Corp.*, 732 F.3d at 1337 (same). Nexus also exists because there is "'some connection' between the patented features and the demand for the infringing products." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 641 (Fed. Cir. 2015). Absent Lam's infringement, its Aether Platform would not have existed, nor been tested by customers. And, Lam's direct infringement—which is necessary when working with customers to establish and refine its Aether Platform—will have a direct impact on Inpria. (Rao Decl. ¶¶ 39, 53; Smith Decl. ¶ 74.) That is because the Aether Platform requires depositing and processing Aether MORs using Aether tools—all of which are infringing. (Smith Decl. ¶¶ 128-34, 136-40, 149-51, 158-61.) Any demand for the Aether Platform is based on its ability to form and process Aether MORs. (Rao Decl. ¶ 39.) *See Natera, Inc.*, 106 F.4th at 1380. The demand for the infringing Aether Platform caused Inpria harm, such as market share loss, price erosion, and reputational harm, as discussed above.[19]

### 3. Inpria Is Likely to Lose Brand Recognition

Inpria is likely to lose brand recognition, which can neither be reliably measured nor redressed by money damages. Before Lam's infringement, Inpria's MOR was widely considered "pioneering" and "one of the best resists around." (Ex. 69 at INP-000852976; Ex. 70 at INP-000852544; Ex. 71 at INP-000852546; Ex. 72 at INP-000853325; Meyers ¶¶ 3-6.) Through its Aether Platform, Lam has made concerted effort to harm Inpria's reputation as the market leader

---

[19] To the extent Lam seeks to argue that its anticompetitive conduct alone, not its infringement, ***caused*** Inpria harm, Lam is wrong. [redacted] exacerbate the harm resulting from Lam's infringement. (*See supra* Section IV.B.2.)

in MOR technology. For example, Lam issued a press release describing itself as "the creator of the world's only EUV dry resist deposition and dry development technologies with capabilities that surpass all other industry offerings," including Inpria's MOR products. (Ex. 73 at INP-000853296.) As another example, [redacted] (Ex. 44 at LAM_0784210.) If Lam's infringement were to continue, Inpria will suffer additional attacks on its brand, and further harm to Inpria's reputation would be virtually impossible to quantify or repair. (Rao Decl. ¶ 40); *see Celsis In Vitro,* 644 F.3d at 930 (reputational harm is irreparable).

**4. Inpria Will Suffer Price Erosion**

Lam's infringement, unless enjoined, will cause additional price erosion of Inpria's MOR products. Because Lam and Inpria are direct competitors in a two-player market, the customers have only Aether Precursors and Inpria's precursors to choose from. (Rao Decl. ¶¶ 25-31; Meyers Decl. ¶¶ 11, 29-44.) As Dr. Rao explains, [redacted] (Rao Decl. ¶¶ 40-43.) But, as discussed, [redacted] (Rao Decl. ¶¶ 42-43; Meyers Decl. ¶ 53.) [redacted] (Ex. 74 at slide 2.) [redacted] (Rao Decl. ¶ 42; Ex. 75 at INP-000528006-08.) Because Lam's predatory tactics will further erode Inpria's reputation, unless Lam is enjoined from its harmful conduct, [redacted] (Rao Decl. ¶¶ 42-43; Meyers Decl. ¶ 54.) Courts routinely award preliminary injunctions to prevent price erosion.

*See, e.g.*, *Sanofi-Synthelabo*, 470 F.3d at 1382-83 (awarding preliminary injunction where "Sanofi has been forced to offer discounted rates and price concessions" to retain customers).

**C. The Balance of Hardships Clearly Favors Inpria**

While Inpria may be driven out of the market absent an injunction, such relief will cause no significant financial loss for Lam. Inpria is a small company that spun out of Oregon State University's Department of Chemistry in 2007. (Meyers Decl. ¶ 3; Ex. 76 at 16.) Inpria employs about 110 employees, almost half of which are devoted to research and development. (Meyers Decl. ¶ 5.) Inpria's only product for sale is MOR, which accounts for approximately [redacted] of its annual revenue, and the Asserted Patents are at the core of Inpria's business. (Meyers Decl. ¶¶ 7-10; Ex. 87.) For the past four years, Inpria was [redacted] (Meyers Decl. ¶ 9; Ex. 78.) Inpria's continued operation hinges on recouping its investments after the widespread adoption of its innovation. (Meyers Decl. ¶ 8.) Absent that, Inpria cannot remain viable. (*See* Meyers Decl. ¶¶ 45-48.)

By contrast, Lam, a company of over 17,000 employees with nearly $15 billion in annual revenue, is a newcomer in the MOR market, and only a [redacted] portion of its revenue stems from the Aether Platform. (Ex. 39 at INP-00085622; Ex. 79 at INP-000853029; Ex. 80 at slide 36.) Because MOR is not Lam's main business, an injunction will have minimal impact on it. (Ex. 39 at INP-00085622.) In such circumstances, a preliminary injunction is appropriate. *See, e.g.*, *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1329-30 (Fed. Cir. 2008).

