**Misc. Case No. 2025-_____**

_____

# United States Court of Appeals
# for the Federal Circuit

_____

IN RE:

THE RESEARCH FOUNDATION FOR THE STATE UNIVERSITY OF NEW YORK,

*Petitioner.*

_____

On Petition for Writ of Mandamus from the
United States District Court for the District of Delaware,
Case No. 1:22-cv-1359
Magistrate Judge Christoper J. Burke

_____

**PETITION FOR WRIT OF MANDAMUS**

_____

John E. Schiltz
SUSMAN GODFREY, LLP
401 Union St., Suite 3000
Seattle, Washington 98101
(206) 516-3880

Justin A. Nelson
SUSMAN GODFREY, LLP
1000 Louisiana St., Suite 5100
Houston, Texas 77002
(713) 615-9366

*Counsel for Petitioner*
*The Research Foundation for The State University of New York*

## CERTIFICATE OF INTEREST

1.     The full name of every party represented by me is The Research Foundation for The State University of New York.

2.     There are no other real parties in interest represented by me.

3.     The Research Foundation for The State University of New York is a private non-profit education corporation that is tax-exempt under Internal Revenue Code (IRC) Section 501(c)(3). There are no parent corporations or any publicly held companies that own 10 percent or more of the stock of The Research Foundation for The State University of New York.

4.     The names of all law firms and attorneys that appeared for The Research Foundation for The State University of New York in the district court or are expected to appear in this court are:

SUSMAN GODFREY L.L.P.: John E. Schiltz, Justin A. Nelson

FARNAN LLP: Brian Farnan


*/s/ Justin Nelson*
Justin Nelson

i

# **TABLE OF CONTENTS**

ISSUE PRESENTED ................................................................................1

INTRODUCTION ..................................................................................1

RELIEF SOUGHT .................................................................................5

STATEMENT OF FACTS .......................................................................5

    I.     FACTUAL BACKGROUND .....................................................5

    II.    PROCEDURAL BACKGROUND .........................................8

REASONS WHY THE WRIT SHOULD ISSUE ...................................14

    I.     SUNY RF'S RIGHT TO ISSUANCE OF THE WRIT IS
         CLEAR AND INDISPUTABLE .......................................15

         A.    SUNY RF has a clear and indisputable right to receive
                a timely decision on the Rule 19(b) question. ..........................15

         B.    Rule 19(b) clearly and indisputably requires the
                district court to take steps to protect SUNY RF as an
                absent, required party. ...............................................19

         C.    The district court's course of proceedings is violating
                SUNY RF's rights and Rule 19(b). ............................22

    II.    THERE IS NO OTHER ADEQUATE MEANS TO
         ATTAIN THE RELIEF SUNY RF SEEKS .......................26

    III.   THE WRIT IS APPROPRIATE UNDER THE
         CIRCUMSTANCES ........................................................28

CONCLUSION .....................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A123 Sys., Inc. v. Hydro-Quebec*,
  626 F.3d 1213 (Fed. Cir. 2010) ..........................................................................27

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ..........................................................................26

*In re Apple Inc.*,
  52 F.4th 1360 (Fed. Cir. 2022) ................................................................5, 16, 22

*In re Apple Inc.*,
  No. 2023-120, 2023 WL 2359699 (Fed. Cir. Mar. 6, 2023) ................15, 16, 17

*AsymmetRx, Inc. v. Biocare Med., LLC*,
  582 F.3d 1314 (Fed. Cir. 2009) ..........................................................................30

*Cheney v. U.S. Dist. Ct.*,
  542 U.S. 367 (2004)............................................................................................14

*E.E.O.C. v. Peabody W. Coal Co.*,
  400 F.3d 774 (9th Cir. 2005) ..............................................................................30

*In re EMC Corp.*,
  677 F.3d 1351 (Fed. Cir. 2012) ............................................................16, 17, 19

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*,
  80 F.4th 223 (3d Cir. 2023) ............................................................................3, 31

*Ethicon, Inc. v. U.S. Surgical Corp.*,
  135 F.3d 1456 (Fed. Cir. 1998) ............................................................................3

*In re Google Inc.*,
  No. 2015-138, 2015 WL 5294800 (Fed. Cir. July 16, 2015) ................16, 17, 22

*In re Google Inc.*,
  588 F. App'x 988 (Fed. Cir. 2014) ......................................................................30

*Hoe v. Wilson*,
  76 U.S. 501 (1869)........................................................................................20, 21

*Hudson v. Parker*,
  156 U.S. 277 (1895)....................................................................................16

*I.C.C. v. U.S. ex rel. Campbell*,
  289 U.S. 385 (1933)....................................................................................16

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
  109 F.3d 1567 (Fed. Cir. 1997) ................................................................28

*Jonesfilm v. Lion Gate Int'l*,
  299 F.3d 134 (2d Cir. 2002) .........................................................................3

*Klamath Claims Comm. v. United States*,
  541 F. App'x 974 (Fed. Cir. 2013) ............................................................20

*Lam Rsch. Corp. v. Brainard*,
  No. 1:25-mc-00008-DNH-PJE (N.D.N.Y. July 28, 2025) ...................13, 23

*Lam Rsch. Corp. v. Freedman*,
  No. 0:25-mc-00028-DLM (D. Minn. June 23, 2025)....................12, 13, 29

*Lee v. Anthony Lawrence Collection, L.L.C.*,
  47 F.4th 262 (5th Cir. 2022) ......................................................19, 20, 28, 31

*Mallow v. Hinde*,
  25 U.S. 193 (1827)......................................................................................21

*McDonnell Douglas Corp. v. Polin*,
  429 F.2d 30 (3d Cir. 1970) ...................................................................23, 25

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
  909 F.3d 48 (3d Cir. 2018) .........................................................................20

*Mote v. Wilkie*,
  976 F.3d 1337 (Fed. Cir. 2020) .................................................................28

*Neitzke v. Williams*,
  490 U.S. 319 (1989)....................................................................................29

*In re Nintendo Co., Ltd.*,
  544 F. App'x 934 (Fed. Cir. 2013) .....................................................*passim*

*In re Princo Corp.*,
478 F.3d 1345 (Fed. Cir. 2007) ....................................................14, 26

*Provident Tradesmens Bank & Tr. Co. v. Patterson*,
390 U.S. 102 (1968).......................................................................20, 21

*Republic of Philippines v. Pimentel*,
553 U.S. 851 (2008)...........................................................................*passim*

*Roche v. Evaporated Milk Ass'n*,
319 U.S. 21 (1943)...............................................................14, 16, 20

*Rsch. Found. for State Univ. of N.Y. v. Inpria Corp.*,
2025 WL 472680 (N.D.N.Y. Feb. 12, 2025)...............................1, 9, 29

*Schering Corp. v. Roussel-UCLAF SA*,
104 F.3d 341 (Fed. Cir. 1997) .............................................................22

*STC.UNM v. Intel Corp.*,
754 F.3d 940 (Fed. Cir. 2014) .......................................................3, 32

*STC.UNM v. Intel Corp.*,
767 F.3d 1351 (Fed. Cir. 2014) ...................................................*passim*

*In re TracFone Wireless, Inc.*,
848 F. App'x 899 (Fed. Cir. 2021) ..............................................16, 25

*Tullett Prebon PLC v. BGC Partners, Inc.*,
427 F. App'x 236 (3d Cir. 2011) ............................................3, 20, 31

**Statutes**

28 U.S.C. § 1295(a)(1)...........................................................................14

28 U.S.C. § 1651(a) ...............................................................................14

## ISSUE PRESENTED

Whether The Research Foundation for The State University of New York ("SUNY RF") is entitled to a writ of mandamus to correct the district court's clear abuse of discretion in failing to resolve whether this action must be dismissed under Federal Rule of Civil Procedure 19(b) because SUNY RF is an indispensable party but cannot be joined due to its patent, jurisdictional, and venue rights.