That JSR acquired Inpria does not affect the analysis. Post-acquisition, Inpria remained an independent corporate entity apart from JSR. (Ex. 81 at INP-000852558.) JSR acquired Inpria for the Asserted Patents and its MOR market position, and it expected Inpria's MOR

business to continue generating significant revenue. (Meyers Decl. ¶ 48.) Acquisition does not mitigate irreparable harm where the parent "expect[ed] the company to become a profitable sustaining business," as here. *Neology, Inc. v. Federal Signal Corp.*, CA 11–672–LPS/MPT, 2012 WL 2308202 at *23 (D. Del. June 18, 2012).

### D. <u>The Injunction Is in the Public Interest</u>

The preliminary injunction is in the public interest, because "there is a strong public interest in protecting valid patents" and incentivizing "discovery and development of new products." *The Research Found. Of State Univ. of New York v. Mylan Pharm. Inc.*, 723 F. Supp. 2d 638, 663 (D. Del. 2010). Inpria spent over 15 years developing its MOR technology, investing nearly [redacted] of its highly trained workforce, and [redacted] in research and development expenses between December 2020 and August 2024 alone. (Meyers Decl. ¶ 5; *see also* Rao Decl. ¶ 21.) The industry recognized Inpria's MOR as "pioneer[ing]" and of "strategic significance." (*See supra* Section IV.B.3.) By copying Inpria, Lam was able to launch its competing Aether Platform in less than [redacted] years, compared to the 15 years Inpria spent to arrive at that point of competition. (Smith Decl. ¶ 54.) Absent an injunction, Inpria will be robbed of the time and money it invested, despite bringing a ground-breaking technology to the market. (Meyers Decl. ¶ 11-14.) Failure to protect Inpria's investment will chill innovation in the space. *See, e.g., Douglas Dynamics*, 717 F.3d 1336, 1345 (D. Del. 2013); *Celsis In Vitro*, 664 F.3d at 931-32. And, Aether Precursors are no better than Inpria's precursors. (Smith Decl. ¶¶ 70, 146.)

## V. CONCLUSION

For the reasons stated above, Inpria respectfully requests that the Court grant the instant motion in full. A proposed order is attached.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

<u>*/s/ Adam W. Poff*</u>
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
*Attorneys for Plaintiff Inpria Corporation*

Of Counsel:

PAUL HASTINGS LLP

Naveen Modi (*pro hac vice)*
Joseph E. Palys (*pro hac vice*)
Phillip W. Citroen (*pro hac vice)*
Douglas W. Cheek *(pro hac vice)*
Brooke M. Wilner (*pro hac vice*)
Madeleine Moss *(pro hac vice)*
2050 M Street NW
Washington, DC 20036
(202) 551-1700
naveenmodi@paulhastings.com
josephpalys@paulhastings.com
phillipcitroen@paulhastings.com
douglascheek@paulhastings.com
brookewilner@paulhastings.com
madeleinemoss@paulhastings.com

Eric W. Dittmann (*pro hac vice)*
Isaac Ashkenazi (*pro hac vice*)
Young J. Park (*pro hac vice*)
Joshua M. Bennett (*pro hac vice*)
Sachiko Taniguchi (*pro hac vice*)
Richard Rothman (*pro hac vice*)
200 Park Avenue
New York, NY 10166
(212) 318-6000
ericdittmann@paulhastings.com
isaacashkenazi@paulhastings.com
youngpark@paulhastings.com
joshuabennett@paulhastings.com
sachikotaniguchi@paulhastings.com
richardrothman@paulhastings.com

Paul M. Anderson (*pro hac vice*)
600 Travis Street, 58th Floor
Houston, TX 77002
(713) 860-7300
paulanderson@paulhastings.com

Dated: March 10, 2025

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 10, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

John V. Gorman
Amy Michele Dudash
MORGAN, LEWIS & BOCKIUS LLP
1201 N. Market Street
Ste 2201
Wilmington, DE 1980
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

Phillip D. Wolfe
Alison P. Patitucci
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
phillip.wolfe@morganlewis.com
alison.patitucci@morganlewis.com

Karon N. Fowler
Amanda S. Williamson
Zachary Miller
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
karon.fowler@morganlewis.com
amanda.williamson@morganlewis.com
zachary.miller@morganlewis.com

Dion M. Bregman
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA 94304
dion.bregman@morganlewis.com

Michael J. Lyons
Ahren C. Hsu-Hoffman
Katerina Hora Jacobson
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road

Christopher Page Simon
Michael Louis Vild
CROSS & SIMON, LLC
1105 North Market Street, Suite 901
Wilmington, DE 19801
csimon@crosslaw.com
mvild@crosslaw.com

Matthew J. Moore
Robert B. Dunteman
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
matthew.moore@lw.com
robert.dunteman@lw.com

Charles H. Sanders
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
charles.sanders@lw.com

Thomas W. Yeh
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
thomas.yeh@lw.com

Palo Alto, CA 94304
michael.lyons@morganlewis.com
ahren.hsu-hoffman@morganlewis.com
katerina.horajacobson@morganlewis.com

Dated: March 10, 2025

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
dmackrides@ycst.com

*Attorneys for Plaintiff Inpria Corporation*