## INTRODUCTION

This patent infringement action (the "Delaware Action") must not continue, especially in Delaware. It revolves around who invented and owns foundational semiconductor technology developed at The State University of New York; and as a result, who may use—and bring infringement suits to enforce—the asserted patents.

While Plaintiff Inpria claims that it invented and owns the patents-in-suit, another federal court has already determined that nonparty SUNY RF has stated valid "patent ownership claims stemming from a contractual agreement, and not solely due to inventorship," and that Inpria and its parent JSR Corporation have "wrongfully benefited from its public misrepresentation that [they] are the sole owners of the Challenged Patents." *Rsch. Found. for State Univ. of N.Y. v. Inpria Corp.*, 2025 WL 472680, at *24-25 (N.D.N.Y. Feb. 12, 2025) (the "Albany Action"). That case is proceeding simultaneously in the Northern District of New York

1

because Inpria and SUNY RF long ago agreed that the exclusive jurisdiction and venue for resolving any disputes relating to the ownership, inventorship, and use of the subject technology, "shall be" "exclusively" in the "County of Albany." Appx01060 (¶ 18); Appx01069 (§ 13); Appx01097 (§ 13).

Similarly, defendant Lam Research has answered Inpria's claims in the Delaware Action with defenses and counterclaims asserting that Inpria lacks standing to assert the patents-in-suit; that Lam is indemnified against suit under a 2015 Research Agreement between Inpria and SUNY RF; that SUNY RF is the owner and inventor of the patents-in-suit; and that the Delaware court should transfer the ownership and inventorship issues to Albany. Appx00183-217; Appx00223-32. Indeed, Inpria *agreed* that the indemnification issue must be resolved in New York. Appx00261.

Both Inpria's claims and Lam's defenses in the Delaware Action suffer from an *incurable* defect requiring the Delaware court to dismiss or stay that action. SUNY RF is a required party to adjudicate those disputes under Federal Rule of Civil Procedure 19(a), but SUNY RF cannot be joined under Rule 19(b) and as a matter of substantive patent law. Yet instead of ruling on the pending motions, the Delaware court (Magistrate Judge Burke, sitting with Lam and Inpria's consent) has allowed the case to continue for nearly five months. In fact, it has *extended* the schedule to allow the parties to take discovery into these ownership and inventorship issues—

2

some of the very harms Rule 19 and this court's caselaw is supposed to prevent.

It is axiomatic that "[a]n action for infringement must join as plaintiffs all co-owners," *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467 (Fed. Cir. 1998), and "no precedent has held that a co-owner may be involuntarily joined." *STC.UNM v. Intel Corp.*, 767 F.3d 1351, 1353 (Fed. Cir. 2014). That is because "the right of a patent co-owner to impede an infringement suit brought by another co-owner is a substantive right that trumps the procedural rule for involuntary joinder under Rule 19(a)." *STC.UNM v. Intel Corp.*, 754 F.3d 940, 946 (Fed. Cir. 2014).

That rule is especially applicable where, as here, the existing parties' standing, ownership, inventorship, and indemnity disputes "require the definition" of the absent party's contractual rights. *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 141 (2d Cir. 2002); *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 233, 234 n.15 (3d Cir. 2023) ("We note we are dealing with contracting parties, who have been described as 'the paradigm of an indispensable party.'").

Accordingly, SUNY RF has an indisputable right to dismissal of the Delaware Action. It cannot proceed in SUNY RF's absence under Rule 19(b) or substantive patent law. *Tullett Prebon PLC v. BGC Partners, Inc.*, 427 F. App'x 236, 239 (3d Cir. 2011) ("If such a party is then held to be indispensable under Rule 19(b), 'the action cannot go forward.'"); *STC.UNM*, 754 F.3d at 947 ("Because co-owner Sandia did not consent to join this infringement suit against Intel and cannot

3

otherwise be involuntarily joined on these facts, STC cannot maintain its suit.").

SUNY raised these issues to the Delaware court nearly five months ago in an agreed *amicus* filing. Defendant Lam then filed its own motion to dismiss or stay the Delaware Action. But the district court still has not ruled. In fact, rather than rule on these motions and resolve this predicate issue, the district court has barreled forward on the merits through fact and expert discovery and just last week (August 28, 2025) issued a *Markman* order construing the patents in SUNY RF's absence. In direct violation of Rule 19(b), the court extended case deadlines expressly to permit "SUNY-related" discovery—effectively forcing SUNY RF to participate in the Delaware Action through the backdoor as a nonparty. And on August 26, the court extended expert discovery to account for upcoming depositions of SUNY witnesses. And at the preliminary injunction hearing, the court explicitly questioned SUNY RF's ownership, inventorship, and contractual rights in its absence.

A writ of mandamus is warranted because the district court has clearly abused its discretion in failing to resolve the Rule 19(b) question. *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 942 (Fed. Cir. 2013) (issuing writ because "[b]y improperly refusing to exercise that discretion, the district court effectively deprived petitioners of any meaningful review of the questions its motions posed"). "[I]t is a clear abuse of discretion to require the parties to expend additional party and court resources litigating the substantive matters of the case while [SUNY RF's motion]

4

unnecessarily lingers on the docket." *In re Apple Inc.*, 52 F.4th 1360, 1362 (Fed. Cir. 2022) (issuing writ, ordering district court to rule, and staying all other proceedings).

The writ is SUNY RF's only remedy. Even if SUNY RF could appeal final judgment, the prejudice to SUNY RF's substantive and procedural rights will be done by the time of final judgment. After all, both Rule 19(b) and substantive patent law provide SUNY RF a right to be *free from suit*, not just from adverse rulings or judgment. And the writ is especially appropriate because deferring the Delaware Action in favor of the Albany Action will avoid piecemeal litigation, conflicting judgments, and a substantial waste of party and judicial resources in both Delaware and Albany. The Court should grant the petition.

## RELIEF SOUGHT

SUNY RF requests the Court to grant this petition for a writ of mandamus, order the district court to promptly rule on the Rule 19(b) motions, and stay all district-court proceedings on the merits until those motions have been resolved.

## STATEMENT OF FACTS

### I.    FACTUAL BACKGROUND

In 2011, researchers led by Dr. Robert Brainard at The State University of New York invented what would become one of the most groundbreaking successes of semiconductor fabrication in decades: Molecular Organometallic Resists for EUV ("MORE"). Appx01074-76. Although the SUNY team would synthesize and develop ~500 compounds in just the first three years of the MORE Project, they were

focused on so-called "tin oxocluster" photoresists from the outset. Appx01074-76.

The MORE Project was funded immediately: first, by Intel Corporation during the first year of the Project from 2011 to 2012, and then by the SEMATECH Consortium, starting in 2012—the same year that Inpria joined SEMATECH. Appx00372 (First Am. Compl. ¶ 11).

When Inpria's CEO Andrew Grenville learned about the MORE Project, he immediately did everything he could to learn about SUNY's inventions. He recruited many of Dr. Brainard's researchers to Inpria, Appx01338; attended confidential SEMATECH presentations about the MORE research, Appx01350-52; entered into a June 2013 confidentiality agreement with SUNY to obtain direct access to the MORE research, Appx01057-62; and met with Dr. Brainard to discuss MORE on multiple occasions, Appx01340-85. Inpria even paid for Dr. Brainard to fly across the country to present MORE to Inpria's executives and scientists at its Oregon headquarters. Appx01366-67.

For its part, Inpria would not file the application giving rise to "Inpria's" first tin oxocluster photoresist patent until August 22, 2013—more than two years after the SUNY team first conceived it, reduced it to practice, and shared it with Inpria. Appx01161. Inpria was so impressed that it requested to take over funding of the MORE Project from SEMATECH starting in 2015. Appx01372. Inpria executed two successive Research Agreements with SUNY RF, in 2015 and 2017, for "research

and development activities related to organometallic photoresist materials." Appx01064; Appx01092.

In seeking SUNY's help, Inpria's Grenville wrote to Dr. Brainard in October 2014, "[o]ur high level goals are well aligned (i.e., to make the best EUV resist!), and we will crack this nut with and only with the integrated team capable of doing so. I am intent on doing so under working relationships that are fair and equitable all around." Appx01377. Thus, SUNY RF and Inpria needed to agree concerning the intellectual property that the SUNY team had developed from the MORE Project's conception in 2011, through when SUNY RF and Inpria first executed their NDA in June 2013, to the date of the first Research Agreement. There was never any question that it belonged solely to SUNY RF: the parties defined it as SUNY RF's "PRIOR PROJECT IP." *See, e.g.*, Appx01064; Appx01067 (§ 9(h)); Appx01074 (Exhibit A to Research Agreement); Appx01089 (Exhibit C to Research Agreement).

They also agreed that SUNY RF and Inpria, respectively, would each hold sole title to all intellectual property that was "generated, conceived or reduced to practice during the conduct of work under this Agreement" using their own "facilities or personnel" "exclusively." Appx01066 (§ 9(a)); Appx01067 (§ 9(e)). Joint title would automatically vest in both parties for everything else—that is, for everything developed jointly by the parties or otherwise "generated, conceived or reduced to practice during the conduct of the work under this Agreement" by one

party utilizing the other's "facilities" and/or "personnel." Appx01067 (§ 9(e)).

SUNY RF and Inpria then extended the Project through a second Research Agreement, effective as of May 1, 2017. Appx01092. It is substantially identical to the 2015 Research Agreement, except it attached a new Statement of Work. *See* Appx01101. The parties also expanded the "PRIOR PROJECT IP" definition to include three additional MORE inventions that SUNY RF exclusively developed before the 2017 Agreement. *See* Appx01110-11.

## II.    PROCEDURAL BACKGROUND

Inpria filed the Delaware Action on October 14, 2022, alleging Lam infringes U.S. Patent Nos. 10,732,505, 9,823,564, and 9,310,684—all relating to tin oxocluster photoresists. Appx00084.

On November 6, 2023, SUNY RF gave Inpria notice "of potential legal action re tin-oxide photoresists and intellectual property." Appx00361. It explained that it owned (by contract and inventorship) certain MORE patents assigned to Inpria, including the patents-in-suit. Appx00361-63. It requested a pre-suit resolution, including for Inpria to correct the errors of inventorship and assignment to acknowledge SUNY's contributions to the patents. Appx00361-63.

On December 12, 2023, Inpria amended its complaint in the Delaware Action to allege Lam also infringes U.S Patent Nos. 10,642,153, 11,537,048, 11,673,903, 11,693,312, and 11,809,081, Appx00095, many of which SUNY RF had expressly

called out in its letter to Inpria the previous month. *See* Appx00362.

On January 25, 2024, SUNY RF filed the Albany Action. Complaint, *Rsch. Found. for State Univ. of N.Y. v. Inpria Corp.*, No. 1:24-cv-00120-BKS-ML, (N.D.N.Y.). Among other claims, SUNY RF alleges it is the owner or co-owner of 25 U.S. Patents (and their foreign counterparts) assigned to Inpria—including all eight patents asserted in the Delaware Action. *Id.* at 44-201. It also alleges that inventorship of these 25 patents must be corrected to name Dr. Brainard and various members of his research team—including then-SUNY student and now-Inpria scientist Brian Cardineau. *Id.* at 215-350.

On June 3, 2024, Inpria and JSR answered SUNY RF's amended complaint in the Albany Action, admitting that Inpria "entered into the 2015 and 2017 Research Agreements with Plaintiff and that those Agreements included choice of law and venue provisions that selected New York." Inpria Corp.'s Second Amended Answer and Defs. at ¶ 52, *Rsch. Found. for State Univ. of N.Y. v. Inpria Corp.*, No. 1:24-cv-00120-BKS-ML, (N.D.N.Y. June 3, 2024). On the same day, Inpria and JSR moved for partial judgment on the amended pleadings, seeking dismissal of SUNY RF's ownership claims but not any of the inventorship claims. Notice of Motion, *Rsch. Found. for State Univ. of N.Y. v. Inpria Corp.*, No. 1:24-cv-00120-BKS-ML, (N.D.N.Y. June 3, 2024). The Albany court denied the motion "in its entirety." *Rsch. Found. for State Univ. of N.Y.*, 2025 WL 472680, at *30.

Meanwhile, the Delaware Action pressed forward. Lam answered Inpria's second amended complaint on September 17, 2024, and asserted standing, ownership, indemnity, inventorship, and invalidity defenses and counterclaims based on SUNY RF's invention and ownership rights to the patents-in-suit. Appx00183-217; Appx00223-32. Inpria moved to dismiss Lam's indemnity counterclaim by invoking the venue clause in its 2015 Research Agreement with SUNY RF, arguing it could be litigated only in New York. Appx00261.

On April 9, 2025, SUNY RF sought leave in the Delaware Action to file the subject *amicus curiae* brief in support of Rule 19(b) dismissal for failure to join an indispensable party. Appx00264. The district court granted SUNY RF's motion for leave after Inpria withdrew its opposition to that motion. Appx01123.

On April 16, 2025, Lam filed its own motion to dismiss the Delaware Action under Rule 19(b), or in the alternative to sever the ownership, inventorship, and indemnity disputes, transfer them to New York pursuant to the Inpria-SUNY RF forum selection clause, and stay the infringement claims pending resolution of Inpria's disputes with SUNY RF. Appx01116. That filing remained under seal (and unavailable to SUNY RF) until Lam filed a redacted version on May 13. Appx01267. After Inpria responded on May 5,[1] and Lam replied on May 14, Lam's

---

[1] Inpria has refused SUNY RF's request to provide its opposition brief to SUNY RF's counsel on an outside counsel eyes' only basis, so SUNY RF has access only

motion to dismiss was fully briefed. Appx01125; Appx01390.

On May 14, 2025, SUNY RF requested leave to file and filed a reply *amicus curiae* brief in support of Rule 19(b) dismissal. Appx01298-1315. Lam did not oppose SUNY RF's request for leave; Inpria did. Appx01388; Appx01407.

As of the filing of this Petition, the district court has not ruled on either SUNY RF's request for Rule 19(b) dismissal, or Lam's motion to dismiss under Rule 19(b), or in the alternative, sever, transfer, and stay.

Rather than resolve these threshold issues, the district court has pushed forward on the merits. On April 14, 2025, the district court extended the fact discovery deadline expressly to allow "SUNY-related" discovery in the Delaware Action. Appx01113; Appx01121. Then, on April 25, the district court held a hearing on Inpria's motion for preliminary injunction, at which it improperly weighed SUNY RF's contractual, inventorship, and ownership rights in SUNY RF's absence. *See, e.g.*, Appx01590-91; Appx01600-01; Appx01611-12; Appx01627.

With the district court's imprimatur to conduct SUNY discovery, Lam then filed motions to compel in two different courts of compliance, the District of Minnesota and the Northern District of New York, demanding that SUNY RF and its researchers produce documents and sit for deposition in the Delaware Action.

---

to a heavily redacted version. And Exhibits 2-6, 8-9, 12-16, and 18-23 have been redacted in their entirety and remain under seal (and unavailable to SUNY RF) to this day. *See* Appx01125; Appx01154; Appx01160-1266.

On June 23, 2025, the Minnesota court granted Lam's motion to compel as to two of those SUNY researchers, Dr. Daniel Freedman and Dr. James Passarelli. Order Compelling Production and Testimony of Non-Parties, *Lam Rsch. Corp. v. Freedman*, No. 0:25-mc-00028-DLM (D. Minn. June 23, 2025). The court found their knowledge "highly relevant to Lam's claims and defenses in its out-of-district litigation," and held that "failing to grant Lam's motion would be highly prejudicial, since it has the potential of leaving Lam to defend a patent ownership dispute without direct evidence of inventorship." *Id.* at 1–2. In doing so, the court acknowledged that SUNY RF had a pending motion to dismiss the Delaware Action "center[ed] around the premise that all eight patents at issue in the Delaware Action were invented by SUNY RF's research team—the same team that included Drs. Freedman and Passarelli." *Id.* at 3. But, "[a]s of this writing, there is no ruling on SUNY RF's motion in the Delaware Action." *Id.*; *see also id.* at 7.

When SUNY RF notified the district court of this supplemental authority, rather than resolve the Rule 19(b) motions and moot the Minnesota court's discovery order, the district court *struck* SUNY RF's letter. *See* Appx01972; Appx01986.

Lam and Inpria deposed Drs. Passarelli and Freedman on July 15 and July 17, respectively, about their MORE inventions, their collaborations with Inpria, and SUNY RF's ownership and contractual rights as to the asserted patents.

After another month passed without any resolution of the Rule 19(b) issue, on

July 28, 2025, the New York court likewise granted Lam's motion to compel SUNY RF and Dr. Brainard to produce documents and sit for deposition in the Delaware Action. Memorandum-Decision & Order, *Lam Rsch. Corp. v. Brainard*, No. 1:25-mc-00008-DNH-PJE (N.D.N.Y. July 28, 2025). Like the Minnesota court before it, the New York court held, "[i]f Lam is correct that SUNY RF is the owner or co-owner of the patents at issue, Lam likely has valid defenses to liability in the Delaware Action." *Id.* at 10; *id.* at 11-12 ("Lam has established a clear need for the discovery to establish its defense(s) in the Delaware Action."). And despite ruling a month later, the New York court, like the Minnesota court, noted that "there has been no ruling on SUNY RF's or Lam's motions in the Delaware Action." *Id.* at 4.

On August 8, August 19, and August 26, 2025, the district court thrice extended the deadlines to serve expert reports—from an initial August 4 deadline to September 22, 2025. *See* Appx01988; Appx01990; Appx01992. Absent relief from this Court, Dr. Brainard and SUNY RF are now scheduled to be deposed on September 12 and September 19, 2025, respectively.

On August 26, 2025, the district court issued a partial *Markman* order and construed two of the patents-in-suit in SUNY RF's absence. Appx01994. The court also advised that it intends to construe additional terms "prior to the September 22, 2025 date for submission of opening expert reports." Appx01994.

13

## REASONS WHY THE WRIT SHOULD ISSUE

This Court has exclusive jurisdiction to hear and decide mandamus petitions in patent cases like this one. 28 U.S.C. § 1295(a)(1); 28 U.S.C. § 1651(a); *In re Princo Corp.*, 478 F.3d 1345, 1351–52 (Fed. Cir. 2007). "The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or *to compel it to exercise its authority when it is its duty to do so*." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (emphasis added). Here, the district court's failure to act is causing SUNY RF ongoing, irreparable injury.

A writ of mandamus is warranted when: (1) the "right to issuance of the writ is clear and indisputable"; (2) there are "no other adequate means to attain the relief [the petitioner] desires"; and (3) the "writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380–81 (2004) (citations omitted).

SUNY RF is entitled to the writ because the Delaware Action cannot proceed in SUNY RF's absence under Rule 19(b) and substantive patent law. The district court has clearly abused its discretion in failing to act on the dismissal and stay requests before pushing the litigation forward on the merits through fact and expert discovery (and by expressly weighing SUNY RF's interests and construing the patents-in-suit in SUNY RF's absence), contrary to Rule 19(b).

Absent mandamus, there are no adequate means for SUNY RF to attain the

14

relief it seeks. Even if it were permitted as a nonparty to appeal final judgment in the Delaware Action, the harm and prejudice in proceeding without SUNY RF cannot be undone on appeal from final judgment. Like in the venue context, it is a "clear abuse of discretion to require the parties to expend additional . . . resources litigating the substantive matters of the case" while the Rule 19 issue "unnecessarily lingers on the docket." *In re Apple Inc.*, No. 2023-120, 2023 WL 2359699, at *2 (Fed. Cir. Mar. 6, 2023). Allowing the Delaware Action to proceed to final judgment would result in a judicially sanctioned irreparable injury.

Mandamus also is appropriate given the strength of SUNY RF's position on the merits. Because SUNY RF's ownership claims and interests are "non-frivolous"—as the Albany court has already recognized following full briefing on the issue—the Delaware court must dismiss this action. The writ will also prevent piecemeal litigation, prejudice to the existing parties, conflicting judgments, and a substantial waste of party, nonparty, and judicial resources, all of which Rule 19(b) is designed to prevent.

## I.    SUNY RF'S RIGHT TO ISSUANCE OF THE WRIT IS CLEAR AND INDISPUTABLE

### A.    SUNY RF has a clear and indisputable right to receive a timely decision on the Rule 19(b) question.

If a district court "declines to exercise his discretion, or to act at all, when it is his duty to do so, a writ of mandamus may be issued to compel him to act." *Hudson*

*v. Parker*, 156 U.S. 277, 288 (1895); *see also, e.g.*, *I.C.C. v. U.S. ex rel. Campbell*, 289 U.S. 385, 394 (1933) ("Mandamus is an appropriate remedy to compel a judicial officer to act."); *In re Google Inc.*, No. 2015-138, 2015 WL 5294800, at *1 (Fed. Cir. July 16, 2015) (issuing writ because "a lengthy delay in ruling on a request for relief can amount to a denial of the right to have that request meaningfully considered"); *In re Nintendo*, 544 F. App'x 934, 942 (Fed. Cir. 2013) (same because, "[b]y improperly refusing to exercise that discretion, the district court effectively deprived petitioners of any meaningful review of the questions its motions posed").

Indeed, this is the "traditional use of the writ . . . both at common law and in the federal courts." *Roche*, 319 U.S. at 26. And this Court has repeatedly recognized this right in recent years when ordering district courts to act on procedural motions like the unresolved motions here. *In re Apple Inc.*, 2023 WL 2359699, at *2 (transfer, stay); *In re Apple Inc.*, 52 F.4th 1360, 1361 (Fed. Cir. 2022) (transfer); *In re TracFone Wireless*, Inc., 848 F. App'x 899, 901 (Fed. Cir. 2021) (transfer); *In re Google*, 2015 WL 5294800, at *1-2 (transfer); *In re Nintendo*, 544 F. App'x at 942 (joinder, stay, transfer); *In re EMC Corp.*, 677 F.3d 1351, 1355 (Fed. Cir. 2012) (joinder, transfer).

This Court has also repeatedly emphasized that threshold, procedural issues— like venue and joinder—must take "top priority" and be decided at "the outset of litigation." *In re Google*, 2015 WL 5294800, at *1. To do otherwise is a "clear abuse

of discretion" that unnecessarily requires expending resources "litigating the substantive matters of the case" while the threshold issue "lingers on the docket." *In re Apple Inc.*, 2023 WL 2359699, at \*2; *In re EMC Corp.*, 501 F. App'x at 975-76.

*In re Nintendo* is instructive. As here, the unresolved motion in that case concerned interrelated joinder and venue questions and a district court's failure to rule on a request to sever and stay claims in favor of litigation in another venue. 544 F. App'x at 935. But, before considering whether claims against retailer defendants should have been severed and stayed and the claims against Nintendo transferred to another venue for fairness and convenience, the district court jumped over those preliminary questions. Instead, it first concluded that the retailers could be joined, permitted the plaintiff to join additional claims, and then ruled that this permissible party and claim joinder rendered Nintendo's motion to sever and transfer "moot." *Id.* at 936.

"That was error." *Id.* at 939-40. "Failure to exercise discretion is not exercising discretion; it is making a legal mistake." *Id.* at 940. "And, the district court cannot simply assume that the retailer defendants are properly joined and move directly to a Rule 18 inquiry." *Id.* "This approach to the motions before the court is contrary to the principle that a trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case." *Id.* at 941. It also ran contrary to "practical reasons why a different order of proceedings should

17

have been followed," including because staying the case against one group of defendants in favor litigation against the "true defendant" would not only facilitate resolution of the global dispute but also "could prevent the waste of time, energy and money and protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Id.* at 941-42 (cleaned up).

Accordingly, this Court granted mandamus, vacated the contrary orders, and ordered the district court to fulfil its "obligation to exercise its discretion to decide" the joinder and transfer motions before it: "By improperly refusing to exercise that discretion, the district court effectively deprived petitioners of any meaningful review of the questions its motions posed." *Id.* at 942.

Here, the district court has committed a materially identical error. For one, the district court also has not ruled on Lam's motion, in the alternative to Rule 19(b) dismissal, to sever and transfer its ownership, inventorship, and indemnity counterclaims to New York and to stay the Delaware Action in the meantime. *See generally* Appx00001-83. That is the same motion that gave rise to the writ in *Nintendo* that this Court said must be resolved first before moving to the merits.

For another, there is no basis to distinguish the district court's failure to resolve a Rule 19 joinder question from this Court's precedents in *Nintendo* and *EMC*, which issued writs to correct abuses of discretion as to joinder Rules 18, 20, and 21. *See In re Nintendo*, 544 F. App'x at 942; *In re EMC Corp.*, 677 F.3d at 1355.

That is especially true where, as here, the joinder question implicates venue, as it did in both *Nintendo* and *EMC*. *See also In re EMC Corp.*, 677 F.3d at 1354-55 (finding "no meaningful distinction" between a petition seeking review of district court's application of § 1404(a) factors and a petition seeking review of district court's failure to sever before determining transfer). Indeed, whereas the venue cases cited above ask *where* a case should proceed, Rule 19(b) asks *whether* it should proceed. So the need for prompt resolution is even greater in the Rule 19(b) context.

Moreover, the same "practical reasons" that supported the issuance of the writ in *Nintendo* support it here. *See* 544 F. App'x at 941-42. Like in *Nintendo*, as the co-party to the relevant contracts, and the owner and inventor of the asserted patents, SUNY RF is not only necessary but also the *best* party to resolve the standing, ownership, and inventorship disputes. *See also Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 269 (5th Cir. 2022) (affirming Rule 19(b) dismissal because "the battle over ownership of the mark is the University's" such that the existing parties lacked "the same personal stake in the battle"). Also like in *Nintendo*, promptly dismissing the Delaware Action in favor of the Albany Action will protect litigants, witnesses, courts, and the public from unnecessary time and expense due to litigating overlapping actions, simultaneously, in different venues. *See id.* at 267.

**B.    Rule 19(b) clearly and indisputably requires the district court to take steps to protect SUNY RF as an absent, required party.**

Rule 19(b) provides, "If a person who is required to be joined if feasible

cannot be joined, the court *must determine* whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." (emphasis added). A district court shall "on its own initiative, take steps to protect the absent party," *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968), and "consider *sua sponte* the absence of a required person and dismiss for failure to join." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008).

Here, mandamus is warranted in light of the district court's "failure to use that power when there is a duty to do so," *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018); *Roche*, 319 U.S. at 26, and because it would be "manifest error" for the Delaware Action to proceed in SUNY RF's absence. *Hoe v. Wilson*, 76 U.S. 501, 503–04 (1869); *see, e.g.*, *Klamath Claims Comm. v. United States*, 541 F. App'x 974, 980 (Fed. Cir. 2013) ("[A]djudicating those claims in the absence of the Tribes would be an abuse of discretion."); *Tullett Prebon PLC v. BGC Partners, Inc.*, 427 F. App'x 236, 239 (3d Cir. 2011) ("If [the absent party] is then held to be indispensable under Rule 19(b), the action cannot go forward.").

Indeed, it is long-settled that want of an indispensable party requires dismissal of a federal action. *See, e.g.*, *Pimentel*, 553 U.S. at 870 ("[I]f there are equally valid but competing claims, that too would require adjudication in a case where the Republic and the Commission are parties."); *Provident*, 390 U.S. at 122 ("[T]he problem under the circumstances was that the substantive involvement of the grantor

was such that in his absence there was nothing for the Court to decide."); *Hoe*, 76 U.S. at 503–04 ("No relief can be given in the case before us which will not seriously and permanently affect their rights and interests. According to the settled rules of equity jurisprudence the case cannot proceed without their presence before the court."); *Mallow v. Hinde*, 25 U.S. 193, 198 (1827) ("We do not put this case upon the ground of jurisdiction, but upon a much broader ground, which must equally apply to all Courts of equity, whatever may be their structure as to jurisdiction. We put it on the ground that no Court can adjudicate directly upon a person's right, without the party being either actually or constructively before the Court.").

And Rule 19 "fully comports" with patent law. *STC.UNM v. Intel Corp.*, 767 F.3d 1351, 1354 (Fed. Cir. 2014) (Dyk, J., concurring in the denial of rehearing en banc). This Court has "consistently recognized" that an infringement suit must be dismissed, as a matter of substantive patent law, if the absent party is an owner of the patents-in-suit and cannot be joined. *Id.* ("Without agreement, no precedent has held that a co-owner may be involuntarily joined." (collecting cases)). "Hence the longstanding recognition that '[o]rdinarily, one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit.'" *Id.* (quoting *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997)).

## C.    The district court's course of proceedings is violating SUNY RF's rights and Rule 19(b).

SUNY RF is also entitled to the writ because, in addition to its unreasonable delay, the district court has also clearly abused its discretion in pushing the Delaware Action forward on the merits though fact and expert discovery, requiring "the parties to expend additional party and court resources litigating the substantive matters of the case while" the Rule 19 issue "unnecessarily lingers on the docket." *See, e.g.*, *In re Apple Inc.*, 52 F.4th at 1361–63; *In re Google Inc.*, 2015 WL 5294800, at *1.

In particular, after SUNY RF raised the Rule 19(b) issue on April 9, 2025, the district court entered an amended scheduling order and extended the fact discovery deadline so that the parties could obtain "SUNY related" discovery from SUNY RF and its researchers who invented the patents-in-suit. Appx01113; Appx01121. This has *doubly* harmed SUNY RF: not only is the Delaware Action barreling ahead in its absence and over its objections under Rule 19(b), but worse, the district court expressly gave the existing parties the green light and additional time to force SUNY RF to participate in the Delaware Action through the backdoor of nonparty discovery, when it cannot be forced to participate as a party.

This clear error is especially acute because it has "unnecessarily require[d] the expenditure of judicial resources" in four different federal courts. *See In re Apple Inc.*, 52 F.4th at 1363–64 (citing *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30–31 (3d Cir. 1970)). Rather than dismiss the Delaware Action as it should have,

the district court has instead *spurred* discovery and motion practice concerning SUNY RF's ownership, inventorship, and contractual rights in the Delaware Action, the Albany Action, and two miscellaneous actions. Indeed, when the Minnesota and New York courts ordered SUNY RF and its inventors to produce documents and sit for deposition in the Delaware Action, each court acknowledged that SUNY RF had moved to dismiss under Rule 19(b), but "[a]s of this writing, there is no ruling on SUNY RF's motion in the Delaware Action." Order Compelling Production and Testimony of Non-Parties at 3, *Lam Rsch. Corp. v. Freedman*, No. 0:25-mc-00028-DLM (D. Minn. June 23, 2025); Memorandum-Decision & Order at 4, *Lam Rsch. Corp. v. Brainard*, No. 1:25-mc-00008-DNH-PJE (N.D.N.Y. July 28, 2025).

The fact-discovery deadline is not the only deadline the district court has extended to force SUNY RF's participation. When Lam and Inpria were unable to obtain discovery from SUNY RF and Dr. Brainard before their then-existing deadline to submit expert reports on August 4, 2025, the district court extended that deadline three times—most recently on August 26. *See* Appx01988; Appx01990; Appx01992. Lam and Inpria's opening expert reports are now due on September 22, 2025, *after* both Dr. Brainard and SUNY RF's corporate representative are scheduled to be deposed (on September 12 and September 19, respectively). Here again, this is *double* prejudice to SUNY RF: not only does the Delaware Action press onwards with SUNY RF as a de facto (but not full) participant, but also, expert

23

discovery has been extended to permit the existing parties' experts to opine on SUNY RF's ownership, inventorship, and contractual rights in its absence.

Along the way, the district court has also clearly erred by *expressly* weighing SUNY RF's contractual, inventorship, and ownership rights and construing the patents-in-suit in its absence. On June 11, the district court held a hearing on Inpria's motion for a preliminary injunction, where the court and the parties repeatedly invoked SUNY RF's rights and interests. Regarding Lam's indemnification defense:

> THE COURT: . . . [I]sn't there a provision under the agreement at issue regarding indemnification that speaks to who is covered by it?
>
> [ . . . ]
>
> THE COURT: Why does SUNY not agree [that Lam is a licensee]? Do I have the arguments before me as to why?

Appx01592-93.

> Regarding SUNY RF's ownership of the patents-in-suit:
>
> THE COURT: It's the 2015 Research Agreement that if that agreement and its terms indicate that the inventions at issue in our patents-in-suit are inventions that are joint inventions between SUNY and the plaintiff, then you'd say there's a standing issue, because the co-owner is not part of this litigation?

Appx01600.

> Regarding the SUNY team's inventorship of the patents-in-suit:
>
> THE COURT: So like there's Dr. Brainard, there's Joe Schmoe that's one of the other folks. How would I know from this record what did they invent?

Appx01627.

24

This too was a clear abuse of discretion. As the Supreme Court has explained, under Rule 19, once it is "recognized that those claims [are] not frivolous, it [is] error . . . to address them on their merits." *Pimentel*, 553 U.S. at 864. Consideration of their merits "much diminishe[s]" the protections afforded to SUNY RF under Rule 19 and patent law because "an important and consequential ruling affecting the [absent party's] substantial interest is determined, or at least assumed by a federal court in [that party's] absence and over its objection." *Id.* at 868-69; *Polin*, 429 F.2d at 30 ("To undertake a consideration of the merits of the action is to assume, even temporarily, that there will be no transfer before the transfer issue is decided.").

Even worse, the district court repeatedly stated that SUNY RF's *absence* might necessitate finding *against* its interests in the Delaware Action—in other words, the precise result that Rule 19(b) is intended to avoid. *See, e.g.*, Appx01898 ("I can't discern from the record who it is who is said to have invented or contributed what to what. How could I possibly find for you on co-inventorship?").

Finally, the district court also clearly erred in issuing a *Markman* order and construing the patents-in-suit in SUNY RF's absence, before first resolving the Rule 19(b) question. *See In re TracFone Wireless, Inc.*, 848 F. App'x at 900 (issuing writ ordering court to resolve transfer request and finding error in "conduct[ing] the *Markman* hearing as scheduled and issu[ing] a claim construction order the

following day"). The prejudice cannot be understated: the *Markman* order purports to set the metes and bounds of SUNY RF's invention, without its input.

## II.    THERE IS NO OTHER ADEQUATE MEANS TO ATTAIN THE RELIEF SUNY RF SEEKS

Absent the writ, SUNY RF has no other adequate means to attain the relief that it seeks. Given the ongoing harm that Rule 19(b) is intended to protect against, even if SUNY RF were permitted to appeal final judgment in the Delaware Action, such appeal would *not* permit SUNY RF to attain "the relief it seeks." SUNY RF seeks to dismiss (or stay) the Delaware Action. *Full stop*. No appeal of final judgment following an adjudication on the merits could provide *that* relief to SUNY RF. *See In re Princo Corp.*, 478 F.3d 1345, 1357 (Fed. Cir. 2007) ("Princo's right to a stay during the damages phase of the district court proceeding cannot be vindicated by direct appeal from the ultimate damages determination since § 1659 is designed to prevent the ongoing damages proceedings from occurring at all.").[2]

Instead, whether analyzed under Rule 19(b) or patent law, SUNY RF has the right to be *free from suit*, not just from adverse rulings or judgment. *See, e.g.*, *Pimentel*, 553 U.S. at 868–69; *STC.UNM*, 767 F.3d at 1355. Were it otherwise, that

---

[2] This is also similar to the § 1404(a) transfer context, in which the "test for mandamus essentially reduces to the first factor, given that 'the possibility of an appeal in the transferee forum following a final judgment . . . is not an adequate alternative,' and that 'an erroneous transfer may result in judicially sanctioned irreparable procedural injury.'" *In re Apple Inc.*, 979 F.3d 1332, 1336-37 (Fed. Cir. 2020) (citations omitted).

26

an absent party is "not . . . bound by the judgment in an action where they were not parties" would cut *against* Rule 19(b) dismissal rather than *support* it. *See Pimentel*, 553 U.S. at 871.

Nor is the ongoing prejudice caused by the Delaware Action theoretical. For one, SUNY RF and multiple of its scientific researchers have been compelled to produce documents and sit for deposition in the Delaware Action, at substantial time, cost, and inconvenience. For another, this has required SUNY RF and its witnesses to litigate the same issues, simultaneously, on different schedules, in *four* different forums, and outside the home forum that SUNY RF long ago bargained would be the exclusive venue to resolve these disputes.

Moreover, given its nonparty status in the Delaware Action, SUNY RF faces additional roadblocks that hinder its ability to protects its interests. *See, e.g.*, *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1221 (Fed. Cir. 2010) (affirming Rule 19(b) dismissal because if the district court were to "declare the patents invalid, UT would lose all rights in its patents despite the fact that it had no opportunity to defend its interests in the litigation"). Such roadblocks include (1) a protective order that precludes SUNY RF from accessing sealed filings and hearings (even when they invoke SUNY RF's interests), (2) an inability to move for or oppose judicial relief (except when granted leave to do so as an amicus), and (3) a lack of reciprocal discovery from Inpria and Lam on the issues being litigated. And even though it will

not be bound, "[a] loss here, in its absence, could put pressure on [SUNY RF] in the short term to abandon or capitulate to [Inpria or Lam]." *Lee*, 47 F.4th at 267.

## III.   THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES

A writ is also appropriate under the circumstances, especially when considered against the first two factors. *See Mote v. Wilkie*, 976 F.3d 1337, 1343 (Fed. Cir. 2020).

*First*, SUNY RF has sailed over the "nonfrivolous" showing necessary to trigger dismissal under Rule 19(b). *See Pimentel*, 553 U.S. at 867; *Lee*, 47 F.4th at 266 (recognizing "the inquiry at this stage is more about whether the absent party claims a non-frivolous interest, not the ultimate merit of the claim"); *cf. Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997) (holding an "allegation of ownership must have a plausible foundation" so a plaintiff can "in good faith allege such facts").

Over Inpria's arguments, and after full briefing, the Albany court issued a 62-page order finding that SUNY RF had "plausibly allege[d]" (1) "patent ownership claims stemming from a contractual agreement and not solely due to inventorship," and (2) that Inpria unlawfully converted the patents, breached its contracts with SUNY RF by failing to perfect and protect SUNY RF's ownership rights, and "wrongfully benefited from its public misrepresentation that Defendants are the sole

28

owners of the Challenged Patents." *Rsch. Found. for State Univ. of New York*, 2025 WL 472680, at *14, *18-22, *24-25 (N.D.N.Y. Feb 12, 2025).

A claim that survives 12(c) is nonfrivolous *by definition*: "[t]o term these claims frivolous is to distort measurably the meaning of frivolousness both in common and legal parlance." *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989). Moreover, Inpria *withdrew* its motion for judgment on the pleadings as to SUNY RF's inventorship claims, which separately bestow ownership rights on SUNY RF and are supported by a 210-page expert report from Dr. Uzodinma Okoroanyanwu, Appx00846-01052, which SUNY RF attached to its Rule 19(b) motion.

*Second*, Inpria did not dispute below that SUNY RF cannot be joined to the Delaware Action. *See generally* Appx01125-53. For good reason. Patent owners like SUNY RF have "a substantive right not to be involuntarily joined in a patent infringement suit." *STC.UNM*, 767 F.3d at 1353. The Delaware court also lacks jurisdiction over SUNY RF, which is a nonprofit organized under the laws of New York, based in Albany, NY, because none of its claims or interests have any connection to Delaware. *See* Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1610 (3d ed.). And, regardless, the exclusive jurisdiction and venue to resolve these ownership, inventorship, and indemnity disputes "shall be" "exclusively" in the "County of Albany" pursuant to the mandatory forum selection clauses that Inpria and SUNY RF agreed to in the 2013 NDA and the 2015 and 2017 Research

Agreements. Appx01060 (¶ 18); Appx01069 (§ 13); Appx01097 (§ 13); *See E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) (no joinder if venue is improper or court lacks jurisdiction).

*Third*, the writ is necessary not only to protect SUNY RF's interests, but also to prevent prejudice to the existing parties, piecemeal litigation, conflicting judgments, and a substantial waste of party, nonparty, and judicial resources. *See In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014) (issuing writ because "[s]uch circumstances present a classic case for a stay: The only potential results of adjudicating these cases in parallel fashion would be the Texas and California courts agree on the major issues of the litigation, thus producing wasteful and unnecessary litigation, or the courts disagree, thus producing conflicting decisions"); *Pimentel*, 553 U.S. at 863 ("This is also consistent with the fact that the determination of who may, or must, be parties to a suit has consequences for the persons and entities affected by the judgment; for the judicial system and its interest in the integrity of its processes and the respect accorded to its decrees; and for society and its concern for the fair and prompt resolution of disputes.").

For example, under Rule 19(b)(1)-(2) a judgment rendered in Delaware against Lam would waste time and resources because Inpria is not statutorily permitted to bring suit without SUNY RF. *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1318 (Fed. Cir. 2009); *Pimentel*, 553 U.S. at 870 (holding Rule

30

19(b)(2) favored dismissal given conflicting claims of ownership, which is a "textbook example of" of "severe[] prejudice" (citation omitted)).

Under Rule 19(b)(3), that judgment also would not be adequate because "[g]oing forward with the action without [SUNY RF] would not further the public interest in settling the dispute as a whole" because SUNY RF "would not be bound by the judgment. *Pimentel*, 553 U.S. at 870-71. In other words, "[f]or this factor, a court must practically consider the likelihood of other suits," and here there is *already* another suit: the Albany Action. *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 235 (3d Cir. 2023). And that suit *would* finally resolve ownership and inventorship—and thus, what, if any, infringement claims Inpria may pursue—because Lam has agreed to be bound by the Albany Action. Appx00290; Appx01292.

Rule 19(b)(4) also supports dismissal because Inpria will have an adequate remedy when the Delaware Action is dismissed: Inpria can seek to have the ownership, inventorship, contract, and indemnity disputes resolved in the Albany Action. *Tullet*, 427 F. App'x at 240 (affirming dismissal given "ongoing arbitration proceedings" and, after that, ability to commence a state court action with respect to any remaining issues); *Lee*, 47 F. 4th at 270 (similar).

Regardless, Inpria's interests *must* give way to SUNY RF's ownership and contractual rights and interests under both Rule 19(b) and patent law because "of the

31

reality that each coowner is 'at the mercy' of its other co-owners," which protects SUNY RF's "right to not be thrust into costly litigation where its patent is subject to potential invalidation." *STC.UNM*, 754 F.3d at 946-47.

## CONCLUSION

SUNY RF requests the Court to grant this petition for a writ of mandamus, direct the district court to promptly rule on the Rule 19(b) motions, and stay all district-court proceedings on the merits until those motions have been resolved.

Dated: September 2, 2025                Respectfully submitted,


                                        By: */s/ Justin A. Nelson*
John E. Schiltz                         Justin A. Nelson
SUSMAN GODFREY, LLP                     SUSMAN GODFREY, LLP
401 Union St., Suite 3000               1000 Louisiana St., Suite 5100
Seattle, Washington 98101               Houston, Texas 77002
(206) 516-3880                          (713) 615-9366

*Counsel for Petitioner SUNY RF*

## CERTIFICATE OF SERVICE

I certify that on September 2, 2025, a true and correct copy of the foregoing

petition was served via email and mail on the following counsel of record:

**Counsel for Lam Research Corp.:**

Latham & Watkins LLP
inpriav.lamresearchlitigation.lwteam@lw.com

Charles H. Sanders
    200 Clarendon Street
    Boston, MA 02116
    Email: charles.sanders@lw.com

Matthew J. Moore
Robert B. Dunteman
    555 Eleventh Street, NW, Suite 1000
    Washington, D.C., 20004
    Email: matthew.moore@lw.com
    Email: robert.dunteman@lw.com

Rodger Dallery Smith, II
Cameron Paul Clark
    Morris, Nichols, Arsht & Tunnell LLP
    1201 North Market Street
    P.O. Box 1347
    Wilmington, DE 19899
    Email: rdsefiling@mnat.com
    Email: cclark@mnat.com

Christopher Page Simon
Michael Louis Vild
    Cross & Simon, LLC
    1105 North Market Street, Suite 901
    Wilmington, DE 19801
    Email: csimon@crosslaw.com
    Email: mvild@crosslaw.com

**Counsel for Inpria Corp.:**

Paul Hastings LLP
PH-Lam-Inpria@paulhastings.com

Brooke M. Wilner
Chetan R. Bansal
Cooper Lerner
Douglas W. Cheek
Joseph E. Palys
Madeleine Moss
Naveen Modi
Phillip W. Citroen
Richard Rothman
Stephanie Adamakos
     2050 M Street NW
     Washington, DC 20036
     Email: brookewilner@paulhastings.com
     Email: chetanbansal@paulhastings.com
     Email: cooperlerner@paulhastings.com
     Email: douglascheek@paulhastings.com
     Email: josephpalys@paulhastings.com
     Email: madeleinemoss@paulhastings.com
     Email: naveenmodi@paulhastings.com
     Email: phillipcitroen@paulhastings.com
     Email: richardrothman@paulhastings.com
     Email: stephanieadamakos@paulhastings.com

Eric W. Dittmann
Isaac S. Ashkenazi
Joshua M. Bennett
Sachiko Taniguchi
Seal Ortega-Rodriguez
Young J. Park
     200 Park Avenue
     New York, NY 10166
     Email: ericdittmann@paulhastings.com
     Email: isaacashkenazi@paulhastings.com
     Email: joshuabennett@paulhastings.com
     Email: sachikotaniguchi@paulhastings.com

Email: sealortegarodriguez@paulhastings.com
Email: youngpark@paulhastings.com

Helen Gustafson
        4655 Executive Drive Suite 350
        San Diego, CA 92121
        Email: helengustafson@paulhastings.com

Joseph J. Rumpler, II
        1117 S. California Avenue
        Palo Alto, CA 94304-1106
        Email: josephrumpler@paulhastings.com

Paul M. Anderson
        609 Main Street Suite 2500
        Houston, TX 77002
        Email: paulanderson@paulhastings.com

Adam Wyatt Poff
Daniel G. Mackrides
Robert M. Vrana
        Young, Conaway, Stargatt & Taylor LLP
        Rodney Square
        1000 North King Street
        Wilmington, DE 19801
        Email: apoff@ycst.com
        Email: dmackrides@ycst.com
        Email: rvrana@ycst.com

                                   */s/ Justin Nelson*
                                   Justin Nelson

## CERTIFICATE OF COMPLIANCE

The foregoing filing complies with the relevant type-volume limitations of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface (Times New Roman, 14-point) and, excluding the parts exempted by Rule 32(f), includes **7,791** words.


Dated: September 2, 2025                                   */s/ Justin Nelson*
                                                             Justin Nelson